## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                                :
PERMAN PITMAN,                  :
                                :        Civ. A. No. 10-2538(NLH/KMW)
              Plaintiff,        :
                                :
v.                              :
                                :        **OPINION**
JOSHUA M. OTTEHBERG, et al.,    :
                                :
              Defendants.       :
                                :
———————————————————

**APPEARANCES**:

Paul R. Melletz, Esquire
Begelman Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034

     *Attorneys for Plaintiff*

Matthew J. Behr, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002

     *Attorneys for Defendants Joshua M. Ottenberg, Matthew
     Woshnack and Camden County Prosecutor's Office*

Anne E. Walters, Esquire
Shimberg & Friel, P.C.
20 Brace Road
Suite 350
Cherry Hill, NJ 08034

     *Attorneys for Defendant Harry Collins*

Stuart W Jay, Esquire
Taylor and Jay, LLC
20 East Centre Street
Woodbury, NJ 08096

     *Attorneys for Defendant Isidoro Reyes*

Ralph Raymond Kramer, Esquire
605 White Horse Pike
Haddon Heights, NJ 08035

    *Attorneys for Defendants Palmira White and City of Camden*

Howard Lane Goldberg, Esquire
Office of Camden County Counsel
520 Market Street
Courthouse - 14th Floor
Camden, NJ 08102-1375

    *Attorneys for Defendant County of Camden*

**HILLMAN, District Judge**:

    In this case, Plaintiff, Perman Pitman, contends that he was wrongfully arrested and imprisoned for a murder he did not commit.  After spending two years in jail because he was unable to make bail, Plaintiff pled guilty to a downgraded charge of manslaughter.  Two years later, the Camden County Prosecutor's Office disclosed exculpatory evidence, at which time Plaintiff's Judgment of Conviction and guilty plea were vacated and Plaintiff was released from jail.  Shortly thereafter, Plaintiff filed the present civil action pursuant to 42 U.S.C. § 1983 and state law based on his wrongful arrest and subsequent prosecution. Although many of the defendants filed answers to the complaint, Defendants Camden County Prosecutor's Office ("CCPO"), Joshua

Ottenberg,[1] and Matthew Woshnak[2] filed in lieu of an answer a motion seeking dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I.   **INTRODUCTION**

Except as noted, the following facts are taken from the complaint and are presumed true for purposes of this motion only. On September 27, 2005, Robert A. Mayes was shot and killed in Camden, New Jersey.  (Compl. ¶ 24.)  In response to 911 calls, Camden police officers responded to the area of the shooting and located the body of Mr. Mayes.  (Id. ¶ 25.)  The Camden City Police Department and the CCPO then assigned detectives and other personnel to "establish a crime scene and commence interviews and investigations into the shooting."  (Id. ¶ 26.)  Plaintiff alleges that these investigators acted in a coercive and misleading manner in an attempt to induce certain people to provide false statements and false testimony against Plaintiff. (Id. ¶ 27.)

_____

1.  Defendant Ottenberg was improperly identified in caption of the complaint as Joshua M. "Ottehberg" but properly identified in the body of the complaint.  (Compl. ¶ 11.)

2.  Defendant Woshnak was improperly identified in the complaint as Matthew "Woshnack."  (Compl. ¶¶ 1, 13.)

3

Approximately five months later, on or about February 8, 2006, the court administrator for the Camden City Municipal Court issued a warrant for Plaintiff's arrest for the Mayes murder. (Id. ¶ 1.)  The arrest warrant was issued based upon an affidavit of probable cause submitted by Defendant Matthew Woshnak, a detective with the CCPO, and Defendant Isidoro Reyes, a detective with the Camden City Police Department.  (Id.)  The affidavit of probable cause indicated that a purported eyewitness, Efrain Acevedo, identified Plaintiff as the perpetrator and another individual, identified only as "Twin," as having fired shots at Mayes.  (Id. ¶ 30.)  No charges or arrest warrants were ever issued against the individual known as "Twin," no other suspects were considered or investigated for the crime, and no physical evidence was obtained.  (Id. ¶¶ 31-33.)  Rather, investigators relied solely on the statement of Mr. Acevedo to arrest, imprison, and subsequently prosecute Plaintiff for the murder. (Id. ¶ 34.)

After Plaintiff was arrested, he was unable to post bail and remained in prison for nearly two years despite his protestations of innocence and repeated requests for discovery.  (Id. ¶¶ 35-37.)  Defendant Harry Collins, an assistant prosecutor with the CCPO specifically assigned to investigate and prosecute the Mayes murder, presented Plaintiff with a plea offer in October of 2007

4

whereby Plaintiff could plead guilty to a single charge of manslaughter with a four year prison term, half of which he had already served.  (Id. ¶¶ 12, 41.)  Despite his claim of innocence, Plaintiff pled guilty to the downgraded charge rather than face the charges on which he was indicted, which included murder, felony murder, armed robbery, conspiracy, possession of a firearm for an unlawful purpose and unlawful possession of a handgun.  (Id. ¶¶ 41, 42.)

It now appears, by its own admission, that the State should never have allowed Plaintiff to plead guilty.  In February 2010, Plaintiff received a telephone call from his court-appointed attorney at which time Plaintiff was advised that the CCPO filed a motion and order for dismissal of the indictment and called for Plaintiff's immediate release from prison.  (Id. ¶ 44.)  The CCPO admitted in the motion that while investigators had obtained a taped statement from Acevedo, the alleged eyewitness, they had no other evidence, physical or testimonial, directly implicating Plaintiff in the murder.  (Id. ¶ 45.)  Moreover, the motion revealed that, prior to the plea, Acevedo had recanted his statement implicating the Plaintiff and further admitted that he implicated Plaintiff to deflect suspicion away from himself. (Ex. A to Compl., Mot. and Order for Dismissal of Indictment [Doc. No. 1-1], ¶ 2.)  The motion also revealed that the CCPO had

discovered a handwritten note from Defendant Collins which
indicated that an investigator with the CCPO had been advised by
a jailhouse informant that Mr. Acevedo was paid to implicate
Plaintiff in the crime.[3]  (Compl. ¶¶ 47, 48; see also Ex. A to
Compl., Mot. and Order for Dismissal of Indictment [Doc. No. 1-
1], ¶ 3.)  The note also had a request to "Please Destroy This
Note."[4]  (Compl. ¶ 48.)  The state court issued an order of nolle

---

3.  The State's motion and order for dismissal of the indictment,
attached as Exhibit A to Plaintiff's complaint, does not reveal
to whom Mr. Acevedo made this admission, precisely when he made
it, with whom the recantation was shared if anyone, and what role
that individual, or other individuals with knowledge of Acevedo's
recantation, played in the arrest and prosecution of Plaintiff,
(see generally Ex. A to Compl., Mot. and Order for Dismissal of
Indictment [Doc. No. 1-1]), nor have those facts been revealed in
the motion to dismiss now before this Court (although Defendants
do assert in their reply brief that Plaintiff knew of the
recantation before his guilty plea).  (See Defs.' Reply Br. in
Further Supp. of Mot. to Dismiss by Ottenberg, Woshnak, and the
CCPO ("Defs.' Reply Br.") 10.)  More importantly, as set forth
more fully below, that information is not found in Plaintiff's
complaint.  The Court assumes that Plaintiff has or will seek
this information in discovery and if appropriate amend, or seek
leave to amend, his pleadings accordingly.

