# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

PERMAN PITMAN,

                Plaintiff,

    v.

    JOSHUA M. OTTEHBERG, et al.,

---

                Defendants.

Civil No. 10-2538 (NLH/KMW)

**OPINION**

**<u>APPEARANCES</u>:**

Paul R. Melletz, Esquire
Ross Begelman, Esquire
Begelman, Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034
    *Attorneys for Plaintiff Perman Pitman*

Matthew J. Behr, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    *Attorneys for Defendant Matthew Woshnack*

Elyse Glazer Crawford, Esquire
Shimberg & Friel PC
20 Brace Road
Suite 350
Cherry Hill, New Jersey 08034
    *Attorney for Defendant Harry Collins*

Stuart W. Jay, Esquire
Taylor and Jay, LLC
20 East Centre Street
Woodbury, NJ 08096
    *Attorneys for Defendants Isidoro Reyes and Gilberto Morales*

Ralph Raymond Kramer, Esquire
605 White Horse Pike
Haddon Heights, NJ 08035
    *Attorney for Defendant Palmira White*

Joseph Fernando Marin, Esquire
City Attorney's Office
520 Market Street
Suite 419
P.O. Box 95120
Camden, New Jersey 08101
    *Attorney for Defendant the City of Camden*[1]

**HILLMAN, District Judge:**

This matter comes before the Court by way of a motion [Doc. No. 79] for summary judgment by Defendants the City of Camden and Palmira White pursuant to Federal Rule of Civil Procedure 56. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion will be granted.

I.  **JURISDICTION**

In his amended complaint [Doc. No. 49], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his

---

[1]  At the time the present motion for summary judgment was filed, Ralph Kramer was the attorney of record for the City of Camden.  Since that time, however, Mr. Kramer has withdrawn as counsel for the City of Camden and Joseph Marin was substituted in on the City's behalf.  Mr. Kramer now represents only Defendant Palmira White.

constitutional rights as well as state law claims for malicious prosecution and alleged violations of the New Jersey Civil Rights Act. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

## II.  <u>BACKGROUND</u>

As the Court has previously explained, "[i]n this case, Plaintiff, Perman Pitman, contends that he was wrongfully arrested and imprisoned for a murder he did not commit. After spending two years in jail because he was unable to make bail, Plaintiff pled guilty to a downgraded charge of manslaughter. [Approximately] [t]wo years later, the Camden County Prosecutor's Office ("CCPO") disclosed exculpatory evidence, at which time Plaintiff's Judgment of Conviction and guilty plea were vacated and Plaintiff was released from jail. Shortly thereafter, Plaintiff filed the present civil action pursuant to 42 U.S.C. § 1983 and state law based on his wrongful arrest and subsequent prosecution." (Op. [Doc. No. 40] 2, Dec. 30, 2011.) By Opinion and Order dated December 30, 2011, several Defendants were dismissed from this suit, and Plaintiff was granted leave to file

an amended complaint.[2]

The essence of Plaintiff's civil rights claims arises from his arrest, conviction, and imprisonment for the September 2005 shooting death of Robert A. Mayes ("Mayes"). Late in the evening of September 26, 2005, Mayes was shot and killed in Camden, New Jersey and police responded shortly after midnight on September 27, 2005. (Am. Compl. ¶ 20.) As set forth in the amended complaint, Mayes was apparently shot three times with a .45 caliber weapon in the back and the arm. (Id.) The City of Camden Police Department and the CCPO thereafter assigned detectives and other personnel to investigate the shooting death of Mayes. (see, e.g., id. ¶¶ 12-13, 21-22, 29.) According to

---

[2] The Court's December 30, 2011 Opinion and Order [Doc. Nos. 40, 41] granted Plaintiff leave to file an amended complaint in this action within thirty days. The Court later extended Plaintiff's time to amend by an additional thirty days. (Order [Doc. No. 43] 1, Jan. 23, 2012.) Despite being granted the right to amend the complaint and having a considerable amount of time within which to do so, Plaintiff's amended complaint is not a model of clarity and constitutes only a marginal improvement over the original complaint.

Plaintiff, the CCPO[3] and the individual Defendants[4] "had no physical or testimonial evidence against [Plaintiff] other than a witness" by the name of Efrain Ayala Acevedo ("Acevedo") and they relied solely on Acevedo's statement[5] to "arrest, imprison and prosecute Mr. Pitman." (Id. ¶¶ 2, 43.)

---

[3]    The Court's December 30, 2011 Opinion and Order dismissed all claims alleged against the CCPO in the original complaint with prejudice based on Eleventh Amendment immunity. (Op. [Doc. No. 40] 22, Dec. 30, 2011; Order [Doc. No. 41] 1, Dec. 30, 2011.)  After Plaintiff filed his amended complaint on February 27, 2012, the parties stipulated to the dismissal of the County of Camden from this suit without prejudice. (Stipulation of Dismissal [Doc. No. 51] 1.)  The Court further notes that the County of Camden was not named as a Defendant in Plaintiff's amended complaint.

[4]    The individual Defendants named in the amended complaint include: (1) Harry Collins, an Assistant Prosecutor with the CCPO; (2) Matthew Woshnak, an investigator employed by the CCPO; (3) Isidoro Reyes, a detective with the City of Camden Police Department; (4) Gilberto Morales, another detective with the City of Camden Police Department; and (5) Palmira White, the Court Administrator for the City of Camden Municipal Court. (Am. Compl. ¶¶ 11-15.)

