# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

PERMAN PITMAN,

        Plaintiff,

    v.

JOSHUA M. OTTEHBERG, et al.,

        Defendants.

---

Civil No. 10-2538 (NLH/KMW)

**OPINION**

**APPEARANCES**:

Paul R. Melletz, Esquire
Ross Begelman, Esquire
Begelman, Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, NJ 08034

    *Attorneys for Plaintiff Perman Pitman*

Matthew J. Behr, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Suite 300
Cherry Hill, NJ 08002

    *Attorneys for Defendant Matthew Woshnak*

Elyse Glazer Crawford, Esquire
Shimberg & Friel PC
20 Brace Road
Suite 350
Cherry Hill, New Jersey 08034

    *Attorney for Defendant Harry Collins*

Stuart W. Jay, Esquire
Taylor and Jay, LLC
20 East Centre Street
Woodbury, NJ 08096

*Attorneys for Defendants Isidoro Reyes and Gilberto Morales*

**HILLMAN, District Judge:**

This matter comes before the Court by way of a motion [Doc. No. 85] for summary judgment by Defendants Gilberto Morales and Isidoro Reyes pursuant to Federal Rule of Civil Procedure 56. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion will be granted.

I. **JURISDICTION**

In his amended complaint [Doc. No. 49], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights as well as state law claims for malicious prosecution and alleged violations of the New Jersey Civil Rights Act. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

## II. <u>BACKGROUND</u>[1]

As the Court has previously explained, "[i]n this case, Plaintiff, Perman Pitman, contends that he was wrongfully arrested and imprisoned for a murder he did not commit. After spending two years in jail because he was unable to make bail, Plaintiff pled guilty to a downgraded charge of manslaughter. [Approximately] [t]wo years later, the Camden County Prosecutor's Office ("CCPO") disclosed exculpatory evidence, at which time Plaintiff's Judgment of Conviction and guilty plea were vacated and Plaintiff was released from jail. Shortly thereafter, Plaintiff filed the present civil action pursuant to 42 U.S.C. § 1983 and state law based on his wrongful arrest and subsequent prosecution." (Op. [Doc. No. 40] 2, Dec. 30, 2011.) By Opinion and Order dated December 30, 2011, several Defendants were dismissed from this suit, and Plaintiff was granted leave to file an amended complaint.[2]

The essence of Plaintiff's civil rights claims arises from his arrest, conviction, and imprisonment for the September 2005

---

[1]    The background set forth herein is largely taken from the Court's September 21, 2013 Opinion [Doc. No. 91] in this case.

[2]    The Court's December 30, 2011 Opinion and Order [Doc. Nos. 40, 41] granted Plaintiff leave to file an amended complaint in this action within thirty days. The Court later extended Plaintiff's time to amend by an additional thirty days. (Order [Doc. No. 43] 1, Jan. 23, 2012.)

shooting death of Robert A. Mays ("Mays").[3]  Late in the evening

of September 26, 2005, Mays was shot and killed in Camden, New

Jersey and police responded shortly after midnight on September

27, 2005.[4]  (Am. Compl. ¶ 20.)  As set forth in the amended

complaint, Mays was apparently shot three times with a .45

caliber weapon in the back and the arm.  (Id.)  The City of

Camden Police Department and the CCPO assigned detectives and

other personnel to investigate the shooting death of Mays.

(see, e.g., id. ¶¶ 12-13, 21-22, 29.)  According to Plaintiff,

---

[3]    In the amended complaint, Plaintiff identifies the victim
as "Robert A. Mayes."  However, the documents submitted in
support of the present motion for summary judgment and the
documents attached to the amended complaint indicate that the
proper spelling is "Mays."

[4]    In the present motion for summary judgment, it is
undisputed that approximately two weeks before Mays' death,
Plaintiff and Mays "began an association in which [Plaintiff]
provided Mays with heroin to sell on 5th Street in Camden, New
Jersey."  (Defs.' Statement of Material Facts [Doc. No. 85-4] ¶
2; Pl.'s Ans. to Defs.' Statement of Material Facts [Doc. No.
87-1] ¶ 2.)

the CCPO[5] and the individual Defendants[6] "had no physical or testimonial evidence against [Plaintiff] other than a witness" by the name of Efrain Ayala Acevedo ("Acevedo") and they relied solely on Acevedo's statement[7] to "arrest, imprison and prosecute Mr. Pitman." (Id. ¶¶ 2, 43.)

---

[5]    The Court's December 30, 2011 Opinion and Order dismissed all claims alleged against the CCPO in the original complaint with prejudice based on Eleventh Amendment immunity. (Op. [Doc. No. 40] 22, Dec. 30, 2011; Order [Doc. No. 41] 1, Dec. 30, 2011.)  After Plaintiff filed his amended complaint on February 27, 2012, the parties stipulated to the dismissal of the County of Camden from this suit without prejudice. (Stipulation of Dismissal [Doc. No. 51] 1.)  The Court further notes that the County of Camden was not named as a Defendant in Plaintiff's amended complaint.

[6]    The individual Defendants named in the amended complaint include: (1) Harry Collins, an Assistant Prosecutor with the CCPO; (2) Matthew Woshnak, an investigator employed by the CCPO; (3) Isidoro Reyes, a detective with the City of Camden Police Department; (4) Gilberto Morales, another detective with the City of Camden Police Department; and (5) Palmira White, the Court Administrator for the City of Camden Municipal Court. (Am. Compl. ¶¶ 11-15.)