4.  Like the story surrounding Mr. Acevedo's recantation, the
circumstances surrounding this note have not been revealed, at
least in the pending motion.  Although the parties seem to agree
that Defendant Collins authored it and did not want its contents
revealed, the complaint does not allege (and the moving
Defendants do not concede) any other facts regarding it.
Therefore, the Court does not know any of the following: when an
apparent investigator "Folcon" learned of an allegation from an
informant that Mr. Acevedo had been paid to implicate Plaintiff;
if Folcon shared this information with Defendant Collins or if
someone else did; when Collins authored the note or learned of
the information contained in it; and who else was privy to the
note, its contents, or the events described in it.  Most

pros on February 23, 2010, and Plaintiff was released from prison on February 26, 2010.  (Id. ¶¶ 49-50.)

Plaintiff asserts a myriad of claims against a number of defendants, but the Court focuses only on the claims against the moving defendants at this time.  Plaintiff avers that Defendants Ottenberg and Woshnak "acting deliberately, recklessly, or intentionally and under color of law, contrived, fabricated, manufactured and/or published knowingly false statements and witness identifications," in police reports, probable cause statements, at the grand jury hearing, and in pretrial proceedings concerning the death of Mr. Mayes.  (Id. ¶ 58.)  Such conduct allegedly deprived Plaintiff of his Fourteenth Amendment right to a fair trial and his Fourth Amendment right to be free from unreasonable seizures.  (Id. ¶ 59.)  Plaintiff also contends that Defendant Ottenberg failed to document or disclose to Plaintiff material exculpatory evidence and impeachment information including that the sole eyewitness to the crime was a witness whom Defendants allegedly knew was paid to implicate Plaintiff in the shooting.  (Id. ¶ 60.)

---

importantly for the present motion, Plaintiff does not allege the personal involvement of any of the moving Defendants in either the creation or receipt of the note, knowledge of its contents, or involvement in the events described in the note.  As with Mr. Acevedo's recantation, the Court presumes that Plaintiff has or will seek this information in discovery and if appropriate amend, or seek leave to amend, his complaint accordingly.

Plaintiff further asserts that Defendant Woshnak "acting deliberately, recklessly and under color of law, falsely arrested and imprisoned [Plaintiff], without probable cause or other legal justification, knowing that there was no physical or testimonial evidence connecting [Plaintiff] with the crime, and that [Defendant Woshnak and others] had fabricated statements and evidence and eyewitness identification of [Plaintiff] in" various aspects of the case.  (Id. ¶ 67.)  Along similar lines, Plaintiff also alleges that Defendant Woshnak, among others, "acting under color of law, commenced and/or caused to be continued a criminal prosecution against [Plaintiff] that was lacking in probable cause, physical or testimonial evidence, instituted with malice, by disregarding credible evidence, ignoring known false and perjured testimony, suppressing exculpatory evidence, fabricating and coercing false statements, failing adequately to investigate the crime and disregarding evidence indicating that [Plaintiff] was innocent."  (Id. ¶ 68.)

## II.  **JURISDICTION**

Because Plaintiff brings claims pursuant to 42 U.S.C. § 1983 for an alleged violation of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

## III. **DISCUSSION**

### A.   **Standard of Review**

In this case, Defendants invoke Federal Rule of Civil Procedure 12(b)(6) in seeking dismissal of Plaintiff's complaint. When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and view them in the light most favorable to the plaintiff. See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted). The Third Circuit has instructed district courts to conduct a two-part analysis in deciding a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

First, a district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal

conclusions." <u>Fowler</u>, 578 F.3d at 210-11 (citing <u>Iqbal</u>, 129 S.
Ct. at 1949).  Second, a district court must "determine whether
the facts alleged in the complaint are sufficient to show that
the plaintiff has a 'plausible claim for relief.'"  <u>Id.</u> at 211
(quoting <u>Iqbal</u>, 129 S. Ct. at 1950).  "[A] complaint must do more
than allege the plaintiff's entitlement to relief."  <u>Id.</u>
"'[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged – but it has not 'show[n]' - 'that the pleader is
entitled to relief.''"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949);
<u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d
Cir. 2008) ("The Supreme Court's <u>Twombly</u> formulation of the
pleading standard can be summed up thus: 'stating ... a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element.  This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary element.")
(quoting <u>Twombly</u>, 550 U.S. at 556).

    A court need not credit "'bald assertions'" or "'legal
conclusions'" in a complaint when deciding a motion to dismiss.
<u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429–30
(3d Cir. 1997).  The defendant has the burden of demonstrating

that no claim has been presented.  Hedges v. United States, 404
F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

However, "if a complaint is subject to a Rule 12(b)(6)
dismissal, a district court must permit a curative amendment
unless such an amendment would be inequitable or futile."
Phillips, 515 F.3d at 245; see also Alston v. Parker, 363 F.3d
229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff
does not seek leave to amend, if a complaint is vulnerable to
12(b)(6) dismissal, a District Court must permit a curative
amendment, unless an amendment would be inequitable or futile.");
Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 444 (D.N.J.
2010) ("When a claim is dismissed pursuant to Federal Rule of
Civil Procedure 12(b)(6), leave to amend and reassert that claim
is ordinarily granted. ... A claim may be dismissed with
prejudice, however, if amending the complaint would be futile.")
(citation omitted).

**B.   Analysis**

Defendants CCPO, Ottenberg and Woshnak now seek dismissal of
the claims against them.  These moving defendants all contend
that they are immune from suit and, even if not immune, the
allegations are insufficient to state a claim under Federal Rule

of Civil Procedure 12(b)(6).  The Court shall separately address the claims against each of the moving defendants.