[5]    The amended complaint asserts that Acevedo "claimed to have seen the shooting of ... Mayes from across the street, four houses down and that a person [Acevedo] called 'Twin' and Perman Pitman started to shoot at ... Mayes from the bottom of the front steps of 819 N. 5th Street, as ... Mayes was running up the steps. ... Acevedo further claimed that Perman Pitman followed ... Mayes onto the porch and shot at him as he fell.  ... Acevedo stated he believed he heard more than five or six shots ... and claimed the only lighting was street corner lights." (Am. Compl. ¶ 21.)  Acevedo identified "Twin" as Tommie Smith, the twin brother of Tyrone Smith. (Id. ¶ 22.)
       Plaintiff alleges, however, that Acevedo's "statements were contradicted by physical evidence and statements by other witnesses" and that the CCPO and the individual Defendants

On or about February 8, 2006, approximately four months after Mayes was killed, Defendant Palmira White, the Court Administrator for the City of Camden Municipal Court, issued a warrant for Plaintiff's arrest for the alleged felony murder of Mayes. (Id. ¶¶ 1, 15, 32.) The arrest warrant was issued by Defendant White based upon a sworn statement of probable cause submitted to her by Defendant Matthew Woshnak, an investigator with the CCPO, and Defendant Isidoro Reyes, a detective with the City of Camden Police Department. (Id. ¶¶ 1, 12, 13.) Pursuant to the arrest warrant, Plaintiff was arrested on February 9, 2006 and charged with murder in the shooting death of Mayes. (Id. ¶ 32.) On February 9, 2006, after he was arrested, Plaintiff provided a statement to Defendants Woshnak and Reyes which admitted that "he was present at the scene of the shootings" but denied that he was the shooter, and further indicated that he observed a lone gunman of Puerto Rican descent -- who Plaintiff believed killed Mayes -- and who shot at Plaintiff as Plaintiff ran away from the scene. (Id. ¶ 33.)

At the time he was arraigned, Plaintiff's bail was allegedly set so high that he was unable to post bail and

---

subsequently "learned that ... Acevedo had recanted his statements and ... had been paid to falsely identify [Plaintiff] as the assailant." (Id. ¶ 2.)

remained in prison "during the entire pre-trial process" for
nearly two years.  (Id. ¶ 44.)  During this time, Plaintiff
continued to profess his innocence, demanded discovery,
requested investigation of the crime scene, and filed motions to
dismiss the indictment against him and reduce his bail, but was
unsuccessful in his attempts.  (Id. ¶¶ 45-47.)  In October of
2007, Plaintiff asserts that Defendant Collins presented
Plaintiff with a plea offer whereby Plaintiff would plead guilty
to a significantly downgraded charge of manslaughter with a four
year prison term, approximately half of which Plaintiff had
already served.  (Id. ¶ 50.)  Facing an indictment that charged
him with murder, felony murder, armed robbery, conspiracy,
possession of a firearm for an unlawful purpose and unlawful
possession of a handgun, Plaintiff represents that he
"reluctantly agreed to the plea agreement" which dismissed all
of those charges in lieu of the amended single charge for
manslaughter because he was feeling "[d]epressed, broken, ...
cornered and abused by the system" and he had "no trial date and
[there was] no end in sight[.]"  (Id. ¶¶ 50-51.)

     As the Court previously noted, "[i]t now appears, by its
own admission, that the State should never have allowed
Plaintiff to plead guilty."  (Op. [Doc. No. 40] 5, Dec. 30,
2011.)  Plaintiff asserts in the amended complaint that on

February 23, 2010, the CCPO sought Plaintiff's immediate release from prison and an Order vacating his conviction. (Id. ¶ 6.) This apparently occurred because, on February 18, 2010, during the course of responding to Plaintiff's Petition for Post-Conviction Relief, Teresa M. Garvey, an Assistant Prosecutor in the CCPO, "searched the trial file" and discovered a March 7, 2007 memorandum and an attached "sticky note", both written by Defendant Collins and addressed to Defendant Woshnak. (Id. ¶ 41.) The handwritten sticky note, attached as Exhibit G to Plaintiff's amended complaint, indicated that another investigator with the CCPO had been advised by a jailhouse informant that Acevedo was paid to implicate Plaintiff in the crime. Garvey brought the sticky note to the attention of her superiors and "it was determined that the note and the information contained therein represented exculpatory evidence that should have been provided to" Plaintiff pursuant to Brady v. Maryland, 373 U.S. 83 (1963). (Id.)

As the Court explained in the December 30, 2011 Opinion, the CPPO thus filed a Motion and Order for Dismissal of Plaintiff's Indictment on February 23, 2010. (See Exhibit A to Pl.'s Compl. [Doc. No. 1].) "The CCPO admitted in the motion that while investigators had obtained a taped statement from Acevedo, the alleged eyewitness, they had no other evidence,

8

physical or testimonial, directly implicating Plaintiff in the murder. Moreover, the motion revealed that, prior to the plea, Acevedo had recanted his statement implicating the Plaintiff and further admitted that he implicated Plaintiff to deflect suspicion away from himself." (Op. [Doc. No. 40] 5-6, Dec. 30, 2011) (citations omitted). The motion further revealed the existence of the note and the circumstances surrounding it had not been disclosed to the defense, and that the State therefore consented to vacating the Judgment of Conviction for Plaintiff and the withdrawal of his guilty plea. (See Ex. A to Compl., Mot. and Order for Dismissal of Indictment [Doc. No. 1-1], ¶ 3.) Thereafter, the state court entered "an Order of Nolle Pros, ... confirming that the [CCPO] [would] 'no longer prosecute [Plaintiff] on behalf of the State of New Jersey for the indictment ... and that all proceeding[s] upon the indictment aforesaid be altogether and forever stayed in court against [Plaintiff.'" (Am. Compl. ¶ 52.)

Based on the foregoing, Plaintiff's amended complaint asserts a number of claims against various Defendants, but the Court focuses only on the claims against the moving defendants at this time.

## III. **DISCUSSION**

### A.    **Standard of Review**

In the present motion, Defendants the City of Camden and Palmira White seek the entry of summary judgment in their favor on all of Plaintiff's claims against them.  Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment
always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact." (citation omitted); see
also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d
Cir. 2001) ("Although the initial burden is on the summary
judgment movant to show the absence of a genuine issue of
material fact, 'the burden on the moving party may be discharged
by "showing" -- that is, pointing out to the district court --
that there is an absence of evidence to support the nonmoving
party's case' when the nonmoving party bears the ultimate burden
of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial.  Celotex, 477
U.S. at 324.  A "party opposing summary judgment may not rest

11

upon the mere allegations or denials of the ... pleading[s.]"
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)
(internal quotations omitted).  For "the non-moving party[] to
prevail, [that party] must 'make a showing sufficient to
establish the existence of [every] element essential to that
party's case, and on which that party will bear the burden of
proof at trial.'"  Cooper v. Sniezek, 418 F. App'x 56, 58 (3d
Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to
withstand a properly supported motion for summary judgment, the
nonmoving party must identify specific facts and affirmative
evidence that contradict those offered by the moving party.
Anderson, 477 U.S. at 256-57.