[7]    The amended complaint asserts that Acevedo "claimed to have seen the shooting of ... Mayes from across the street, four houses down and that a person [Acevedo] called 'Twin' and Perman Pitman started to shoot at ... Mayes from the bottom of the front steps of 819 N. 5th Street, as ... Mayes was running up the steps. ... Acevedo further claimed that Perman Pitman followed ... Mayes onto the porch and shot at him as he fell.  ... Acevedo stated he believed he heard more than five or six shots ... and claimed the only lighting was street corner lights." (Am. Compl. ¶ 21.)  Acevedo identified "Twin" as Tommie Smith, the twin brother of Tyrone Smith.  (Id. ¶ 22.)
        Plaintiff alleges, however, that Acevedo's "statements were contradicted by physical evidence and statements by other witnesses" and that the CCPO and the individual Defendants

5

On or about February 8, 2006, approximately four months after Mays was killed, Defendant Palmira White, the Court Administrator for the City of Camden Municipal Court, issued a warrant for Plaintiff's arrest for the alleged felony murder of Mays.[8] (Id. ¶¶ 1, 15, 32.) The arrest warrant was issued by Defendant White based upon a sworn statement of probable cause submitted to her by Defendant Matthew Woshnak, an investigator with the CCPO, and Defendant Isidoro Reyes, a detective with the City of Camden Police Department. (Id. ¶¶ 1, 12, 13.) Pursuant to the arrest warrant, Plaintiff was arrested on February 9, 2006 and charged with murder in the shooting death of Mays. (Id. ¶ 32.) On February 9, 2006, after he was arrested, Plaintiff provided a statement to Defendants Woshnak and Reyes in which he admitted that "he was present at the scene of the shootings" but denied that he was the shooter. Plaintiff told the investigators he observed a lone gunman of Puerto Rican

---

subsequently "learned that ... Acevedo had recanted his statements and ... had been paid to falsely identify [Plaintiff] as the assailant." (Id. ¶ 2.)

[8]    By Opinion and Order dated September 30, 2013, summary judgment was granted in favor of White on all of Plaintiff's claims and she was terminated as a Defendant in this matter. (Op. [Doc. No. 91] 22, 38, 39, Sept. 30, 2013; Order [Doc. No. 92] 1, Sept. 30, 2013.)

origin - who Plaintiff believed killed Mays - and who shot at Plaintiff as Plaintiff ran away from the scene. (Id. ¶ 33.)

At the time he was arraigned, Plaintiff's bail was allegedly set so high that he was unable to post bail and remained in prison "during the entire pre-trial process" for nearly two years. (Id. ¶ 44.) During this time, Plaintiff continued to profess his innocence, demanded discovery, requested investigation of the crime scene, and filed motions to dismiss the indictment against him and reduce his bail, but was unsuccessful in his attempts. (Id. ¶¶ 45-47.) In October of 2007, Plaintiff asserts that Defendant Collins presented Plaintiff with a plea offer whereby Plaintiff would plead guilty to a significantly downgraded charge of manslaughter with a four year prison term, approximately half of which Plaintiff had already served. (Id. ¶ 50.)

Facing an indictment that charged him with murder, felony murder, armed robbery, conspiracy, possession of a firearm for an unlawful purpose and unlawful possession of a handgun, Plaintiff represents that he "reluctantly agreed to the plea agreement" which dismissed all of those charges in lieu of the amended single charge for manslaughter because he was feeling "[d]epressed, broken, ... cornered and abused by the system" and

he had "no trial date and [there was] no end in sight[.]" (<u>Id.</u>
¶¶ 50-51.)

As the Court previously noted, "[i]t now appears, by its
own admission, that the State should never have allowed
Plaintiff to plead guilty." (Op. [Doc. No. 40] 5, Dec. 30,
2011.)  Plaintiff asserts in the amended complaint that on
February 23, 2010, the CCPO sought Plaintiff's immediate release
from prison and an Order vacating his conviction.  (<u>Id.</u> ¶ 6.)
This apparently occurred because, on February 18, 2010, during
the course of responding to Plaintiff's Petition for Post-
Conviction Relief, Teresa M. Garvey, an Assistant Prosecutor in
the CCPO, "searched the trial file" and discovered a March 7,
2007 memorandum and an attached "sticky note", both written by
Defendant Collins and addressed to Defendant Woshnak.  (<u>Id.</u> ¶
41.)  The handwritten sticky note, attached as Exhibit G to
Plaintiff's amended complaint, indicated that another
investigator with the CCPO had been advised by a jailhouse
informant that Acevedo was paid to implicate Plaintiff in the
crime.  Garvey brought the sticky note to the attention of her
superiors and "it was determined that the note and the
information contained therein represented exculpatory evidence
that should have been provided to" Plaintiff pursuant to <u>Brady
v. Maryland</u>, 373 U.S. 83 (1963).  (<u>Id.</u>)

As the Court explained in the December 30, 2011 Opinion, in response to the discovery of the note, the CPPO filed a Motion and Order for Dismissal of Plaintiff's Indictment on February 23, 2010. (See Exhibit A to Pl.'s Compl. [Doc. No. 1].) "The CCPO admitted in the motion that while investigators had obtained a taped statement from Acevedo, the alleged eyewitness, they had no other evidence, physical or testimonial, directly implicating Plaintiff in the murder. Moreover, the motion revealed that, prior to the plea, Acevedo had recanted his statement implicating the Plaintiff and further admitted that he implicated Plaintiff to deflect suspicion away from himself." (Op. [Doc. No. 40] 5-6, Dec. 30, 2011) (citations omitted). The motion further revealed the existence of the note and the circumstances surrounding it had not been disclosed to the defense, and that the State therefore consented to vacating the Judgment of Conviction for Plaintiff and the withdrawal of his guilty plea. (See Ex. A to Compl., Mot. and Order for Dismissal of Indictment [Doc. No. 1-1], ¶ 3.) Thereafter, the state court entered "an Order of Nolle Pros, ... confirming that the [CCPO] [would] 'no longer prosecute [Plaintiff] on behalf of the State of New Jersey for the indictment ... and that all proceeding[s] upon the indictment aforesaid be altogether and forever stayed in court against [Plaintiff].'" (Am. Compl. ¶ 52.)

Based on the foregoing, Plaintiff's amended complaint asserts a number of claims against various Defendants. At this time, the Court focuses only on the claims against the moving Defendants Morales and Reyes.