### 1.    Claims against the CCPO

Plaintiff asserts a claim against the CCPO under Monell v. Department of Social Services, 436 U.S. 658 (1978), and a claim under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2 et seq.  The basis of the Monell claim is that the CCPO failed to train and supervise in the areas of preventing involuntary or false confessions and/or eyewitness identifications and eyewitness statements, fabrication of evidence, disclosure of exculpatory evidence, investigation of a crime scene and alibi evidence, and properly obtaining probable cause for arrest and prosecution.  (Compl. ¶ 52.)

Defendants argue that the CCPO is absolutely immune from suit in federal court under the Eleventh Amendment.  Defendants contend that the CCPO is an agent of the State of New Jersey and, as such, is an arm of the State for Eleventh Amendment purposes. (Mem. of Law in Supp. of the Mot. to Dismiss by Joshua Ottenberg, Matthew Woshnak and the CCPO ("Defs.' Br.") 9.)  Defendants further assert that the CCPO cannot be liable for Monell claims because it cannot be vicariously liable for the actions of municipal police departments.  (Id. at 10.)

12

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

To determine whether Eleventh Amendment immunity applies to a state agency, a court must consider three factors: (1) the source of the agency's funding — i.e., whether payment of any judgment would come from the state's treasury, (2) the status of the agency under state law; and (3) the degree of autonomy from state regulation.  See Flitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir.) (en banc), cert.

denied, 493 U.S. 850 (1989).  In Coleman v. Kaye, 87 F.3d 1491,
1499 (3d Cir. 1996), the Third Circuit Court of Appeals
considered all of these factors in the context of a New Jersey
county prosecutor's office and recognized that county
prosecutorial offices conduct two distinct sets of functions: (1)
the administrative functions of operating their offices and (2)
the classic law enforcement and investigative functions for which
they are chiefly responsible.  The Third Circuit's analysis
culminated in the conclusion that "when [New Jersey county]
prosecutors engage in classic law enforcement and investigative
functions, they act as officers of the state."  Id. at 1505.

A court in this District recently addressed the issue of the
CCPO's Eleventh Amendment immunity in In re Camden Police Cases,
Nos. 11-1315, 10-4757, 2011 WL 3651318, at *1 (D.N.J. Aug. 18,
2011).  There were approximately forty-eight separate cases that
were pending before the court related to misconduct by certain
Camden City police officers, and the CCPO moved to dismiss
approximately forty-two of the complaints against it.  Id. at *2
n.2.  The court issued an Opinion as to one specific case and
noted that although the CCPO's motions to dismiss should be
addressed on a case-by-case basis, its Orders and/or Opinions in
other consolidated cases would be consistent with the Opinion.
Id.

14

In the case that the court specifically addressed, the defendant police officers allegedly gave false testimony before a grand jury, which indicted the plaintiff.  Id. at *1.  The charges were eventually dropped pursuant to an application by the CCPO.  Id.  The plaintiff then filed suit against the CCPO, among others, and alleged that the CCPO "'intentionally, recklessly, and/or negligently, as a matter of policy and practice, failed to properly supervise, discipline, train, or otherwise sanction' the Police Officers."  Id. at *2 (quotation omitted).  Upon the CCPO's motion to dismiss, the court found that the CCPO was entitled to Eleventh Amendment immunity.  Id. at *3.

The court, applying the factors set forth in Fitchick, specifically concluded that the State of New Jersey would be liable for a judgment against the CCPO because the Attorney General had indemnified the CCPO for any judgment and because the training and supervision of police officers qualifies as a prosecutorial function under Wright v. State, 169 N.J. 422 (2001); that the CCPO was acting as an agent of the State; and that the Attorney General had superseded the CCPO's authority and ordered the CCPO to assume responsibility for supervising the Camden Police Department.  Id. at *5, 8.  Because all three Fitchick factors weighed in favor of granting the CCPO sovereign

immunity under the Eleventh Amendment, the Court granted the
CCPO's motion to dismiss.  Id. at *10.

In this case, as in In re Camden Police Officers, the
Fitchik factors support a finding of Eleventh Amendment immunity.
The first Fitchik factor is satisfied if the money to pay a
judgment in a case would come from the State.  Fitchik, 873 F.2d
at 659.  In Wright, the New Jersey Supreme Court recognized that
county prosecutors act as agents for both the State and the
county that is the situs of their office.  Wright, 169 N.J. at
454.  The New Jersey Supreme Court held that in determining the
State's responsibility for liabilities incurred by county
prosecutors, courts must look to the function that county
prosecutors are performing during the alleged wrongdoing.[5]  Id.
"[T]he State should be obligated to pay the county prosecutors
and their subordinates' defense costs and to indemnify them if
their alleged misconduct involved the State function of
investigation and enforcement of the criminal laws."  Id. at 455.
On the other hand, "when county prosecutors are called upon to
perform administrative tasks unrelated to their strictly
prosecutorial functions, such as a decision whether to promote an

---

5.  With limited exceptions, the State is obligated to provide a
defense and indemnification of a state employee under the New
Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 et seq. ("TCA").

investigator," then the county prosecutor acts on behalf of the county and is not entitled to indemnification by the State.  See id. at 454.

In the complaint, Plaintiff contends that the CCPO failed to provide training and supervision.  Courts have held that training and supervisory activities are prosecutorial functions rather than administrative functions.  For example, in Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009),[6] the Supreme Court stated that prosecutors involved in supervision or training enjoy absolute immunity because such an administrative obligation is "directly connected with the conduct of a trial."  By contrast, the administrative duties concerning workplace hiring, payroll administration, or maintenance of physical facilities would not be activities for which the State  would provide a defense and indemnification.  See id. at 344.

In Landi v. Borough of Seaside Park, where a plaintiff alleged that the Ocean County Prosecutor's Office failed to adequately train its investigators, the court found that the

_____

6.  As noted in In re Camden Police Cases, although the Supreme Court in Van de Kamp was deciding the issue of prosecutorial immunity under Section 1983 rather than Eleventh Amendment immunity, the "Supreme Court's analysis is persuasive and relevant to this Court's analysis under the first Fitchik factor in this case."  In re Camden Police Cases, 2011 WL 3651318, at *7.

training the prosecutor's office provided to investigators was a
prosecutorial function because such training was "imperative to
the application of an overriding law enforcement policy meant to
ensure 'effective and uniform enforcement of the criminal laws
throughout the State.'"   Landi, No. 07-cv-5319, 2009 WL 606141,
at *4 (citations omitted); see also In re Camden Police Cases,
2011 WL 3651318, at *5 ("the training and supervision of the
Police Officers qualifies as a prosecutorial function under
Wright."); Fletcher v. Camden County Prosecutor's Office, No.
385-09T1, 2010 WL 4226150, at *6-7 (N.J. Super. Ct. App. Div.
Oct. 27, 2010) (affirming dismissal of claims against CCPO for
failure to properly train, supervise or discipline its officers;
adoption of official policy or custom that lead to constitutional
violations; or implicit authorization or approval or acquiescence
in unconstitutional conduct by its officers, because CCPO "is a
law enforcement agency of the state.").[7]