**B.    42 U.S.C. § 1983**

Plaintiff brings his federal claims pursuant to 42 U.S.C. §
1983.  Section 1983 provides in pertinent part that "[e]very
person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State ... subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any
rights, privileges, or immunities secured by the Constitution
and laws, shall be liable to the§ party injured in an action at
law, suit in equity, or other proper proceeding for redress[.]"
42 U.S.C. § 1983.

12

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806.)

Here, Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated, including his right to a fair trial, along with his Fourth Amendment right to be free from unreasonable seizures. (See Am. Compl. ¶¶ 59-67.) Plaintiff further asserts a Section 1983 claim for malicious prosecution contending that his Fourth and Fourteenth Amendment rights were violated. (Id. ¶¶ 68-70.) Plaintiff also alleges a related state law claim for malicious prosecution, and a claim under the New Jersey Civil Rights Act for alleged violations of his rights under both the federal and New Jersey Constitutions. (Id. ¶¶ 77-82.) Finally, Plaintiff asserts a Section 1983 claim for supervisory liability. (Id. ¶¶ 71-76.)

13

## IV.  **ANALYSIS**

### A.  **Claims Against Defendant White**

Defendant White is named as a Defendant in Count I for purported Fourteenth Amendment Due Process deprivations; Count II[6] alleging a Section 1983 claim for malicious prosecution under the Fourth and Fourteenth Amendments; and Count IV asserting a state law claim for malicious prosecution.  (Am. Compl. ¶¶ 60, 62, 69, 78.)  With respect to Count I, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment through a series of subclaims.  (Am. Compl. ¶¶ 59-67.)  Plaintiff's subclaims are purportedly based on the: (1) fabrication of false inculpatory evidence; (2) failure to disclose exculpatory and impeachment evidence to the Plaintiff's criminal defense attorney;[7] and (3) acts of coercion which

---

[6]    Plaintiff's amended complaint misnumbers all of the Counts subsequent to Count II.  There is a second Count II which is more appropriately designated as Count III alleging supervisory liability under Section 1983.  (See Am. Compl. ¶¶ 71-76.)  Plaintiff's state law claim for malicious prosecution is numbered as Count V but is more properly numbered as Count IV of the amended complaint.  (Id. ¶¶ 77-79.)  Finally, Plaintiff's claim under the New Jersey Civil Rights Act should have been designated as Count V, rather than Count VI.  (Id. ¶¶ 80-82.)  For clarity, the Court refers to the Counts of the amended complaint by their appropriate sequential roman numerals, rather than by the misnumbered roman numerals utilized by Plaintiff.

[7]    The Court notes that this second subclaim is entitled

resulted in Plaintiff making a false plea.  (Id.)  Count V of

the amended complaint alleges violations of the New Jersey Civil

Rights Act but does not specifically name Defendant White as a

Defendant.  The Court, however, construes this claim to be

asserted against Defendant White because it is brought against

"[t]he individual defendants[.]"  (Id. ¶ 81.)

In the present motion, Defendant White argues that she is

entitled to summary judgment on all of Plaintiff's claims for

several reasons: (1) she complied with New Jersey Rules of

---

"Failure to Disclose Exculpatory and Impeachment Evidence to the
Prosecution[,]" but the use of the term Prosecution appears to
be a typographical error.  The text of the supporting paragraphs
for this subclaim make clear that Plaintiff is challenging the
individual Defendants' alleged failure to disclose this
information to his criminal defense attorney or the court in the
underlying state criminal proceedings.  (Am. Compl. ¶ 62-64.)

Criminal Procedure 3:2-1 and 3:2-3,[8] N.J. STAT. ANN. § 2B:12-21,[9]

and her job description as Court Administrator for the City of

Camden Municipal Court; (2) she is entitled to qualified

immunity for Plaintiff's state law claims under N.J. STAT. ANN. §

59:3-3[10] of the New Jersey Tort Claims Act because she acted in

good faith at the time she signed Plaintiff's criminal

---

[8]     New Jersey Court Rule 3:2-1(a) provides in pertinent part,
that a criminal "complaint shall be a written statement of the
essential facts constituting the offense charged made on a form
approved by the Administrative Director of the Courts.  All
complaints except complaints for traffic offenses ... and
complaints for non-indictable offenses made on the Special Form
of Complaint and Summons, shall be by certification or on oath
before a judge or other person authorized by N.J.S.A. 2B:12-21
to take complaints.  The clerk or deputy clerk, municipal court
administrator or deputy court administrator shall accept for
filing any complaint made by any person."
        Rule 3:2-3(a) further provides that "[a]n arrest warrant
shall be made on a Complaint-Warrant (CDR2) form.  The warrant
shall contain the defendant's name or if that is unknown, any
name or description that identifies the defendant with
reasonable certainty, and shall be directed to any officer
authorized to execute it, ordering that the defendant be
arrested and brought before the court that issued the warrant.
Except as provided in paragraph (b), the warrant shall be signed
by the judge, clerk, deputy clerk, municipal court
administrator, or deputy court administrator."

[9]     Section 2B:12-21(a) specifically provides that "[a]n
administrator or deputy administrator of a municipal court,
authorized by a judge of that court, may exercise the power of
the municipal court to administer oaths for complaints filed
with the municipal court and to issue warrants and summonses."

[10]    Section 59:3-3 sets forth in relevant part that "[a] public
employee is not liable if he acts in good faith in the execution
or enforcement of any law."

complaint; and (3) she is entitled to qualified immunity with respect to Plaintiff's federal constitutional claims because the act of signing the criminal complaint against Plaintiff was objectively reasonable and was performed in subjective good faith in accordance with the law.