## III. **DISCUSSION**

### A. **Standard of Review**

In the present motion, Defendants Gilberto Morales and Isidoro Reyes seek the entry of summary judgment in their favor on all of Plaintiff's claims against them. Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility

10

determinations or engage in any weighing of the evidence;
instead, the nonmoving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment
always bears the initial responsibility of informing the
district court of the basis for its motion, and identifying
those portions of 'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence
of a genuine issue of material fact." (citation omitted); see
also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d
Cir. 2001) ("Although the initial burden is on the summary
judgment movant to show the absence of a genuine issue of
material fact, 'the burden on the moving party may be discharged
by "showing" -- that is, pointing out to the district court --
that there is an absence of evidence to support the nonmoving
party's case' when the nonmoving party bears the ultimate burden
of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Cooper v. Sniezek</u>, 418 F. App'x 56, 58 (3d Cir. 2011) (citing <u>Celotex</u>, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.

**B. 42 U.S.C. § 1983**

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

12

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the§ party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)). The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806.)

Here, Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated, including his right to a fair trial, along with his Fourth Amendment right to be free from unreasonable seizures. (See Am. Compl. ¶¶ 59-67.) Plaintiff further asserts a Section 1983 claim for malicious prosecution contending that his Fourth and Fourteenth Amendment rights were violated. (Id. ¶¶ 68-70.) Plaintiff also alleges a related state law claim for malicious prosecution, and a claim

13

under the New Jersey Civil Rights Act for alleged violations of

his rights under both the federal and New Jersey Constitutions.

(Id. ¶¶ 77-82.)  Finally, Plaintiff asserts a Section 1983 claim

for supervisory liability.[9]  (Id. ¶¶ 71-76.)

IV.  **ANALYSIS**

    A.  **Claims Against Defendants Morales and Reyes**

    Defendants Morales and Reyes are named as Defendants in

Count I for purported Fourteenth Amendment Due Process

deprivations; Count II[10] alleging a Section 1983 claim for

malicious prosecution under the Fourth and Fourteenth

Amendments; and Count IV asserting a state law claim for

---

[9]    The amended complaint asserted a claim against the City of
Camden for supervisory liability under Section 1983, but summary
judgment was granted in favor of the City of Camden on that
claim by Opinion and Order dated September 30, 2013 and the City
of Camden was terminated as a defendant in this matter.  (Op.
[Doc. No. 91] 42, Sept. 30, 2013; Order [Doc. No. 92] 1, Sept.
30, 2013.)

[10]    Plaintiff's amended complaint misnumbers all of the Counts
subsequent to Count II.  There is a second Count II which is
more appropriately designated as Count III alleging supervisory
liability under Section 1983.  (See Am. Compl. ¶¶ 71-76.)
Plaintiff's state law claim for malicious prosecution is
numbered as Count V but is more properly numbered as Count IV of
the amended complaint.  (Id. ¶¶ 77-79.)  Finally, Plaintiff's
claim under the New Jersey Civil Rights Act should have been
designated as Count V, rather than Count VI.  (Id. ¶¶ 80-82.)
For clarity, the Court refers to the Counts of the amended
complaint by their appropriate sequential roman numerals, rather
than by the misnumbered roman numerals utilized by Plaintiff.

malicious prosecution. (Am. Compl. ¶¶ 60, 62, 69, 78.) With respect to Count I, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment through a series of subclaims. (Am. Compl. ¶¶ 59-67.) Plaintiff's subclaims are purportedly based on the: (1) fabrication of false inculpatory evidence; (2) failure to disclose exculpatory and impeachment evidence to the Plaintiff's criminal defense attorney;[11] and (3) acts of coercion which resulted in Plaintiff making a false plea. (Id.) Count V of the amended complaint alleges violations of the New Jersey Civil Rights Act but does not specifically name Defendants Morales or Reyes as Defendants. The Court, however, construes this claim to be asserted against these Defendants because it is brought against "[t]he individual defendants[.]" (Id. ¶ 81.)

In the present motion, Defendants Morales and Reyes argue that "[n]either [D]efendant was actually involved in the decision to arrest and/or prosecute [Plaintiff]" and

---

[11] The Court notes that this second subclaim is entitled "Failure to Disclose Exculpatory and Impeachment Evidence to the Prosecution[,]" but the use of the term Prosecution appears to be a typographical error. The text of the supporting paragraphs for this subclaim make clear that Plaintiff is challenging the individual Defendants' alleged failure to disclose this information to his criminal defense attorney or the court in the underlying state criminal proceedings. (Am. Compl. ¶ 62-64.)

"[c]onsequently, the allegations of the [a]mended [c]omplaint
have no bearing on the conduct of ... Reyes and ... Morales."
(Br. in Supp. of the Mot. for Summ. J. of Defs. Reyes and
Morales [Doc. No. 85-5] (hereinafter, "Defs.' Br."), 3.)  The
Court addresses the claims brought against each of these
Defendants separately below.

### B.  Propriety of Summary Judgment in Favor of Morales

Although Plaintiff's amended complaint purports to assert
claims against Morales for a wide variety of conduct he
allegedly engaged in, it is clear from the parties' statements
of material fact and the briefing on the motion that Defendant
Morales' involvement in the underlying criminal matter was
extremely limited.  With respect to Morales, a thorough review
of the amended complaint reveals that only one paragraph is
specifically directed to Morales' conduct.  Even that lone
paragraph alleges in a conclusory fashion that Morales "acted in
conjunction with" the other individual Defendants "to
investigate, contrive evidence, arrest and imprison" Plaintiff.
(Am. Compl. ¶ 14.)