---

7.  The Court notes that in Wright, in deciding whether the State
has a duty to indemnify and defend county prosecutors, the New
Jersey Supreme Court noted that such duty "is limited to acts or
omissions that do not involve actual fraud, actual malice or
willful misconduct[.]"  169 N.J. at 456.  In Beightler v. Office
of Essex Count Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009),
the plaintiff argued that given the above language in Wright,
"evidence that a county prosecutor's office acted with malice or
willful misconduct is relevant in determining whether the state
treasury would be responsible for paying a judgment."  Although
the Third Circuit had the opportunity to redefine the scope of
Eleventh Amendment immunity as to county prosecutor's offices in
Beightler, it declined to do so. See Coley v. County of Essex,

The Court finds that the first Fitchik factor is satisfied in this case.  Plaintiff's allegations in the complaint concern the alleged failure to train and supervise employees as to proper investigation techniques, collection of evidence, assessing probable cause, and disclosure of information to criminal defendants.  Training and supervision of employees in these areas is directly connected to law enforcement and, as such, the CCPO acts as an arm of the State in this capacity and is entitled to indemnification by the State under the TCA.  Accordingly, the State would be liable for a judgment against the CCPO.[8]

Plaintiff cites a number of cases – Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999); Myers v. County of Orange, 157 F.3d 66 (2d Cir. 1998); Franklin v. Zruba, 150 F.3d 682 (7th Cir. 1998); and Esteves v. Brock, 106 F.3d 674 (5th Cir. 1997) – which held that prosecutors are not entitled to Eleventh

---

No. 08-4325, 2010 WL 3040039, at *3 n.2 (D.N.J. Aug. 4, 2010). Given the Third Circuit's decision not revise the scope of Eleventh Amendment immunity, at least one court in this District has also declined to do so, noting that "[i]f the scope of immunity is going to be redefined, it is going to have to be redefined by the Third Circuit." Id.  This Court similarly declines to redefine the scope of Eleventh Amendment immunity absent precedent or other clear direction from the Third Circuit or Supreme Court.

8.  Although not alleged in the complaint, and therefore not considered in deciding the present motion to dismiss, the Court notes the CCPO's representation that the Attorney General has indemnified the CCPO and retained outside counsel to represent the CCPO in this matter.  (Defs.' Br. 9 n.4.)

Amendment immunity for training and supervisory activities.
These cases were cited by the plaintiff in the In re Camden
Police Cases, and the court distinguished the cases on the ground
that "none of those cases involved county prosecutors in New
Jersey."  2011 WL 3651318, at *7 n.7.  The court further stated
that "[h]ere, the Court must analyze whether the CCPO is an arm
of the State of New Jersey under New Jersey law" and was thus
guided by the Third Circuit's analysis in Hyatt v. County of
Passaic, 340 F. App'x 833 (3d Cir. 2009).[9]   Id.  The Court
similarly finds here that the cases cited by Plaintiff are not
determinative of the issue presented in this case.

_____

9.  In Hyatt, the Third Circuit affirmed the grant of summary
judgment in favor of the Passaic County Prosecutor's Office
("PCPO"), the Passaic County Prosecutor, the Chief Assistant
Prosecutor, an Assistant Prosecutor, and a Detective with the
PCPO on the plaintiff's Section 1983 claims and her related state
law claims.  340 F. App'x at 835.  As the Third Circuit
explained, "[u]nder New Jersey law, when county prosecutors and
their subordinates perform law enforcement and prosecutorial
functions, 'they act as agents of the State,' and the State must
indemnify a judgment arising from their conduct."  Id. at 836
(citing Wright, 169 N.J. at 451-52, 455-56).  The Third Circuit
specifically recognized in Hyatt that "[t]raining and policy
decisions that require legal knowledge and discretion are related
to prosecutorial functions and are unlike administrative tasks
concerning personnel."  340 F. App'x at 836-37.  Accordingly, the
Third Circuit found that the PCPO and its officials' "procedures,
policy, and training regarding sexually abused child witnesses
required legal knowledge and discretion and therefore was related
to [the defendants'] prosecutorial function, [such that] the
State would be liable for any judgment."  Id. at 837.  Thus, the
Third Circuit concluded that the PCPO and its officials were
entitled to Eleventh Amendment immunity because they acted as
agents of the state.

The Court also finds that the second <u>Fitchik</u> factor, which requires the Court to consider the status of the CCPO under New Jersey law, is satisfied in this case.  "[C]ounty prosecutors operate as agents of the State when they engage in law enforcement activities and act as agents of the county when they engage in administrative matters."  <u>In re Camden Police Cases</u>, 2011 WL 3651318, at *9 (citations omitted); <u>Landi</u>, 2009 WL 606141, at *5 ("it is clear that under New Jersey law, [the Ocean County Prosecutor's Office] is a state entity when performing its prosecutorial functions.").  Therefore, in the context of this case, where Plaintiff alleges that the CCPO failed to supervise and train police officers with respect to law enforcement matters, the CCPO was exercising a prosecutorial function and was acting as a state entity.

The third <u>Fitchik</u> factor, the degree of autonomy of the CCPO, also supports a finding of Eleventh Amendment immunity. Pursuant to New Jersey law, "the criminal business of the State" is "prosecuted by the Attorney General and the county prosecutors."  N.J. Stat. Ann. § 2A:158-4.  The Attorney General is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors.  N.J. Stat. Ann. § 52:17-106B.  Thus, when performing its prosecutorial function,

such as training its investigators, the CCPO is not an autonomous entity.

All three <u>Fitchik</u> factors weigh in favor of granting the CCPO Eleventh Amendment immunity.  Moreover, while there are three narrow exceptions that limit a state's Eleventh Amendment immunity – when Congress abrogates a state's immunity for rights protected under the Fourteenth Amendment, when a state consents to suit, and when a plaintiff sues state officials in their official capacities for prospective, injunctive relief for ongoing violations of federal law – Plaintiff does not assert that any of these exceptions applies here.  See <u>Pittman v. Metuchen Police Dep't</u>, No. 08-2373, 2009 WL 3207854, at *3 (D.N.J. Sept. 29, 2009).  Since the State of New Jersey has not consented to suit in federal court on behalf of itself or the CCPO, the Court finds that Plaintiff's claims against the CCPO are barred by the Eleventh Amendment and must be dismissed with prejudice as permitting amendment of these claims would be futile.[10]

### 2.   Official Capacity Claims Against Defendant Ottenberg

---

10.  Having determined that the CCPO is a state actor cloaked with Eleventh Amendment immunity, the Court need not address Defendants' argument that Plaintiff has failed to properly plead a claim that the CCPO's policies violated Plaintiff's civil rights.  See <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).