### 1. Count I – Due Process Violations

Plaintiff asserts in the amended complaint that Defendant White violated Plaintiff's rights to due process of law under the Fourteenth Amendment based on her alleged fabrication of false inculpatory evidence, her alleged failure to disclose exculpatory and impeachment evidence, and apparent acts which coerced Plaintiff into falsely pleading guilty to a downgraded charge of manslaughter. To succeed on a claim for deprivation of procedural due process rights under Section 1983, Plaintiff must show (1) that he was deprived of an individual interest of liberty or property encompassed within the Fourteenth Amendment; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate. Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006). Here, Plaintiff's allegations implicate his individual liberty

interests under the Fourth and Fourteenth Amendment for purposes of a procedural due process claim.[11]

While Plaintiff's amended complaint asserts a laundry list of conduct that Defendant White allegedly engaged in with respect to his claims, it is clear from the parties' statements of material fact and the briefing on the motion that Defendant White's involvement in this case is limited solely to Defendant White finding probable cause and issuing the February 8, 2006 warrant that led to Plaintiff's arrest and subsequent incarceration.  The amended complaints sets forth that Defendant

---

[11]    To the extent Plaintiff that Plaintiff alleges that the investigation leading to the Statement of Probable Cause presented to Defendant White was so inadequate as to constitute a violation of his substantive due process rights under the Fourteenth Amendment, the Court notes that this claim fails against Defendant White for the reasons set forth <u>infra</u> regarding his procedural due process claims.  Without regard to the adequacy of the investigation into the shooting death of Mayes, there is simply no evidence in the record from which a jury could conclude that White was involved with the method and manner in which the investigation was conducted, or had any control or authority regarding that investigation.

    Plaintiff and Defendant White have presented the Court with an set of material facts which expressly limits White's involvement to her signing of the arrest warrant.  There is no evidence in the record to demonstrate White participated in any way in the collection of evidence during the investigation, that she had any reason to know of the later discovery exculpatory evidence, or that she was in any way involved in the plea agreement offered to Plaintiff.  Plaintiff's amended complaint is totally devoid of any facts setting forth such personal involvement by White, and despite engaging in discovery in this case, Plaintiff has failed to put forth any evidence that White participated as alleged.

White "issued a warrant for the arrest and incarceration of Plaintiff ... for the alleged felony murder of Robert A. Mayes. This arrest warrant was issued based upon a sworn statement of probable cause issued by Defendant Matthew Woshnak and Defendant Isidoro Reyes." (Am. Compl. ¶ 1.) Plaintiff specifically contends that Defendant White "participated in [his] arrest, imprisonment and custodial status ... by issuing an arrest warrant for [Plaintiff] related to the death of Robert A. Mayes."[12] (Id. ¶ 15.) A review of the parties' truncated statements of material facts not in dispute confirms that the relevant conduct at issue by Defendant White is solely the manner in which she handled the formal execution of the February 8, 2006 arrest warrant and her finding of probable cause to issue it.

Though the Court remains mindful that the evidence of the non-moving party, Plaintiff, is to be believed and that all reasonable inferences his favor must be made at the summary judgment stage, the Court has no choice but to conclude that Defendant White is entitled to summary judgment on Count I of

---

[12] The amended complaint alleges that "[o]n February 8, 2006, a warrant was issued for [Plaintiff] charging him with murder under N.J.S. 2C:11-3a(1)(2) on warrant number W-2005-014135-0408. On February 9, 2006, [Plaintiff] was arrested at his place of business ... in Cherry Hill, New Jersey." (Am. Compl. ¶ 32.)

Plaintiff's amended complaint.  Defendant White's motion clearly seeks summary judgment as to all claims against her, yet the facts presented to the Court by both Plaintiff and Defendant White in the present motion are expressly limited to White's act of signing the arrest warrant on February 8, 2006.

The parties have presented absolutely no evidence that White was involved in any other aspect of the investigation into Mayes' death leading to Plaintiff's arrest such as interviewing witnesses or gathering physical evidence.  Therefore, evidence that White had the occasion to fabricate false inculpatory evidence is completely absent here.  Moreover, there is no evidence in the record to demonstrate that Defendant White was involved in the execution of Plaintiff's formal arrest on February 9, 2006.  It appears that her role in this case terminated on February 8, 2006 after she signed the arrest warrant.  Similarly, Plaintiff has not come forward with any evidence to indicate that Defendant White had any input or control over the decision to prosecute Plaintiff after his arrest on February 9, 2006.

Additionally, nothing presented to the Court here establishes that Defendant White had any authority, ability, or even the opportunity to offer Plaintiff a plea agreement for a downgraded charge of manslaughter, let alone the occasion to

coerce Plaintiff into making a false plea.  Finally, the record
is completely devoid of any facts demonstrating that Defendant
White was aware of the subsequent exculpatory evidence regarding
the sticky note and the recantations made by Acevedo.  Thus, a
claim against Defendant White that she violated Plaintiff's
rights by failing to disclose exculpatory evidence cannot
proceed where the record contains no facts showing the White was
even aware of the existence of such evidence, let alone actively
failed to disclose it.  See Coley v. County of Essex, No. 2:08-
4325, 2010 WL 3040039, at *5 (D.N.J. Aug. 4, 2010), aff'd, 462
F. App'x 157, (3d Cir. 2011) (granting summary judgment to
investigator where plaintiff failed to show that investigator
was a "decision-maker with regard to continuing the case
against" him or that investigator participated or acquiesced in
the purported rights violations).  For Defendant White to be
liable under Section 1983, she must have had "personal
participation" in the alleged rights violation.  See C.H. ex
rel. Z.H. v. Olivia, 226 F.3d 198, 201 (3d Cir. 2000).
Plaintiff has failed to show such that Defendant White
personally participated in violating his rights as alleged in
Count I.

On this motion for summary judgment, Defendant White has
met her initial burden by pointing out that there is an absence

21

of evidence to support Plaintiff's case with respect to Count I when Plaintiff party bears the ultimate burden of proof at trial.  <u>Singletary</u>, 266 F.3d at 192 n.2.  Accordingly, to avoid summary judgment on this Count, Plaintiff was required to make a showing sufficient to establish the existence of every element essential to that his case by identifying specific facts and affirmative evidence.  Here, Plaintiff has failed to meet his burden as set forth above.  In the absence of any evidence establishing Defendant White's involvement beyond signing the arrest warrant, Plaintiff is not entitled to an inference that his bare allegations create an issue of material fact for trial.  <u>See</u> <u>Lincoln v. Hanshaw</u>, 375 F. App'x 185, 190 (3d Cir. 2010).  Thus, summary judgment must be entered in favor of Defendant White with respect to Count I.