Despite the sparse allegations of the amended complaint, it
is undisputed for purposes of the present motion that in
September of 2005, Morales, in his capacity as the "sergeant of
detectives in the homicide division of the Camden Police

Department[,]" was "in charge of six detectives, including ... Reyes." (Defs.' SOF ¶ 9; Pl.'s Ans. ¶ 9.) On the night that Mays was shot and killed, Morales was the supervisor on call for homicides, while Reyes was the detective on call. (Defs.' SOF ¶ 11; Pl.'s Ans. ¶ 11.) As a result, both Morales and Reyes were called to the scene of the Mays homicide, along with Defendant Woshnak of the Camden County Prosecutor's Office. (Defs.' SOF ¶ 10; Pl.'s Ans. ¶ 10.) At that time, Reyes – not Morales - "was assigned to investigate the death of Mays in conjunction with the Camden County Prosecutor's Office." (Defs.' SOF ¶ 12; Pl.'s Ans. ¶ 12.)

The record reflects that the investigation into Mays' death began that night by Reyes and Woshnak, and Plaintiff admits that "Morales did not participate in the investigation[.]" (Defs.' SOF ¶ 39; Pl.'s Ans. ¶ 39.) Furthermore, the parties do not dispute that Morales' role was limited solely to the extent he served as "the superior officer to ... Reyes at the time of the investigation" and would receive verbal updates about the investigation from Reyes on a regular basis. (Defs.' SOF ¶¶ 39, 41; Pl.'s Ans. ¶¶ 39, 41.) Plaintiff further admits that Morales did not know Mays, Tommie Smith, Tyrone Smith, or Acevedo, nor did Morales interview anyone connected to the underlying criminal investigation. (Defs.' SOF ¶¶ 40, 42; Pl.'s

17

Ans. ¶¶ 40, 42.)  It is also undisputed that Morales "was not

involved in the decision-making process to determine if there

was enough probable cause to arrest" Plaintiff.  (Defs.' SOF ¶

52; Pl.'s Ans. ¶ 52.)  To the extent Morales had any involvement

with respect to the arrest warrant issued against Plaintiff, it

appears that Morales simply received a telephone call from the

Camden County Prosecutor's Office advising of the warrant and

requesting that a detective accompany the prosecutor to present

the probable cause statement to the City Clerk, and that Morales

informed Reyes – the detective on the Mays investigation – to go

to the City Clerk concerning Plaintiff's arrest warrant.[12]

(Defs.' SOF ¶¶ 56-57; Pl.'s Ans. ¶¶ 56-57.)

    *1.   Count I – Due Process Violations*

Plaintiff asserts in the amended complaint that Defendant

Morales violated Plaintiff's rights to due process of law under

the Fourteenth Amendment based on his alleged fabrication of

false inculpatory evidence, his alleged failure to disclose

---

[12]    The Court notes that Plaintiff has admitted the facts
asserted in paragraphs 56-57 of Defendants' Statement of Facts,
which rely on the deposition testimony of Reyes.  (See Defs.'
SOF ¶¶ 56-57; Pl.'s Ans. ¶¶ 56-57.)  However, in his brief in
opposition to the motion, Plaintiff mischaracterizes the
deposition testimony Reyes provided and claims that "Morales ...
specifically instructed Reyes to sign the warrant and present
the evidence gathered by [Reyes] and Woshnak to the City Clerk."
(Pl.'s Opp'n 7.)

exculpatory and impeachment evidence, and apparent acts which coerced Plaintiff into falsely pleading guilty to a downgraded charge of manslaughter.  To succeed on a claim for deprivation of procedural due process rights under Section 1983, Plaintiff must show (1) that he was deprived of an individual interest of liberty or property encompassed within the Fourteenth Amendment; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate.  Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006).  Here, Plaintiff's allegations implicate his individual liberty interests under the Fourth and Fourteenth Amendment for purposes of a procedural due process claim.

Though the Court remains mindful that the evidence of the non-moving party, Plaintiff, is to be believed and that all reasonable inferences his favor must be made at the summary judgment stage, the Court concludes that Defendant Morales is entitled to summary judgment on Count I of Plaintiff's amended complaint.  The undisputed material facts presented to the Court by both Plaintiff and Defendant Morales in connection with this motion demonstrate that Morales was not involved in any significant aspect of the investigation into Mays' death which lead to Plaintiff's arrest and ultimately to his prosecution.

Plaintiff has expressly admitted that Morales did not interview any witnesses and "did not participate in the investigation." (Defs.' SOF ¶¶ 39, 42; Pl.'s Ans. ¶¶ 39, 42.) Therefore, evidence that Morales had the occasion to fabricate false inculpatory evidence is completely absent here. Moreover, there is no evidence in the record to demonstrate that Defendant Morales was involved in either obtaining Plaintiff's arrest warrant[13] or the execution of Plaintiff's formal arrest. Similarly, Plaintiff has explicitly admitted that Morales "was not involved in the decision-making process to determine if there was probable cause to arrest," and Plaintiff has not come forward with any evidence to indicate that Defendant Morales had any input or control over the decision to prosecute Plaintiff after his arrest. Additionally, nothing presented to the Court establishes that Defendant Morales had any authority, ability, or even the opportunity to offer Plaintiff a plea agreement for a downgraded charge of manslaughter, let alone the occasion to coerce Plaintiff into making a false plea. Finally, the record is completely devoid of any facts demonstrating that Defendant

---

[13] To the extent Morales received a telephone call requesting that Reyes accompany the Camden County Prosecutor's Office in presenting the statement of probable cause to the City Clerk and informed Reyes of that request, such involvement is *de minimis* and not sufficient to hold Morales liable for the claims asserted by Plaintiff.

Morales was aware of the subsequent exculpatory evidence regarding the sticky note and the recantations made by Acevedo.

Thus, a claim against Defendant Morales asserting that he violated Plaintiff's rights by failing to disclose exculpatory evidence cannot proceed where the record contains no facts showing that Morales was even aware of the existence of such evidence, let alone actively failed to disclose it. See Coley v. County of Essex, No. 2:08-4325, 2010 WL 3040039, at *5 (D.N.J. Aug. 4, 2010), aff'd, 462 F. App'x 157, (3d Cir. 2011) (granting summary judgment to investigator where plaintiff failed to show that investigator was a "decision-maker with regard to continuing the case against" him or that investigator participated or acquiesced in the purported rights violations). For Defendant Morales to be liable under Section 1983, he must have had "personal participation" in the alleged rights violation. See C.H. ex rel. Z.H. v. Olivia, 226 F.3d 198, 201 (3d Cir. 2000). Plaintiff has failed to show that Defendant Morales personally participated in violating his rights as alleged in Count I.