Plaintiff brings federal claims against Defendant Ottenberg under 42 U.S.C. § 1983.  Plaintiff alleges in the complaint that Defendant Ottenberg was the Camden County Prosecutor "[a]t all times relevant to th[e] Complaint," and Defendant Ottenberg is sued in his official and individual capacities.  (Compl. ¶¶ 11, 18.)  The Court addresses the official capacity claims and the individual capacity claims against Defendant Ottenberg in turn.

With respect to the official capacity claims, both the Supreme Court and the Third Circuit have recognized that suits for money damages against state employees in their official capacities are barred by the Eleventh Amendment.  See, e.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' ... [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citation omitted); Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) ("the Eleventh Amendment ... has been interpreted to render states -- and, by extension, state agencies and departments and officials when the state is the real party in interest -- generally immune from suits by private parties in federal court.")

Plaintiff asserts in opposition to the motion to dismiss that "the allegations against Prosecutor Ottenberg ... are largely based on his failure to train and supervise[.]" (Pl.'s Opp'n 15.)  However, such claims against Defendant Ottenberg in his official capacity fail because, as set forth <u>supra</u>, allegations concerning Defendant Ottenberg's failure to train would be barred by the Eleventh Amendment.  The real party in interest would be the State and, as discussed above, the Eleventh Amendment bars any claims against the State.  See <u>Melo v. Hafer</u>, 912 F.2d 628, 635 (3d Cir. 1990) (Eleventh Amendment bars suits for monetary damages by private parties in federal courts against state officials in their official capacity, because State is real party in interest); <u>Landi</u>, 2009 WL 606141, at *5 n.1.  For the foregoing reasons and based on the Court's previous determination regarding Eleventh Amendment immunity for the CCPO, the Court similarly finds that all claims against Defendant Ottenberg in his official capacity are barred by the Eleventh Amendment and are dismissed with prejudice as amendment of such claims would be futile.

### 3.  Individual Capacity Claims Against Defendant Ottenberg

As set forth previously, Plaintiff alleges in the complaint that Defendant Ottenberg was the Camden County Prosecutor "[a]t all times relevant to th[e] Complaint," and Defendant Ottenberg

24

is sued in his official and individual capacities.  (Compl. ¶¶
11, 18.)  Plaintiff further alleges that "Defendant Ottenberg had
supervisory authority over the named defendants from the Camden
County prosecutor's Office."  (Id.)  Plaintiff specifically
contends that Defendant Ottenberg fabricated false inculpatory
evidence (id. at ¶ 58), failed to disclose exculpatory and
impeachment evidence (id. at ¶ 60), compelled Plaintiff to make a
false plea (id. at ¶ 63), and failed to supervise the defendant
officers and take preventative and remedial measures to guard
against constitutional deprivations (id. at ¶¶ 72, 73).
Defendant Ottenberg seeks dismissal of these claims on the ground
that they are barred by the doctrine of absolute prosecutorial
immunity.  Defendant Ottenberg alternatively argues that in the
absence of immunity, Plaintiff fails to state a claim under
Section 1983 because the complaint does not allege facts
sufficient to demonstrate personal involvement by Defendant
Ottenberg in any of the alleged constitutional wrongs.

     With respect to the claims against Defendant Ottenberg in
his individual capacity, Defendant Ottenberg argues that he is
entitled to absolute prosecutorial immunity under Section 1983.
Where a suit is brought against a state official in his
individual capacity, the State is not the real party in interest
because the recovery, if any, would come from the personal assets

of the individual.  <u>Melo</u>, 912 F.2d at 635.  Although the Eleventh Amendment does not provide sovereign immunity to state officials for claims brought against them in their individual capacity, prosecutors are entitled to absolute immunity under Section 1983 in a suit directly attacking their actions related to an individual trial.  <u>Van de Kamp</u>, 555 U.S. at 346.  "'[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'"  <u>Yarris v. County of Delaware</u>, 465 F.3d 129, 135 (3d Cir. 2006) (quoting <u>Burns v. Reed</u>, 500 U.S. 478, 786 (1991)).  Whether a prosecutor is entitled to absolute immunity turns on the nature of the function performed.  <u>Id.</u> at 136.  Absolute immunity is granted to a prosecutor who is functioning as an "advocate" of the state while engaging in conduct that allegedly constitutes a constitutional violation.  <u>Id.</u>  Therefore, to determine whether Defendant Ottenberg is entitled to absolute immunity, the Court must evaluate whether Defendant Ottenberg was functioning as an "advocate" of the state with respect to each of the constitutional claims asserted by Plaintiff.

In order to make a determination regarding Defendant Ottenberg's entitlement to absolute immunity, the Court must review the factual allegations regarding Defendant Ottenberg's involvement in the alleged constitutional wrongs.  However, at

26

this time, the Court cannot conduct an in-depth analysis in this regard because Plaintiff's complaint does not set forth sufficient factual allegations regarding Defendant Ottenberg's personal involvement in the alleged constitutional violations Plaintiff asserts.[11]  It is well settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  A plaintiff can demonstrate personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." Id.

While Plaintiff names Defendant Ottenberg as a defendant and makes various conclusory allegations against him, the Court notes that most of the allegations in the complaint actually target the conduct of Defendant Collins, who purportedly prepared a note acknowledging that the State's only evidence against Plaintiff – an eyewitness statement – was acquired from a paid informant, but

---

11.  In opposing the motion to dismiss, Plaintiff argues that "[t]he paragraphs of the Plaintiff's Complaint that mention Defendant Ottenberg do give factual matter that give [sic] rise to any plausible claim for relief[.]" (Pl.'s Opp'n 13.)  However, Plaintiff implicitly acknowledges that the complaint may fail to set forth sufficient factual details regarding Defendant Ottenberg's involvement. (Id.)  Accordingly, Plaintiff requests that if the Court finds that the complaint alleges insufficient factual matter, the Court allow Plaintiff to file an amended complaint to give more factual details. (Id.)

the complaint does not specifically identify Defendant Ottenberg in connection with such conduct.  (See, e.g., Compl. ¶¶ 12, 37, 39, 41, 47-48, 58, 60, 67-68.)  In the complaint, Plaintiff asserts that "Defendant Ottenberg had supervisory authority over the named defendants from the Camden County prosecutor's Office." (Id. ¶ 11.)  It thus appears that Plaintiff seeks to impose liability against Defendant Ottenberg for the conduct of other CCPO employees based on Defendant Ottenberg's role as the Camden County Prosecutor.