> *2.  Count II – Section 1983 Malicious Prosecution*

"To prove a claim for malicious prosecution brought under 42 U.S.C. § 1983, a plaintiff must satisfy each of the following five elements: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of

seizure as a consequence of a legal proceeding.'"[13] <u>Minatee v. Philadelphia Police Dep't</u>, 502 F. App'x 225, 227 (3d Cir. 2012) (citing <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 (3d Cir. 2009)). For Plaintiff to prevail on this claim, he "must demonstrate that the criminal proceedings against them were initiated without probable cause or, under <u>Wilson v. Russo</u>, 212 F.3d 781 (3d Cir. 2000), 'that [defendants] recklessly disregarded the truth in their warrant application and that a warrant application based on what [defendants] should have told the judge would have lacked probable cause.'" <u>Lincoln</u>, 375 F. App'x at 188-189 (citing <u>Wilson</u>, 212 F.3d at 786; <u>Sands v. McCormick</u>, 502 F.3d 263, 266 (3d Cir. 2007)).

Before the Court can properly address the merits of Plaintiff's § 1983 claim, the Court must consider Defendant White's argument that she is entitled to qualified immunity on Plaintiff's federal claim. The doctrine of qualified immunity

---

[13] Similarly, under New Jersey law, "[t]o establish malicious prosecution, a plaintiff must show that: '(1) a criminal action was instituted by th[e] defendant against th [e] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.'" <u>Hyatt v. County of Passaic</u>, 340 F. App'x 833, 838 (3d Cir. 2009) (citing <u>LoBiondo v. Schwartz</u>, 970 A.2d 1007, 1022 (2009)).

protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009). The doctrine provides a government official immunity from suit rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation. Id. "Qualified immunity ... gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Fiore v. City of Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing Messerschmidt v. Millender, --- U.S. ---, 132 S. Ct. 1235, 1244 (2012)) (internal quotation marks and citations omitted).

Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable." See Harlow, 457 U.S. at 818. "There are two prongs to the objective

reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful." Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)).  If the answer to either question is "no," the analysis may end there.[14]  See Pearson, 129 S. Ct. at 816; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

Defendant White argues that "[s]ummary judgment as to all constitutional claims is appropriate in the case at bar" because her "act of signing Plaintiff's [criminal] complaint [i.e., the arrest warrant] ... was objectively reasonable and was performed in subjective good faith in accordance with [the] law."  (Br. In Supp. of Mot. For Summ. J. [Doc. No. 79-1] (hereinafter, "Defs.' Br."), 13.)  Plaintiff counters that Defendant White has "fallen well short of meeting [her] burden."  (Br. In Opp'n to Defs.' White and City of Camden's Mot. For Summ. J. [Doc. No. 82]

---

[14]  Because the Court finds that Plaintiff cannot support his Section 1983 malicious prosecution claim, the Court need not address the second step in the qualified immunity analysis.

(hereinafter, "Pl.'s Opp'n"), 3.) According to Plaintiff, Defendant White has "jumped to the conclusion that her conduct was objectively reasonable" based on two facts: "(1) she was presented with a Probable Cause Statement drafted by [Defendants] Woshnak and Reyes and (2) ... she placed [Defendants] Woshnak and Reyes under oath before signing the criminal complaint." (Id.) However, Plaintiff argues that the Court must consider "the actual contents of the Probable Cause Statement" to determine whether Defendant White's act of signing the arrest warrant was objectively reasonable. (Id.)

Plaintiff thus urges the Court to "focus its attention on" Defendant White's "reaction to the facts that were presented to her" because the "primary issue at hand is whether or not ... Defendant [White], in her capacity as Court Administrator, acted objectively reasonable in response to this specific evidence." (Id. at 3-4.) Plaintiff asserts that a reasonable juror could find that issuing an arrest warrant "exclusively on the statements of two unidentified witnesses, with no inquiry into their veracity or basis of knowledge, is not objectively reasonable." (Id. at 4.) Plaintiff contends that Defendant White did not act in an objectively reasonable manner because she failed to establish the credibility of the witnesses' referenced in the statement of probable cause when she did not

26

inquire "into 1) whether or not the witnesses were anonymous[,] 2) whether or not any corroboration efforts were made, and 3) the source of the witnesses knowledge." (Id.) Plaintiff highlights for the Court that "it is not disputed that Defendant White failed to make these inquiries at the time the warrant was issued."[15] (Id.)

In reply, Defendant White asserts that Plaintiff has failed to recognize the "obvious" fact that "the contents of the 'Statement of Probable Cause' established probable cause for the arrest of Plaintiff." (Br. In Reply [Doc. No. 84] 3.) Defendant White points out that the Statement of Probable Cause contained information that an eye witness to the shooting death of Mayes positively identified Plaintiff as the shooter and that a second eye witness indicated that Plaintiff's vehicle was in the area of 819 5th Street at the time of the shooting. (Id.) Defendant White also notes that the Statement of Probable Cause indicated that an autopsy had been performed on Mayes' body. (Id. at 2.) Defendant White contends that "Plaintiff's attempt to discredit [White] by going thru a litany of things she [did not] do or should have done ... misses the obvious" --- that

---

[15]     Plaintiff concedes, however, that "it is unclear whether or not Woshnak and Reyes ascertained this information themselves in the course of their investigation[.]" (Pl.'s Opp'n 4.)

"the contents of the 'Statement of Probable Cause' established probable cause for the arrest of Plaintiff." (Id. at 3.) Defendant White apparently argues that because sufficient evidence existed to support a finding of probable cause for the arrest of Plaintiff, she is entitled to qualified immunity since Plaintiff cannot establish that the his constitutional rights were violated because the proceedings were not instituted without probable cause.

"To obtain qualified immunity in a § 1983 action premised on malicious prosecution, a police officer [or government official] must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines." Davis, 451 F. App'x at 232 (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)). In broad terms, the Fourth Amendment prohibits an arrest except upon probable cause. Orsatti, 71 F.3d at 482. Specifically, the official "must show a reasonable [official] in his shoes, aware of the same facts and circumstances, would have probable cause to [issue an] arrest [warrant]." Davis, 451 F. App'x at 233 (citing Malley v. Briggs, 475 U.S. 335, 344–45 (1986)).