On this motion for summary judgment, Defendant Morales has met his initial burden by pointing out that there is an absence of evidence to support Plaintiff's case with respect to Count I when Plaintiff bears the ultimate burden of proof at trial.

Singletary, 266 F.3d at 192 n.2.  Accordingly, to avoid summary judgment on this Count, Plaintiff was required to make a showing sufficient to establish the existence of every element essential to that his case by identifying specific facts and affirmative evidence.  Here, Plaintiff has failed to meet his burden as set forth above.  In the absence of any evidence establishing Defendant Morales had any involvement in the underlying investigation or prosecution of Plaintiff, Plaintiff is not entitled to an inference that his bare allegations create an issue of material fact for trial.  See Lincoln v. Hanshaw, 375 F. App'x 185, 190 (3d Cir. 2010).  Thus, summary judgment must be entered in favor of Defendant Morales with respect to Count I.

   *2.   Count II – Section 1983 Malicious Prosecution*

   "Malicious prosecution is a common law tort that occurs when an official initiates a criminal proceeding without probable cause."  Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Donahue v. Gavin, 280 F.3d 371, 377-78 (3d Cir. 2002)).  "The tort is actionable under 42 U.S.C. § 1983, because it undermines an individual's right to be free from unreasonable seizures under the Fourth Amendment."  Davis, 451 F. App'x at 232 (citing Gallo v. City of Phila., 161 F.3d 217, 222-23 (3d Cir. 1998)).  "To prove a claim for malicious

prosecution brought under 42 U.S.C. § 1983, a plaintiff must satisfy each of the following five elements: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'"[14] <u>Minatee v. Philadelphia Police Dep't</u>, 502 F. App'x 225, 227 (3d Cir. 2012) (citing <u>Kossler v. Crisanti</u>, 564 F.3d 181, 186 (3d Cir. 2009)). For Plaintiff to prevail on this claim, he "must demonstrate that the criminal proceedings against [him were] initiated without probable cause or, under <u>Wilson v. Russo</u>, 212 F.3d 781 (3d Cir. 2000), 'that [defendants] recklessly disregarded the truth in their warrant application and that a warrant application based on what [defendants] should have told the judge would have lacked probable cause.'"

---

[14]    Similarly, under New Jersey law, "[t]o establish malicious prosecution, a plaintiff must show that: '(1) a criminal action was instituted by th[e] defendant against th [e] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.'" <u>Hyatt v. County of Passaic</u>, 340 F. App'x 833, 838 (3d Cir. 2009) (citing <u>LoBiondo v. Schwartz</u>, 970 A.2d 1007, 1022 (2009)).

Lincoln, 375 F. App'x at 188-189 (citing Wilson, 212 F.3d at 786; Sands v. McCormick, 502 F.3d 263, 266 (3d Cir. 2007)).

Based on the undisputed facts set forth above, it is unclear how Morales could be liable for a claim of malicious prosecution under Section 1983.  The record demonstrates that Morales had virtually no involvement in the underlying criminal investigation that led to Plaintiff's arrest.  He did not participation in the investigation conducted by Reyes and Woshnak, he did not know any of the relevant individuals questioned in the investigation, he did not conduct any interviews of these individuals, he did not prepare any reports relevant to the investigation, and he was not involved in the decision-making process to determine if there was enough probable cause to arrest Plaintiff.  Morales' role was limited to the extent he was Reyes' superior officer and received updates from Reyes on the status of the investigation.

However, for purposes of Section 1983, it is insufficient to assert liability based upon the theory of respondeat superior.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949.  Consequently, in order to prove a claim for malicious prosecution, a plaintiff must demonstrate that the government

24

official had "personal involvement in the alleged wrong." <u>Rode</u> <u>v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). In other words, a plaintiff must demonstrate that the supervisor participated in or had actual knowledge of and acquiesced in the wrongdoing. <u>Id.</u>

Without deciding the issue and assuming for the purposes of argument only that Reyes – who reported to Morales – engaged in wrongdoing here, there is no evidence in the record demonstrating that Morales himself participated in that alleged wrongdoing or that he had actual knowledge of it, and acquiesced in Reyes' conduct. On the contrary, Plaintiff admits that Morales had no role in determining whether there was probable cause to arrest Plaintiff, let alone that Morales had input or participated in the decision to institute criminal proceedings against Plaintiff. In the absence of any evidence that Morales was personally involved in the prosecution of Plaintiff, the Court must grant summary judgment to Morales on Count II of the amended complaint.[15]

> 3. *Count V – New Jersey Civil Rights Act*

---

[15] The Court addresses Plaintiff's claim for malicious prosecution under New Jersey law as asserted against Morales and Reyes <u>infra</u>.

As other courts in this District have previously recognized, "the New Jersey Civil Rights Act is interpreted analogously to 42 U.S.C. § 1983." Martin v. Unknown U.S. Marshals, ---- F. Supp. 2d -----, No. 10-0066, 2013 WL 4431789, at *34 (Aug. 15, 2013) (citing Hottenstein v. City of Sea Isle City, No. 11-740, 2011 WL 3651302, at *4 (D.N.J. Aug.18, 2011). In opposing summary judgment for Defendant Morales, Plaintiff has failed to identify either in the amended complaint or in his briefing a "specific right or theory of liability grounded in the New Jersey Civil Rights Act or New Jersey Constitution that is different from Plaintiff['s] claims under § 1983." See Martin, 2013 WL 4431789, at *34. In the absence of any different rights or theories of liability under the New Jersey Constitution than those the Court has already addressed under federal law, the Court must resolve the summary judgment motion on Count V consistently with the grant of summary judgment on Counts I and II and for the reasons set forth supra on those Counts. See Martin, 2013 WL 4431789, at *34. Accordingly, Defendant Morales is also entitled to summary judgment with respect to Count V for violations of the New Jersey Civil Rights Act.[16]