However, in order for liability to attach, Defendant Ottenberg must have had personal involvement in the acts complained of by Plaintiff.  See Rode, 845 F.2d at 1207. Importantly in this case, none of the facts or general allegations set forth in Plaintiff's complaint either specifically mention Defendant Ottenberg by name or otherwise allege any conduct specifically engaged in by Defendant Ottenberg sufficient to demonstrate his personal involvement in the alleged constitutional violations set forth in the complaint.  (See, e.g., Compl. ¶¶ 23-53.)  Furthermore, the complaint is devoid of specific factual allegations which sufficiently demonstrate that Defendant Ottenberg either personally directed -- or had actual knowledge of and acquiesced in -- the fabrication of false inculpatory evidence; the failure to disclose exculpatory and

28

impeachment evidence; or the allegedly compelled false plea by Plaintiff.  The remaining allegations against Defendant Ottenberg are legal conclusions which the Court may properly disregard on a motion to dismiss.  (See, e.g., Compl. ¶¶ 58, 60.)[12]

In opposing the motion to dismiss, Plaintiff attempts to argue that there are allegations in the complaint that Defendant Ottenberg was personally involved.  In so arguing, Plaintiff first acknowledges that Defendant Ottenberg was not the acting prosecutor at the time of Plaintiff's arrest in February of 2006. (Pl.'s Opp'n 17.)  However, Plaintiff asserts that because Defendant Ottenberg was the acting prosecutor from November 6, 2006 through June of 2008, Defendant "Ottenberg knew or should have known" that exculpatory statements obtained by others in the CCPO were not being turned over to Plaintiff and his attorney. (Pl.'s Opp'n 17-18.)  Plaintiff further argues that as the

---

12.  For example, Plaintiff generally alleges that Defendant Ottenberg, along with multiple other defendants, "acting deliberately, recklessly, or intentionally and under color of law, contrived, fabricated, manufactured and/or published knowingly false statements and witness identifications, in police reports, in probable cause statements, at grand jury, in testimony, and pretrial concerning details of the death of Robert Mayes."  (Compl. ¶ 58.)  Plaintiff similarly asserts that Defendant Ottenberg, among others, "acting deliberately, recklessly, or intentionally and under color of law, failed to document or disclose to [Plaintiff], his attorney and the Court material exculpatory and impeachment information including, without limitation, that the sole and only alleged eyewitness to the crime was a witness whom Defendants knew was paid by others to identify [Plaintiff] as the shooter."  (Id. ¶ 60.)

supervisor for Defendant Collins, an assistant prosecutor,
Defendant Ottenberg "either knew or should have known that <u>Brady</u>
material was being withheld by [Defendant] Collins and condoned
it." (<u>Id.</u> at 18.)

    Despite Plaintiff's attempts to argue otherwise, these
allegations are also insufficient to demonstrate personal
involvement by Defendant Ottenberg.  Conclusory statements that
Defendant Ottenberg "knew or should have known" of the specific
alleged wrongdoing of his subordinates is not sufficient to
warrant liability under Section 1983.  Plaintiff must set forth
allegations that Defendant Ottenberg either: (1) personally
directed such wrongdoing by his subordinates in the CCPO; or (2)
that Defendant Ottenberg had *actual* knowledge of *and* acquiesced
in the alleged wrongdoing.  <u>See</u> <u>Rode</u>, 845 F.2d at 1207.  However,
at this time, Plaintiff's complaint fails to make sufficient
factual allegations in either regard.  In the absence of
sufficient factual allegations demonstrating personal involvement
by Defendant Ottenberg, Plaintiff's claims against him are
subject to dismissal.  Moreover, the Court is unable to evaluate
Defendant Ottenberg's claim for absolute immunity at this time
since the particular nature of his alleged involvement is not
specifically alleged.  Therefore, the Court grants Defendant
Ottenberg's motion to dismiss to the extent Plaintiff asserts

30

claims against Defendant Ottenberg in his individual capacity.
Plaintiff's claims against Defendant Ottenberg in his individual
capacity are dismissed without prejudice at this time.

### 4.   Claims Against Defendant Woshnak

In the complaint, Plaintiff alleges that a warrant for his
arrest issued based on an affidavit of probable cause supplied by
Defendant Woshnak, a detective with the CCPO, and Defendant
Reyes, a detective with the Camden Police.[13]  (Compl. ¶¶ 1, 29.)
In Count I of the complaint, Plaintiff specifically contends that
Defendant Woshnak fabricated false inculpatory evidence against
Plaintiff.  (Id. ¶ 58.)  In Count II for malicious prosecution,
Plaintiff also claims that Defendant Woshnak "falsely arrested
and imprisoned [Plaintiff], without probable cause or other legal
justification, knowing that there was no physical or testimonial
evidence connecting [Plaintiff] with the crime, and that
[Defendant Woshnak and others] had fabricated statements and
evidence and eyewitness identification[.]" (Id. ¶ 67.)
Additionally, Count II for malicious prosecution further alleges
that Defendant Woshnak, among others, "acting under color of law,
commenced and/or caused to be continued a criminal prosecution

_____

13.  Although Defendant Reyes is alleged to have supplied
information for the affidavit of probable cause, the current
motion to dismiss is brought only on behalf of Defendant Woshnak
and thus the Court examines only the conduct of this Defendant in
ruling on the present motion.

31

against [Plaintiff] that was lacking in probable cause, physical or testimonial evidence[.]"  (Id. ¶ 68.)

Defendant Woshnak moves to dismiss Plaintiff's claims against him on several grounds.  First, Defendant Woshnak argues that Plaintiff makes only conclusory allegations against him as one of a group of several defendants which precludes the Court from drawing any reasonable inferences in Plaintiff's favor because there is "no sufficient factual matter pled to show each Defendants' wrongful conduct[,]" including no facts to support the substantive claims against Defendant Woshnak.  (Defs.' Br. 16.)  Second, Defendant Woshnak argues that Plaintiff's claims against him brought pursuant to Section 1983 are barred by the applicable statute of limitations.  (Id. at 16-17.)  Third, Defendant Woshnak contends he is immune from liability for claims that he fabricated evidence.  (Id. at 18-19.)  Fourth, Defendant Woshnak argues that Plaintiff cannot state a malicious prosecution in either Count II or Count V because Plaintiff failed to plead facts indicating that his prosecution was initiated without probable cause and has not plead, and cannot demonstrate actual malice.  (Id. at 20-23.)  Finally, Defendant Woshnak argues that even if Plaintiff sufficiently states a claim, Defendant Woshnak is entitled to qualified immunity as to Counts I and II.  (Id. at 23- 25.)