As another court in this District previously explained, "'New Jersey Court Rule 3:3-1(a) provides that an arrest warrant may issue on a complaint if 'a judge, clerk, deputy clerk,

*municipal court administrator* or deputy municipal court administrator finds from the complaint or an accompanying affidavit or deposition, that there is probable cause to believe that an offense was committed and that the defendant committed it and notes that finding on the warrant." <u>Briggs v. Moore</u>, 2007 WL 789114, at *4 (D.N.J. Mar. 13, 2007) (citing N.J. Ct. R. 3:3-1). Thus, Defendant White was authorized by New Jersey statute and Court Rule to make a finding regarding the existence of probable cause to arrest Plaintiff.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." <u>Orsatti</u>, 71 F.3d at 483 (citing <u>United States v. Cruz</u>, 910 F.2d 1072, 1076 (3d Cir. 1990)); <u>see also United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.")

Important for purposes of this motion, "[a] 'credible report from a credible witness' can suffice, ... and evidence

that might exonerate a defendant does not defeat probable

cause." <u>Davis</u>, 451 F. App'x at 233 (citing <u>Merkle v. Upper</u>

<u>Dublin Sch. Dist.</u>, 211 F.3d 782, 790 n.8 (3d Cir. 2000); <u>Jocks</u>

<u>v. Tavernier</u>, 316 F.3d 128, 135-36 (2d Cir. 2003); <u>Gramenos v.</u>

<u>Jewel Cos. Inc.</u>, 797 F.2d 432, 440 (7th Cir. 1986)).[16]

"Moreover, when the alleged constitutional violation relates to

an arrest made pursuant to a warrant, the officer [or official]

will 'lose the shield of immunity' only 'where the warrant

application is 'so lacking in indicia of probable cause as to

render official belief in its existence unreasonable[.]" <u>Bankes</u>

<u>v. Felice</u>, No. 05-356, 2006 WL 1765074, at *6 (D.N.J. June 26,

2006) (citing <u>Orsatti</u>, 71 F.3d at 483).

   In this case, the Statement of Probable Cause[17] clearly

established the following facts:

---

[16]   <u>See, e.g.</u>, <u>Jocks v. Tavernier</u>, 316 F.3d 128, 135-36 (2d Cir.
2003) (holding that probable cause does not turn on evidence
that might exonerate because there is no "duty on the arresting
officer to investigate exculpatory defenses offered by the
person being arrested"); <u>Gramenos v. Jewel Cos. Inc.</u>, 797 F.2d
432, 440 (7th Cir. 1986) ("The Court has never suggested that
the police, with [incriminating] information in hand, must
conduct a further investigation or put contradictory evidence
into the affidavit.").

[17]   In its entirety, the Statement of Probable Cause provides
as follows:
   "On Tuesday, September 27, 2005, at approximately 0006
hours, Camden City Police officers responded to a call for
shorts fired and a possible man down in the area of 5th and Grant
Streets, Camden, New Jersey.  On arrival, they observed the

30

(1) Mayes was found at the scene faced down on the porch at 819 North 5th Street in Camden in the early morning hours of September 27, 2005;

(2) Mayes was transported to Virtua Medical Center and was later pronounced dead;

(3) the autopsy on Mayes' body confirmed that the cause of death was three gunshot wounds to the back and arms;

(4) an unidentified witness provided the investigators with a statement indicating that he observed Plaintiff arrive at the scene, shoot at Mayes from the bottom of the steps and shoot him two or three times in the back while on the porch;

(5) the witness observed Plaintiff go through Mayes' pockets before fleeing the scene;

(6) the witness then positively identified a photograph of Plaintiff as the person who shot Mayes; and

(7) a second unidentified witness provided a statement that he remembered seeing Plaintiff's vehicle, a newer model blue Jeep Cherokee, parked in the area of 819 North 5th Street moments before the shooting.

---

victim face down on the porch of 819 North 5th Street.  The victim was transported, by the Medical Examiner, Investigator K. Tomlinson, to Virtua Medical Center Camden, where he was pronounced dead at 2:56 hours.

On Tuesday, September 27, 2005, Camden County Medical Examiner Dr. Paul Hoyer performed the autopsy of the victim. Dr. Hoyer determined that the cause of the victim's death was three (3) gunshot wounds of the back and arms.

A witness provided a statement in which the witness observed the defendant, whom he knows as 'PJ', with an individual he knows as 'Twin' approach the victim from the side of 819 North 5th Street and begin to shoot at him from the bottom of the steps.  The witness then states that the individual he identifies as 'PJ' then followed the victim onto the porch and shot him in the back approximately two (2) or three (3) more times.  The witness then stated he watched as 'PJ' went through the victim's pockets before both men fled.  The witness then positively identified a photograph of the defendant Perman Pitman as the person he saw shoot the victim.

A second witness stated that he remembers seeing defendant Perman Pitman's vehicle, which he describes as a newer model blue Jeep Cherokee, parking in the area moments before the shooting."  (See Ex. A. to Pl.'s Opp'n [Doc. No. 82-1] 1.)

It is undisputed for purposes of this motion that Defendant
White was presented with the Statement of Probable Cause
detailed above and that the Statement was drafted by Defendants
Woshnak and Reyes before White signed the arrest warrant against
Plaintiff.  It is also undisputed that before signing the
complaint-warrant against Plaintiff, Defendant White placed
Defendants Woshnak and Reyes under oath.  The parties also do
not dispute that Defendant White ultimately signed and issued a
complaint-warrant for Plaintiff's arrest on for the murder of
Mayes.

Plaintiff's primary argument here appears to challenge
Defendant White's finding of probable cause, asserting that she
could have, and should have, done more to verify the information
contained within the Statement provided to her by Defendants
Woshnak and Reyes.  Plaintiff contends that Defendant White's
finding of probable cause was not objectively reasonable
specifically because she failed to inquire as to the anonymity
of the witnesses, as to the source of the witnesses' knowledge;
and whether the investigators made any efforts to corroborate
the witnesses' statements.  (Pl.'s Opp'n 4.)