---

[16] To the extent that Count V can be construed to assert a claim against Reyes for violations of the New Jersey Civil

### C. Propriety of Summary Judgment in Favor of Reyes

For purposes of the present motion, it is undisputed that although Reyes was assigned to investigate the death of Mays as part of a joint homicide investigation by the Camden Police Department and the Camden County Prosecutor's Office, the CCPO was the lead agency on this investigation and Defendant Woshnak was the lead investigator. (Defs.' SOF ¶¶ 12-13, 15, 17, 38; Pl.'s Ans. ¶¶ 12-13, 15, 17, 38.) The record also demonstrates that in his role as lead investigator, Woshnak wrote all of the reports relevant to the investigation, without any input from Reyes. (Defs.' SOF ¶¶ 15-17; Pl.'s Ans. ¶¶ 15-17.) In fact, Reyes was not involved in the drafting and execution of any reports in any manner, nor was he, or anyone else from the Camden Police Department, normally even copied on these reports. (Defs.' SOF ¶ 16; Pl.'s Ans. ¶ 16.)

The parties also agree that during the course of the investigation, Reyes never interviewed any of the relevant individuals by himself, and that Woshnak was always present for these interviews. (Defs.' SOF ¶ 21; Pl.'s Ans. ¶ 21.) The

---

Rights Act, the Court finds that the same reasoning set forth above is applicable to resolve that claim as well. Accordingly, the Court will grant summary judgment in favor of Reyes on this claim for the reasons set forth infra which grant summary judgment to Reyes on the remaining Counts of the amended complaint.

record also demonstrates that Reyes "never made a determination as to whether ... Acevedo was a reliable witness" and that Reyes did not have any discussions with anyone from the CCPO about Acevedo's reliability. (Defs.' SOF ¶ 25; Pl.'s Ans. ¶ 25.)[17]

The record is also undisputed with respect to which individuals and what agency made the decision to process a warrant for Plaintiff's arrest. "The decision to process a warrant for the arrest of [Plaintiff] was made within the Camden County Prosecutor's Office" and approval and execution of the warrant itself, along with the probable cause statement in support of the warrant, was made by the section chief of the

---

[17] In Plaintiff's Answer to Defendants' Statement of Material Facts, Plaintiff denies the facts set forth in paragraphs 25, 50, 70, and 71. However, Plaintiff fails to cite to any affidavits, deposition testimony, or other documents submitted in connection with this motion in support of these denials.

Plaintiff's failure to cite to the record in support of its denial to these facts violates Local Civil Rule 56.1(a) which provides that the "opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*." L. Civ. Rule 56.1(a) (emphasis added).

As a result of Plaintiff's failure, the Court "will consider any statement of fact which was not denied by ... Plaintiff with a citation to the record as undisputed for the purposes of this motion for summary judgment." See Friedman v. Bank of America, N.A., No. 09-2214, 2012 WL 1019220, at *2 n.6 (D.N.J. Mar. 26, 2012) (citing Stouch v. Twp. of Irvington, No. 03-6048, 2008 U.S. Dist. LEXIS 54055, at *5 n. 1, 2008 WL 2783338 (D.N.J. July 16, 2008)).

CCPO prior to being delivered to the City Clerk. (Defs.' SOF ¶¶ 44-45, 51, 54; Pl.'s Ans. ¶¶ 44-45, 51, 54.) Plaintiff further admits that "Reyes did not prepare the probable cause statement against" Plaintiff in this matter. (Defs.' SOF ¶ 55; Pl.'s Ans. ¶ 55.) Although Reyes did not prepare the probable cause statement, he admits that he believed the probable cause statement offered in support of the warrant he signed against Plaintiff was true particularly in light of the statement from the second witness - Skipper Grant - who stated that he saw Plaintiff's vehicle parked at the corner of 5th and York, just a half a block from where Mays was shot. (Defs.' SOF ¶¶ 46, 58-60; Pl.'s Ans. ¶¶ 46, 58-60.)

It is also undisputed that Reyes was no longer connected with the investigation of Plaintiff at the time Plaintiff pled guilty, that Reyes never had any contact with Defendant Harry Collins and had no knowledge of the sticky note allegedly written by Collins, and that he only learned of that note by reading about it in the Courier Post. (Defs.' SOF ¶¶ 49, 70; Pl.'s Ans. ¶¶ 49, 70.)[18]

---

[18]    As set forth supra, the facts of paragraph 70 of Defendants' Statement of Materials Facts are considered undisputed on this motion as a result of Plaintiff's failure to support the denial of this paragraph with citations to the record.

*1. Count I – Due Process Violation*

Similarly to Defendant Morales and several of the
individuals Defendants, Plaintiff asserts in the amended
complaint that Defendant Reyes violated Plaintiff's rights to
due process of law under the Fourteenth Amendment based on his
alleged fabrication of false inculpatory evidence, his alleged
failure to disclose exculpatory and impeachment evidence, and
apparent acts which coerced Plaintiff into falsely pleading
guilty to a downgraded charge of manslaughter.  To succeed on a
claim for deprivation of procedural due process rights
under Section 1983, Plaintiff must show (1) that he was deprived
of an individual interest of liberty or property encompassed
within the Fourteenth Amendment; and (2) the procedures used by
the state to effect this deprivation were constitutionally
inadequate.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 234 (3d
Cir. 2006).  Here, Plaintiff's allegations implicate his
individual liberty interests under the Fourth and Fourteenth
Amendment for purposes of a procedural due process claim.