At the outset, the Court first addresses the statute of limitations argument raised by the parties.  The parties do not dispute that the applicable statute of limitations for Plaintiff's Section 1983 claims is determined by reference to the statute of limitations for personal injury actions in New Jersey which is two years.  See Montgomery v. De Simone, 159 F.3d 120, 126 n.4 (3d Cir. 1998). (See also Defs.' Br. 16-17; Pl.'s Opp'n 19-20.)  The issue before the Court then is when Plaintiff's claims began to accrue under the two-year statute of limitations. Defendant Woshnak argues that the statute began to run upon Plaintiff's arrest in February 2006 and thus his complaint, to be timely, should have been filed by February of 2008.  (Defs.' Br. 17.)  Plaintiff argues that the statute of limitations on his claims that Plaintiff was falsely imprisoned and maliciously prosecuted did not accrue until February of 2010 when the indictment against him was dismissed and Plaintiff was released from prison, such that his May 2010 complaint was timely filed. (Pl.'s Opp'n 20.)

The statute of limitations on a Section 1983 claim for malicious prosecution does not begin to run until the underlying criminal proceedings are terminated, if ever, in plaintiff's favor.  See Wiltz v. Middlesex County Office of Prosecutor, 249 F. App'x 944, 949 (3d Cir. 2007).  By contrast, the statute of

limitations on a Section 1983 claim for false arrest or false imprisonment accrues on the date of arrest or the date the false imprisonment ends.  See Montgomery, 159 F.3d at 126; Wallace v. Kato, 549 U.S. 384, 389-92 (2007).  As the Supreme Court acknowledged, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example he is bound over by a magistrate or arraigned on charges."[14]  Id. at 389.  Therefore, the Supreme Court held in Wallace "that the statute of limitations on petitioner's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial."  Id. at 391-92.

Here, Count II purports to allege a claim for malicious prosecution.  (See generally Compl. ¶¶ 66-69.)  However, under Count II, Plaintiff alleges that Defendant Woshnak, along with other defendants, "falsely arrested and imprisoned [Plaintiff] without probable cause or other legal justification, knowing that there was no physical or testimony evidence connecting [Plaintiff] with the crime, and they fabricated statements and evidence and eyewitness identification of [Plaintiff] in police

---

14.  The Supreme Court in Wallace used the term "false imprisonment" to refer to both false imprisonment and false arrest.  Id. at 389.

reports and in testimony, grand jury, pretrial and at plea, concerning the precise details of the crime, and where in fact [Plaintiff] was innocent of any crime.  Thus, there was not even arguable probable cause to arrest or prosecute [Plaintiff], and no reasonable officer would have believed probable cause existed."  (<u>Id.</u> ¶ 67.)  Additionally, Plaintiff also asserts under Count II that Defendant Woshnak and others, "commenced and/or caused to be continued a criminal prosecution against" Plaintiff without probable cause.  (<u>Id.</u> ¶ 68.)

In this regard, Plaintiff's complaint is not a model of clarity, and could arguably be construed to assert Section 1983 claims for both malicious prosecution and false arrest/false imprisonment.  Therefore, the Court finds that to the extent Plaintiff seeks to bring a claim under Section 1983 for false arrest or false imprisonment, Plaintiff's claims are timed barred because the applicable two-year statute of limitations accrued in February of 2006 when Plaintiff was arrested, detained, and held over for legal process.  <u>See</u> <u>Montgomery</u>, 159 F.3d at 126; <u>Wallace</u>, 549 U.S. at 389-92.  Accordingly, the statute of limitations on any Section 1983 claims for false arrest and false imprisonment expired in February 2008, and any claims in this regard are barred since Plaintiff's complaint was not filed until May of 2010, over two years later.

However, with regard to Plaintiff's claim for malicious prosecution, the Court finds that Plaintiff's complaint, filed in May of 2010, was timely.  As set forth above, the statute of limitations on Plaintiff's malicious prosecution claim accrued when the underlying criminal proceedings were terminated in Plaintiff's favor in February of 2010.  See Wiltz, 249 F. App'x at 949.  Therefore, Plaintiff had until February of 2012 to bring a claim under Section 1983 for malicious prosecution, and his May 2010 complaint was filed well within the applicable time frame.

Thus, to the extent Plaintiff's complaint seeks to allege a Section 1983 action for false arrest or false imprisonment, Defendant Woshnak's motion is granted in part and those claims are dismissed with prejudice as they are barred under the statute of limitations and amendment would be futile.  Defendant Woshnak's motion to dismiss is also denied in part as to Plaintiff's claims for malicious prosecution under Section 1983 as that claim is not time barred.

With regard to Plaintiff's remaining claims against him, Defendant Woshnak argues, similarly to Defendant Ottenberg, that Plaintiff fails to plead in the complaint sufficient factual matter to demonstrate that Defendant Woshnak engaged in wrongful conduct.  (Defs.' Br. 16.)  Defendant Woshnak asserts that Plaintiff has merely "lumped" Defendant Woshnak in with multiple

other Defendants in this action, fails to set forth specific facts as to Defendant Woshnak's alleged conduct, and makes only conclusory allegations which fail to support any of the substantive claims brought against him.  (<u>Id.</u>)  In opposing the motion, Plaintiff contends that the allegations in paragraphs 27,

30, 33, and 45 through 47[15] of the complaint "are sufficient to

---

15.   In their entirety, these paragraphs allege that:

> 27.   Beginning on or about September 27, 2005
> the Investigative Defendants engaged in a series of
> coercive and misleading tactics aimed at coercing
> and/or inducing persons, described hereinafter, to
> provide false testimony and false statements against
> [Plaintiff]. ...
> 30.   The affidavit of probable cause identified
> not only [Plaintiff] but identified another
> individual "Twin" who "approached the victim from the
> side of 819 North 5th Street and begin [sic] to shoot
> at him from the bottom of the steps ...".  These
> statements and identification were allegedly made by
> an eyewitness Efrain Acevedo. ...
> 33.   The investigators failed to secure evidence
> despite statements from witnesses concerning the
> location of such physical evidence. ...
> 45.   Notably, in the State's motion, the
> Prosecutor's office admits, unequivocally, that
> "[i]nvestigators took a taped statement from witness
> Efrain Ayala Acevedo, who stated he observed
> [Plaintiff] and another man shoot the victim and
> subsequently rob him.  There was never any other
> evidence, physical or testimonial, directly
> implicating [Plaintiff] in the crime."
> 46.   Despite Defendants' admission of no
> physical or testimonial evidence to corroborate the
> statement of witness Acevedo and despite not charging
> anyone else with a crime, contrary to the witness's
> statement, [Plaintiff] was arrested, held,
> imprisoned, and prosecuted.  Beaten down, frustrated
> and depressed [Plaintiff] succumbed to a plea for a
> crime he did not commit all because of the
> Defendants' wrongful, knowing, intentional acts.
> 47.   To be sure, the Prosecutor's office, in its
> motion to dismiss [Plaintiff's] indictment and
> conviction, produced for the first time, a hand-
> written note by Defendant Collins to investigators
> assigned and working on the murder investigation,
> which clearly acknowledged that the only eyewitness
> and evidence linking [Plaintiff] was in fact bought,
> perjured, untrue and coerced.

give rise to the entitlement to relief."  (Pl.'s Opp'n 19.)