Based on an independent examination of the application
presented to Defendant White, the Court concludes that probable
cause for the issuance of the arrest warrant existed on the face

of the application based on the attached Statement.[18] (Ex. A to
Def.'s Br. [Doc. No. 79-2] 1; Ex. B. [Doc. No. 79-3] 1.) At the
time she was presented with this Probable Cause Statement,
Defendant White placed Defendants Woshnak and Reyes under oath
and she acted reasonably in accepting the Statement as
representing a truthful account of their investigation.

The application made to Defendant White clearly established
that Mayes had been shot and killed at 819 North 5th Street on
September 26, 2005 and his cause of death was confirmed by the
Camden County Medical Examiner. The application further
recounted a detailed statement of an eyewitness to the crime
which named Plaintiff as the primary shooter and expressly
provided that this eyewitness positively identified a photograph
of Plaintiff as the person he observed shoot Mayes. The
application also contained a statement from a second unnamed
witness who observed Plaintiff's vehicle in the area moments
before the shooting.

---

[18]     The Court notes that "[g]enerally, the existence of
probable cause for arrest is a question of fact."  Eckman v.
Lancaster City, No. 11-2373, 2013 WL 3481589, *1 (3d Cir. July
1, 2013) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 635
(3d Cir. 1995)).  "However, a district court may conclude 'that
probable cause exists as a matter of law if the evidence, viewed
most favorably to the Plaintiff, reasonably would not support a
contrary factual finding.'"  Eckman, 2013 WL 3481589, *1 (citing
Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir.
2000)).

Plaintiff's takes issue with the fact that these
eyewitness, one of whom was ultimately Acevedo, were not
designated by name in the Statement and that Defendant White did
not inquire whether or not these witnesses were anonymous or as
to the source of their knowledge.  Plaintiff cites to State v.
Basil, 998 A.2d 472, 481 (N.J. 2010), to support his argument
that Defendant White should have made further inquiry of
Defendants Woshnak and Reyes with regard to the content of the
Statement before signing the arrest warrant.  Specifically,
Plaintiff utilizes Basil to highlight the distinction between an
identifiable citizen who is presumed to be reliable, and
anonymous informer whose reliability must be established,
apparently claiming that the eyewitnesses were not reliable
because they were not identified in the Statement.

However, upon close inspection, Basil actually supports the
contrary position --- a finding that Defendant White's actions
were objectively reasonable here.  In Basil, the New Jersey
Supreme Court provided a more detailed analysis than that
alluded to in the footnote of Plaintiff's brief, explaining
that:

> Generally speaking, information imparted by a
> citizen directly to a police officer will receive
> greater weight than information received from an
> anonymous tipster.  Thus, an objectively reasonable
> police officer may assume that an ordinary citizen

34

> reporting a crime, which the citizen purports to
> have observed, is providing reliable information.
> Our courts have distinguished between an
> identifiable citizen, who is presumed to be
> reliable, and an anonymous informer whose
> reliability must be established. The distinction is
> "grounded in common experience" because we assume
> that an ordinary citizen "is motivated by factors
> that are consistent with law enforcement goals."
> The distinction is also grounded in common sense.
> "[W]hen a tip is made in-person, an officer can
> observe the informant's demeanor and determine
> whether the informant seems credible enough to
> justify immediate police action without further
> questioning."  Moreover, "an in-person informant
> risks losing anonymity and being held accountable
> for a false tip."

998 A.2d at 481 (internal citations omitted).

Despite Plaintiff's broad argument to the contrary, <u>Basil</u>

makes a distinction between "identifiable citizens" and

"anonymous informers" based, not so much on whether the witness

is expressly named but, on whether law enforcement officials

obtain the information from the witness through a face-to-face

personal encounter versus for example, an anonymous tipster who

calls in the information and is thus unknown and unaccountable

to law enforcement for any allegedly false statements.  <u>See</u>

<u>Basil</u>, 989 A.2d 481-82 (explaining inherent reliability of

eyewitness who was an identifiable citizen with first-hand

personal knowledge who provided an in-person statement of events

she observed to a police officer and noting that the

eyewitness's subsequent refusal "to give any identifying data

35

about herself out of an expressed fear for her safety [did]

little to diminish the reliability of the information when it

was given.")

Here, while the names of the two eyewitnesses were not

expressly contained within the Statement of Probable Cause, all

other indications from that Statement demonstrate that the

witnesses were identifiable citizens with whom the investigators

had face-to-face, in-person encounters and that the witnesses

were relaying information from their own personal-knowledge

through observing Plaintiff's car in the area and seeing

Plaintiff shoot the victim.[19]  Plaintiff contends that Defendant

White should have inquired as to the source of the witnesses'

---

[19]    The fact that one of these witnesses subsequently recanted
his statements and the fact that it was later discovered he was
paid to falsely implicate Plaintiff has no bearing on whether
Defendant White's finding of probable cause at the time of the
arrest years earlier was objectively reasonable given the facts
presented to her on February 8, 2006 --- the date she signed the
arrest warrant. Cf. Coley, 2010 WL 3040039, at *4 (noting that
"[i]n every investigation where a witness or alleged victim lies
to a police investigator, it is possible the lie could have been
ferreted out by more probing questions.  But, ... [the] failure
to ferret out a lie does not, standing alone, constitute
reckless conduct" sufficient to support a lack of probable
cause).
        Moreover, there is no evidence to suggest that the second
witness, who observed Plaintiff's vehicle in the area at the
time of the shooting ever recanted his statements or that he was
paid, or otherwise coerced, to provide false information.
Additional, Plaintiff's February 9, 2006 post-arrest statement
to investigators expressly confirmed that he was in the area on
the night of the shooting.

knowledge, but the source of their knowledge is apparent from the face of the application. Both witnesses were purporting to relay information they had from their own personal knowledge based on observations of events in the area of 819 North 5th Street at the time Mayes was shot and killed.

Defendant White's reasonable belief that the offense of murder had been committed was buttressed by the fact that the primary witness's statement that Mayes was shot two or three times in the back was consistent with the Camden County Medical Examiner's autopsy report which confirmed that Mayes died as a result of three gunshot wounds to the back and arms. All of this information was contained on the face of the application before Defendant White. Because there is no evidence to suggest that Defendant White was aware that the witnesses fabricated their statements or that the investigators fabricated the contents of the Statement at the time she reviewed the Statement and signed the warrant on February 8, 2006, a reasonable jury could not find that Defendant White lacked probable cause to issue the warrant for Plaintiff's arrest.