Even believing Plaintiff's evidence and making all
reasonable inferences in his favor, as with Defendant Morales,
the Court again concludes that Defendant Reyes is entitled to
summary judgment on Count I of Plaintiff's amended complaint.
The undisputed material facts presented to the Court by both

30

Plaintiff and Defendant Reyes demonstrate that there is no
evidence from which a reasonable jury could find that Reyes had
the occasion to fabricate false inculpatory evidence, was aware
of exculpatory and impeachment evidence that should have been
disclosed to Plaintiff's criminal defense counsel, or coerced
Plaintiff into making a false plea. Plaintiff has expressly
admitted that while Reyes was assigned to investigate the Mays'
shooting, Woshnak, and not Reyes, was the lead investigator on
the case. It is further undisputed that Reyes did not prepare
any of the written reports or statements that were part of the
underlying criminal investigation, and that Woshnak drafted
these reports without any input from Reyes. The record also
reflects that Reyes was not even copied on these reports.
Moreover, Reyes did not conduct any of the interviews with
witnesses or persons of interest on his own – Woshnak was
present for all of these interviews. It thus appears to the
Court that it was Woshnak, not Reyes, who drafted any related
reports generated from these interviews. Thus, evidence that
Reyes had the occasion to fabricate false inculpatory evidence
is completely absent here.

Furthermore, while Reyes did sign the arrest warrant
against Plaintiff, the record makes clear that the decision to
process, draft, approve and execute the warrant was handled

31

entirely by the Camden County Prosecutor's Office.  This
included the drafting of the probable cause statement offered in
support of Plaintiff's arrest.  It is clear that Reyes'
involvement was limited to his role in signing the warrant as
requested by the Prosecutor's Office and that nothing known to
Reyes at the time he signed the warrant should have caused him
to question the existence of probable cause.  As for subsequent
events, nothing presented to the Court establishes that Reyes
ever learned about the sticky note written by Collins or that
Acevedo recanted his statements prior to the time that Plaintiff
entered his plead, thus Reyes could not have failed to disclose
exculpatory evidence here.  Similarly, it is undisputed that
Reyes was no longer involved in this case at the time that
Plaintiff entered his plea and there is no evidence
demonstrating that Reyes had any authority, ability, or even the
opportunity to offer Plaintiff a plea agreement for a downgraded
charge of manslaughter, let alone the occasion to coerce
Plaintiff into making a false plea.

Accordingly, Plaintiff's claim against Defendant Reyes for
violating Plaintiff's rights by failing to disclose exculpatory
evidence cannot proceed where the record contains no facts
showing that Reyes was even aware of the existence of such
evidence, let alone actively failed to disclose it.  See Coley,

2010 WL 3040039, at *5.  Just like Defendant Morales, in order

for Defendant Reyes to be liable under Section 1983, he must

have had "personal participation" in the alleged rights

violation.  Plaintiff has failed to show that Defendant Reyes

personally participated in violating his rights as alleged in

Count I, and summary judgment must be granted in Reyes' favor on

this Count.

      *2.   Count II – Section 1983 Malicious Prosecution*

     As set forth supra, "[t]o prove a claim for malicious

prosecution brought under 42 U.S.C. § 1983, a plaintiff must

satisfy each of the following five elements: '(1) the defendants

initiated a criminal proceeding; (2) the criminal proceeding

ended in plaintiff's favor; (3) the proceeding was initiated

without probable cause; (4) the defendants acted maliciously or

for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent

with the concept of seizure as a consequence of a legal

proceeding.'"  Minatee v. Philadelphia Police Dep't, 502 F.

App'x 225, 227 (3d Cir. 2012) (citing Kossler v. Crisanti, 564

F.3d 181, 186 (3d Cir. 2009)).

     Before the Court can properly address the merits of

Plaintiff's § 1983 claim for malicious prosecution, the Court

must consider Defendant Reyes' argument that he is entitled to

qualified immunity on Plaintiff's federal claim.[19]  The doctrine

of qualified immunity protects government officials "from

liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights

of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity

balances two important interests - the need to hold public

officials accountable when they exercise power irresponsibly and

the need to shield officials from harassment, distraction, and

liability when they perform their duties reasonably."  Pearson

v. Callahan, 129 S. Ct. 808, 815 (2009).  The doctrine provides

a government official immunity from suit rather than a mere

defense from liability, and, thus, the issue of whether

qualified immunity applies should be decided at the earliest

possible stage in litigation.  Id.  "Qualified immunity ...

gives government officials breathing room to make reasonable but

mistaken judgments, and protects all but the plainly incompetent

or those who knowingly violate the law."  Fiore v. City of

Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing

Messerschmidt v. Millender, --- U.S. ---, 132 S. Ct. 1235, 1244

---

[19]    In light of the Court's finding that Defendant Morales had
no personal involvement in the challenged decisions, the Court
need not address any qualified immunity defense asserted by
Morales.

(2012)) (internal quotation marks and citations omitted).

Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable." See Harlow, 457 U.S. at 818. "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful." Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)). If the answer to either question is "no," the analysis may end there. See Pearson, 129 S. Ct. at 816; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

Defendant Reyes argues that it was objectively reasonable for him "to believe that probable cause existed to arrest" Plaintiff given that there was "eyewitness testimony, which directly implicated [Plaintiff] in the homicide of Mays, and it was corroborated by the physical evidence at the scene." (Defs.' Br. 19.) Plaintiff counters that Defendant Reyes has "fallen well short of showing that [his] conduct was objectively

reasonable." (Br. In Opp'n to Defs.' Morales and Reyes' Mot. for Summ. J. [Doc. No. 87] (hereinafter, "Pl.'s Opp'n"), 3.)

According to Plaintiff, Reyes disregarded the "glaring inconsistency" which exists between the statement provided by Acevedo and the statements provided by Tommie and Tyrone Smith. (Id.) Plaintiff contends that this sort of "glaring inconsistency casts significant doubt on the veracity of Acevedo's statement as well as his general reliability as witness." (Id.) Therefore, Plaintiff argues, it was not objectively reasonable for Reyes "to present [Acevedo's] statement to the Prosecutor's office as evidence that could be used against ... Plaintiff." (Id.) Plaintiff takes the position that Reyes presented evidence to the Prosecutor's Office "that had been directly contradicted by separate, yet credible testimony" and in light of this "objectively unreasonable" conduct, it is for the jury to decide whether or not Reyes' conduct was subjectively reasonable.[20] (Id. at 4.) Thus Plaintiff asserts that summary judgment must be denied.