Contrary to Plaintiff's assertions, the Court finds that these paragraphs do not set forth sufficient factual allegations regarding the specific wrongdoing by Defendant Woshnak which would support the claims Plaintiff brings in the complaint.  For example, Plaintiff asserts in a conclusory fashion that "the Investigative Defendants engaged in a series of coercive and misleading tactics" in order to coerce false testimony.  (Compl. ¶ 27.)  However, Plaintiff fails to set forth any facts explaining the nature of these alleged tactics, whether such testimony was in fact coerced by the Defendants, or what role each Defendant played in this regard.  Similarly, Plaintiff generally alleges that "investigators failed to secure evidence despite statements from witnesses concerning the location of such physical evidence."  (Id. ¶ 33.)  This is yet another conclusory statement by Plaintiff which fails to set forth sufficient supporting facts, such as what alleged physical evidence was not secured and which investigators were responsible for this alleged failure.

Moreover, Plaintiff asserts in his opposition that Defendant Woshnak took a taped statement from the alleged eyewitness, Mr. Acevedo.  (Pl.'s Opp'n 19.)  The complaint contains, by

_____

(Compl. ¶¶ 27, 30, 33, 45-47.)

comparison, no such factual allegation demonstrating that
Defendant Woshnak was the investigator who in fact took the taped
statement at issue, and, if he did, that he knew the statement
was false or improperly motivated and, if so, how.  Similarly,
Plaintiff contends that "[o]ther witnesses gave information to []
Defendant Woshnak of the location of other evidence favorable to
Plaintiff but Defendant Woshnak failed to secure that evidence."
(Pl.'s Opp'n 19.)  Although Plaintiff generally alleges similar
facts in the complaint, the complaint does not specifically
identify Defendant Woshnak as the investigator responsible for
securing such evidence, and again the complaint does not set
forth sufficient facts to explain the type of evidence to which
Plaintiff refers, how it was "favorable" to Plaintiff, or who
these alleged witnesses were.[16]

---

16.  The Complaint asserts that Defendant Woshnak violated
Plaintiff's rights because he did not seek to arrest the other
person implicated by Mr. Acevedo, known only as "Twin", and did
not seek to corroborate Mr. Acevedo's statement.  There is no
legal obligation to corroborate the statement of an eyewitness
whose statement is otherwise credible.  Cf. Government of Virgin
Islands v. Viust, 38 F. App'x 783, 787 (3d Cir. 2002)
(recognizing that the Third Circuit "has previously concluded
that the 'knowledge of a credible report from a [single] credible
eyewitness' can be sufficient to demonstrate probable cause for a
warrantless arrest.") (citing Merkle v. Upper Dublin School
District, 211 F.3d 782, 789 (3d Cir. 2000)).  The compliant does
not allege facts that make it plausible that Defendant Woshnak
knew Mr. Acevedo's statement was false, or even suspected it was
false in any way, when the warrant was sought.
    As for "Twin", the complaint does not allege that he was
sufficiently identified to make an arrest.  Even assuming that

Plaintiff's opposition also argues that "Defendant Woshnak testified before the grand jury concerning the statement given to him by Acevedo when he know that said statement was corroborated [sic] and in fact was contradicted by other witness statements and physical evidence."  (Id. at 21.)  Even assuming that such an allegation would be a viable claim under § 1983,[17] Plaintiff's complaint contains no such factual allegations that Defendant Woshnak testified before the grand jury or that Defendant Woshnak knew that Mr. Acevedo's statement was contradicted by other witness statements and physical evidence and, if so, how.[18]

_____

the police could identify "Twin", the complaint does not allege that the failure to arrest him was because they had any reason to doubt Mr. Acevedo's statement.  Absent such an allegation, the failure to arrest "Twin" does not undermine probable cause for the arrest of Plaintiff.  Cf. Ratliff v. Middlesex County Prosecutor's Office, No. 10-6012, 2011 WL 835770, at *2 (D.N.J. Mar. 4, 2011) (recognizing that "any such claim alleging failure to prosecute or file criminal charges is not cognizable under federal law" including under Section 1983, where plaintiff asserted defendants were liable under Section 1983 for failing to file criminal charges against other individuals involved in an attack and instead only arrested plaintiff); see also Rowan v. Staiger, No. 09-275, 2009 WL 1405494, at *3 (D.N.J. May 19, 2009)

17.  See Ali v. Person, 904 F. Supp. 375, 377-78 (D.N.J. 1995)(extending absolute immunity to an officer's testimony before a grand jury).

18.  Plaintiff, seemingly recognizing the potential insufficiencies of the complaint's factual allegations, again requests that Plaintiff be permitted to amend the complaint if "[a]t this stage of the proceeding, ... the Court finds that sufficient factual allegations have not been stated in the Complaint[.]" (Pl.'s Opp'n 21.)

Accordingly, the Court grants Defendant Woshnak's motion in part and Plaintiff's remaining claims against Defendant Woshnak are dismissed without prejudice.

As a result of manner in which Plaintiff's claims are pled in the complaint and the lack of sufficient factual allegations, the Court is unable to fully consider and evaluate Defendant Woshnak's additional arguments that: (1) Defendant Woshnak is entitled to absolute immunity for alleged fabrication of evidence; (2) Plaintiff fails to state a claim for malicious prosecution because the prosecution was issued based on probable cause; and (3) Defendant Woshnak is entitled to qualified immunity.  Similarly, the Court cannot properly address Defendants' request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion [Doc. No. 20] to dismiss is granted in part and denied in part.  Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Opinion to correct the deficiencies identified by the Court.  An Order consistent with this Opinion will be entered.

Dated: <u>December 30, 2011</u>           <u>/s/ Noel L. Hillman</u>
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.