Having found that probable cause existed for the issuance of the arrest warrant, the Plaintiff has failed to demonstrate that a constitutional deprivation occurred here. In the absence of such a constitutional deprivation, the qualified immunity

inquiry is at an end. Defendant White is entitled to qualified

immunity with respect to Count II of Plaintiff's complaint and

summary judgment must be entered in her favor with respect to

Count II.[20]

### 3. Count V – New Jersey Civil Rights Act

As other courts in this District have previously

recognized, "the New Jersey Civil Rights Act is interpreted

analogously to 42 U.S.C. § 1983." Martin v. Unknown U.S.

Marshals, ---- F. Supp. 2d -----, No. 10-0066, 2013 WL 4431789,

at *34 (Aug. 15, 2013) (citing Hottenstein v. City of Sea Isle

City, No. 11-740, 2011 WL 3651302, at *4 (D.N.J. Aug.18, 2011).

In opposing summary judgment for Defendant White, Plaintiff has

failed to identify either in the amended complaint or in his

briefing a "specific right or theory of liability grounded in

the New Jersey Civil Rights Act or New Jersey Constitution that

---

[20]     Because Plaintiff's malicious prosecution claim under New
Jersey state law similarly requires proof that the proceeding
was initiated without probable cause, Defendant White is also
entitled to summary judgment on Count IV of Plaintiff's amended
complaint given the Court's finding that probable cause to
arrest existed at the time the warrant was issued on February 8,
2006. Cf. Basil, 998 A.2d at 480-81 (reciting standard for
probable cause to arrest under New Jersey law and relying on
federal law as the basis for that standard)). Moreover, the
Court need not address Defendant White's assertion of immunity
under N.J. Stat. Ann. § 59:3-3 of the New Jersey Tort Claims Act
give that Plaintiff is unable to prove a state law tort claim
for malicious prosecution against her under New Jersey law.

is different from Plaintiff['s] claims under § 1983." See Martin, 2013 WL 4431789, at *34.  In the absence of any different rights or theories of liability under the New Jersey Constitution than those the Court has already addressed under federal law, the Court must resolve the summary judgment motion on Count V consistently with the grant of summary judgment on Counts I and II and for the reasons set forth supra on those Counts.  See Martin, 2013 WL 4431789, at *34.  Accordingly, Defendant White is also entitled to summary judgment with respect to Count V for violations of the New Jersey Civil Rights Act.

**B.   Claims against the City of Camden**

Count III of Plaintiff's amended complaint purports to assert a claim for supervisory liability under Section 1983. Although no specific Defendant is named with respect to this Count,[21] the Court construes this Count as being asserted against the City of Camden based on the parties briefing on the summary judgment motion at issue.  Generally, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

---

[21]    Paragraph 72 of Plaintiff's amended complaint makes allegations against a person by the last name of "Albright". (Am. Compl. ¶ 72.)  However, none of the Defendants in this action go by the name of Albright and it is unclear to whom Plaintiff is referring.

Marvel v. Cnty. of Delaware, 397 F. App'x 785, 790 (3d Cir.

2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–

91 (1978)).  Accordingly, "there are two ways that a plaintiff

can establish municipal liability under § 1983: [either] policy

or custom."  Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir.

2007).  "Under Monell, a plaintiff shows that a policy existed

when a decision maker possess[ing] final authority to establish

municipal policy with respect to the action issues an official

proclamation, policy, or edict."  Watson, 478 F.3d at 155

(citation and internal quotations omitted).  Alternatively, "[a]

plaintiff may establish a custom ... by showing that a given

course of conduct, although not specifically endorsed or

authorized by law, is so well-settled and permanent as virtually

to constitute law.  In other words, custom may be established by

proving knowledge of, and acquiescence to, a practice."  Id. at

155–56 (citation and internal quotations omitted).  "In addition

to proving that an unlawful policy or custom existed, a

plaintiff also bears the burden of proving that such a policy or

custom was the proximate cause of the injuries suffered."  Id.

at 156.

Defendant the City of Camden seeks summary judgment on this

claim asserting that Plaintiff has not identified, let alone

come forward with any evidence of, a policy or custom that would

result in liability by the City.  Plaintiff opposes summary judgment on Count III relying on a narrow line of cases by the United States Supreme Court which have permitted Section 1983 liability to attach against a municipality "based on a single decision that applies to a single, isolated scenario."  (Pl.'s Opp'n 6.)  Plaintiff relies on language from Pembaur v. Cincinnati, 475 U.S. 469 (1986) with respect to a "final decision maker" and argues that Defendant White, as the Court Administrator for the City of Camden Municipal Court, falls within the definition of an authorized final decision maker with respect to the issuance of arrest warrants.  (Id. at 7.) Plaintiff asserts that "it is Ms. White, and Ms. White alone, that makes the final decision as to whether or not a warrant will issue in the cases presented to her" and thus "the decision to issue an arrest warrant against Plaintiff can fairly be said to be that of the City of Camden, and not Palmira White personally."  (Id.)

"A municipality may be liable under section 1983 only if it can be shown that its employees violated a plaintiff's civil rights as a result of a municipal policy or practice. ... [The City of Camden] cannot be vicariously liable under Monell unless one of [its] employees is primarily liable under section 1983 itself."  Williams v. Borough of West Chester, 891 F.2d 458, 467

41

(3d Cir. 1989) (citation omitted).  Moreover, where Plaintiff

"'has suffered no constitutional injury at the hands of [any]

individual [government official], the fact that the departmental

regulations might have authorized [unconstitutional action] is

quite beside the point.'"  Id. (citing City of Los Angeles v.

Heller, 475 U.S. 796, 799 (1986)).  Even accepting Plaintiff's

argument as true, the Court has already concluded that Defendant

White's finding of probable cause and the issuance of the arrest

warrant for Plaintiff was not a violation of Plaintiff's civil

rights as set forth supra.  Accordingly, no liability can attach

to the City of Camden here based on that single decision, in

this single isolated scenario.  See Williams, 891 F.2d at 467.


**IV.    CONCLUSION**

     For the foregoing reasons, Defendants' motion [Doc. No. 79]

for summary judgment is granted.  An Order consistent with this

Opinion will be entered.


Dated: September 30, 2013              s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.


42