Defendant Reyes argues here that because sufficient

_____

[20]    Plaintiff relies on this same arguments with respect to both his state tort claims and his federal claims under Section 1983. (Pl.'s Opp'n 4) ("Following the analysis set forth above as to the State tort claims, there is no factual basis to support a finding that ... Reyes' conduct was objectively reasonable.").

evidence existed to support a finding of probable cause for the arrest of Plaintiff, he is entitled to qualified immunity since Plaintiff cannot establish that his constitutional rights were violated because the proceedings brought against him were not instituted without probable cause.

"To obtain qualified immunity in a § 1983 action premised on malicious prosecution, a police officer must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines." Davis, 451 F. App'x at 232 (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)). In broad terms, the Fourth Amendment prohibits an arrest except upon probable cause. Orsatti, 71 F.3d at 482. Specifically, the police officer "must show a reasonable officer in his shoes, aware of the same facts and circumstances, would have probable cause to arrest." Davis, 451 F. App'x at 233 (citing Malley v. Briggs, 475 U.S. 335, 344–45 (1986)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483 (citing United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)); see also United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists whenever

reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.")

Important for purposes of this motion, "[a] 'credible report from a credible witness' can suffice, ... and evidence that might exonerate a defendant does not defeat probable cause." Davis, 451 F. App'x at 233 (citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000); Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003); Gramenos v. Jewel Cos. Inc., 797 F.2d 432, 440 (7th Cir. 1986)).[21] "Moreover, when the alleged constitutional violation relates to an arrest made pursuant to a warrant, the officer will 'lose the shield of immunity' only 'where the warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable[.]'" Bankes v. Felice, No.

_____

[21] See, e.g., Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003) (holding that probable cause does not turn on evidence that might exonerate because there is no "duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested"); Gramenos v. Jewel Cos. Inc., 797 F.2d 432, 440 (7th Cir. 1986) ("The Court has never suggested that the police, with [incriminating] information in hand, must conduct a further investigation or put contradictory evidence into the affidavit.").

05-356, 2006 WL 1765074, at *6 (D.N.J. June 26, 2006) (citing Orsatti, 71 F.3d at 483).

Reyes asserts that it was objectively reasonable for him to believe that there was probable cause to arrest Plaintiff because there was eyewitness testimony from two witnesses (Acevedo and Skipper Grant) that implicated Plaintiff in additional to physical evidence at the scene which corroborated the witnesses' testimony. (Defs.' Mem. 19; Defs.' SOF ¶¶ 46, 60; Pl.'s Ans. ¶¶ 46, 60.) Reyes further argues that Plaintiff has failed to demonstrate how any inconsistencies between Acevedo's statement and the statements of the Smith brothers made it unreasonable for Reyes to rely on the testimony of Acevedo given the additional corroboration evidence gathered in the investigation. (Defs.' Reply 12.) Reyes contends that relying on Acevedo's statement was also objectively reasonable given that Acevedo passed a voice computer stress analysis for truthfulness. (Defs.' Reply 12; Defs.' SOF ¶ 48; Pl.'s Ans. ¶ 48.) Reyes takes the position that "a reasonable police officer possessing the same information could have believed that the arrest of ... Plaintiff was warranted[,]" and thus his conduct was objectively reasonable and he is entitled to qualified immunity. (Defs.' Reply 12.)

Plaintiff's arguments to defeat qualified immunity here are

39

minimal, insufficient, and unpersuasive in light of the
undisputed facts presented in the present motion.  The Court
agrees with Reyes that a reasonable officer in his shoes, aware
of the same facts and circumstances, would have probable cause
to arrest because the facts and circumstances in Reyes'
knowledge at that time were adequate for a reasonable person to
believe that the offense of murder had been committed by
Plaintiff.  See Davis, 451 F. App'x at 233; Orsatti, 71 F.3d at
483.  Moreover, because there is no evidence to suggest that
Reyes was aware that Acevedo's statement was fabricated at the
time of Plaintiff's arrest, a reasonable jury could not find
that Reyes' belief in the existence of probable cause was
objectively unreasonable.[22]  Thus, Reyes is entitled to qualified
immunity.

   Having found that probable cause existed for the arrest of
Plaintiff at that time, Plaintiff has failed to demonstrate that
a constitutional deprivation occurred here as a result of Reyes'
conduct.  In the absence of such a constitutional deprivation,

---

[22]  The Court recognizes that where factual issues material to
the defense of qualified immunity are in dispute a jury must
decide such issues before a qualified immunity analysis may be
applied.  Here however the material issues are not in dispute.
Where the parties differ is the legal question of whether
Reyes's actions were objectively reasonable under the
circumstances.

the qualified immunity inquiry is at an end. [23]   Accordingly, Reyes is entitled to summary judgment on Plaintiff's Section 1983 claim for malicious prosecution.[24]

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants' motion [Doc. No. 85] for summary judgment is granted.  An Order consistent with this Opinion will be entered.

Dated: <u>December 31, 2013</u>         <u>s/ Noel L. Hillman</u>
                                        NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey

---

[23]  Because the Court finds that Plaintiff cannot support his claim that a constitutional violation occurred, the Court need not address the second step in the qualified immunity analysis.

[24]  Because Plaintiff's malicious prosecution claim under New Jersey state law similarly requires proof that the proceeding was initiated without probable cause, both Defendants Morales and Reyes are entitled to summary judgment on Count IV of Plaintiff's amended complaint given the Court's finding that probable cause to arrest.  Cf. State v. Basil, 998 A.2d 472, 480-81 (reciting standard for probable cause to arrest under New Jersey law and relying on federal law as the basis for that standard)).