UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

PERMAN PITMAN,

               Plaintiff,          Civil No. 10-2538 (NLH/KMW)

v.

                                     **OPINION**

JOSHUA M. OTTEHBERG, et al.,

               Defendants.

_____

**APPEARANCES:**

Paul R. Melletz, Esq.
Ross Begelman, Esq.
Begelman Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, New Jersey 08034

      *Attorneys for Plaintiff Perman Pitman*

Matthew J. Behr, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Suite 300
Cherry Hill, New Jersey 08002

      *Attorneys for Defendant Matthew Woshnak*

Elyse Glazer Crawford, Esquire
Parker McCay, PA
9000 Midlantic Drive
Suite 300
P.O. Box 5054
Mt. Laurel, New Jersey 08054

      *Attorneys for Defendant Harry Collins*

**HILLMAN, District Judge:**

Presently before the Court is the motion [Doc. No. 54] of Defendant Matthew Woshnak seeking dismissal of the claims in the amended complaint that are asserted against him.  The Court previously granted in part and denied in part a motion to dismiss filed by Defendants Camden County Prosecutor's Office, Woshnak and Joshua Ottenberg[1] and granted Plaintiff leave to file an amended complaint.  Plaintiff thereafter filed an amended complaint, and Defendant Woshnak now seeks dismissal of the claims set forth therein.

The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, Defendant Woshnak's motion to dismiss is granted in part and denied in part.

I.   **JURISDICTION**

In his amended complaint [Doc. No. 49], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights as well as state law claims for malicious prosecution and alleged violations of the New Jersey Civil Rights Act.  The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental

---

[1] Although named in the caption of the complaint as "Joshua Ottehberg," Defendants' motion to dismiss identified this defendant as "Joshua Ottenberg."

2

jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

**II.   <u>BACKGROUND</u>**

As the Court has previously explained, "[i]n this case, Plaintiff, Perman Pitman, contends that he was wrongfully arrested and imprisoned for a murder he did not commit.  After spending two years in jail because he was unable to make bail, Plaintiff pled guilty to a downgraded charge of manslaughter. [Approximately] [t]wo years later, the Camden County Prosecutor's Office ("CCPO") disclosed exculpatory evidence, at which time Plaintiff's Judgment of Conviction and guilty plea were vacated and Plaintiff was released from jail.  Shortly thereafter, Plaintiff filed the present civil action . . . based on his wrongful arrest and subsequent prosecution." (Op. [Doc. No. 40] 2, Dec. 30, 2011.)  As noted above, by Opinion and Order dated December 30, 2011, several defendants were dismissed from this suit, and Plaintiff was granted leave to file an amended complaint.

The essence of Plaintiff's civil rights claims arises from his arrest, conviction, and imprisonment for the September 2005 shooting death of Robert A. Mays ("Mays").[2]  Late in the evening

---

[2]    In the amended complaint, Plaintiff identifies the victim as "Robert A. Mayes."  The Court notes that the documents attached to the amended complaint indicate that the proper spelling is "Mays."

of September 26, 2005, Mays was shot and killed in Camden, New Jersey. (Am. Compl. ¶ 20.) As set forth in the amended complaint, Mays was shot three times with a .45 caliber weapon in the back and the arm. (Id.) The City of Camden Police Department and the CCPO assigned detectives to investigate the shooting death of Mays. (See, e.g., id. ¶¶ 12-13, 21-22, 29.) According to Plaintiff, the CCPO[3] and the individual Defendants "had no physical or testimonial evidence against [Plaintiff] other than a witness" by the name of Efrain Ayala Acevedo ("Acevedo"), and they relied solely on Acevedo's statement to "arrest, imprison and prosecute Mr. Pitman." (Id. ¶¶ 2, 43.)

On or about February 8, 2006, approximately four months after Mays was killed, Defendant Palmira White, the Court Administrator for the City of Camden Municipal Court, issued a warrant for Plaintiff's arrest for the alleged felony murder of Mays. (Id. ¶¶ 1, 15, 32.) The arrest warrant was issued by Defendant White based upon a sworn statement of probable cause

---

[3]    The Court's December 30, 2011 Opinion and Order dismissed all claims alleged against the CCPO in the original complaint with prejudice based on Eleventh Amendment immunity. (Op. [Doc. No. 40] 22, Dec. 30, 2011; Order [Doc. No. 41] 1, Dec. 30, 2011.) After Plaintiff filed his amended complaint on February 27, 2012, the parties stipulated to the dismissal of the County of Camden from this suit without prejudice. (Stipulation of Dismissal [Doc. No. 51] 1.) The Court further notes that the County of Camden was not named as a Defendant in Plaintiff's amended complaint.

submitted to her by Defendant Woshnak, an investigator with the
CCPO, and Defendant Isidoro Reyes, a detective with the City of
Camden Police Department.  (Id. ¶¶ 1, 12, 13.)  Pursuant to the
arrest warrant, Plaintiff was arrested on February 9, 2006 and
charged with murder in the shooting death of Mays.  (Id. ¶ 32.)
On February 9, 2006, after he was arrested, Plaintiff provided a
statement to Defendants Woshnak and Reyes in which he admitted
that "he was present at the scene of the shootings" but denied
that he was the shooter.  (Id. ¶ 33.)  Plaintiff told the
investigators he observed a lone gunman of Puerto Rican origin -
who Plaintiff believed killed Mays - and who shot at Plaintiff
as Plaintiff ran away from the scene.  (Id.)

   At the time he was arraigned, Plaintiff's bail was
allegedly set so high that he was unable to post bail and
remained in prison "during the entire pre-trial process" for
nearly two years.  (Am. Compl. ¶ 44.)  During this time,
Plaintiff continued to profess his innocence, demanded
discovery, requested investigation of the crime scene, and filed
motions to dismiss the indictment against him and reduce his
bail, but was unsuccessful in his attempts.  (Id. ¶¶ 45-47.)  In
October of 2007, Plaintiff asserts that Defendant Collins
presented Plaintiff with a plea offer whereby Plaintiff would
plead guilty to a significantly downgraded charge of

5

manslaughter with a four year prison term, approximately half of which Plaintiff had already served.  (Id. ¶ 50.)

Facing an indictment that charged him with murder, felony murder, armed robbery, conspiracy, possession of a firearm for an unlawful purpose and unlawful possession of a handgun, Plaintiff represents that he "reluctantly agreed to the plea agreement" which dismissed all of those charges in lieu of the amended single charge for manslaughter because he was feeling "[d]epressed, broken, . . . cornered and abused by the system" and he had "no trial date and [there was] no end in sight[.]" (Id. ¶¶ 50-51.)

As the Court previously noted, "[i]t now appears, by its own admission, that the State should never have allowed Plaintiff to plead guilty."  (Op. [Doc. No. 40] 5, Dec. 30, 2011.)  Plaintiff asserts in the amended complaint that on February 23, 2010, the CCPO sought Plaintiff's immediate release from prison and an Order vacating his conviction.  (Am. Compl. ¶ 6.)  This apparently occurred because, on February 18, 2010, during the course of responding to Plaintiff's Petition for Post-Conviction Relief, Teresa M. Garvey, an Assistant Prosecutor in the CCPO, "searched the trial file" and discovered a March 7, 2007 memorandum and an attached "sticky note", both written by Defendant Collins and addressed to Defendant Woshnak. (Id. ¶ 41.)  The handwritten sticky note, attached as Exhibit G

to Plaintiff's amended complaint, indicated that another
investigator with the CCPO had been advised by a jailhouse
informant that Acevedo was paid to implicate Plaintiff in the
crime.[4]  Garvey brought the sticky note to the attention of her
superiors and "it was determined that the note and the
information contained therein represented exculpatory evidence
that should have been provided to" Plaintiff pursuant to Brady
v. Maryland, 373 U.S. 83 (1963).  (Id.)  The state court entered
"an Order of Nolle Pros, dated February 23, 2010, confirming
that the [CCPO] [would] 'no longer prosecute [Plaintiff] on
behalf of the State of New Jersey for the indictment . . . and
that all proceeding[s] upon the indictment aforesaid be
altogether and forever stayed in court against [Plaintiff].'"
(Id. ¶ 52.)

---

[4] Plaintiff also contends that Acevedo had recanted his story
three times.  First, Acevedo purportedly gave an affidavit to an
investigator for the public defender on January 24, 2007, which
was turned over to Defendant Collins on February 12, 2007 and
which stated that Acevedo had no knowledge of the matter and had
no information to help either the plaintiff or the defendant.
(Am. Compl. ¶ 37; see also Ex. F.)  Plaintiff further alleges
that on March 5, 2007, Acevedo told an investigator for the
public defender that he accused Plaintiff because he was afraid
of blame being placed on him.  (Am. Compl. ¶ 37.)  On October
13, 2007, Acevedo then purportedly told a third version to an
investigator for the public defender in which he indicated that
there was only one shooter and that he could not say for sure
that it was Plaintiff.  (Id.)  Although Defendants Collins and
Woshnak allegedly knew of all three of the recantations, as well
as the statement on the sticky note attached to the March 7,
2007 memorandum, Defendant Collins nonetheless presented
Plaintiff with a plea deal in October 2007.  (Id. ¶ 50.)

Based on the foregoing, Plaintiff's amended complaint asserts a number of claims against various Defendants.  At this time, the Court focuses only on the claims against the moving Defendant, Matthew Woshnak.  Defendant Woshnak is named as a defendant in Count I for purported Fourteenth Amendment Due Process deprivations; Count II[5] alleging a Section 1983 claim for malicious prosecution under the Fourth and Fourteenth Amendments; Count IV asserting a state law claim for malicious prosecution; and Count V asserting a claim under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 to -2.[6]  (Am. Compl. ¶¶ 60, 65, 69, 78, 81.)  With respect to Count I, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment through a series of sub-claims.  (Am. Compl. ¶¶ 59-67.)  Plaintiff's sub-claims against Defendant

---

[5]    Plaintiff's amended complaint numbers incorrectly all of the counts subsequent to Count II.  There is a second Count II which is more appropriately designated as Count III alleging supervisory liability under Section 1983.  (See Am. Compl. ¶¶ 71-76.)  Plaintiff's state law claim for malicious prosecution is numbered as Count V but is more properly numbered as Count IV of the amended complaint.  (Id. ¶¶ 77-79.)  Finally, Plaintiff's claim under the New Jersey Civil Rights Act should have been designated as Count V, rather than Count VI.  (Id. ¶¶ 80-82.)  For clarity, the Court refers to the counts of the amended complaint by their appropriate sequential roman numerals, rather than by the non-sequential roman numerals utilized by Plaintiff.

[6] Count V of the amended complaint alleges violations of the New Jersey Civil Rights Act but does not specifically name Defendant Woshnak as a defendant.  The Court, however, construes this claim to be asserted against this defendant because it is brought against "[t]he individual defendants[.]"  (Id. ¶ 81.)

Woshnak are purportedly based on the fabrication of false inculpatory evidence, and (2) acts of coercion which resulted in Plaintiff making a false plea.  (Id. ¶¶ 59-61, 65-67.)

III. **DISCUSSION**

In the present motion, Defendant Woshnak seeks the dismissal of the claims against him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A.   **Standard for Dismissal under Rule 12(b)(1)**

Defendant Woshnak argues that Plaintiff's Section 1983 claims are barred by the doctrine of Eleventh Amendment sovereign immunity.  Eleventh Amendment immunity is a challenge to this Court's subject matter jurisdiction and, therefore, is determined pursuant to Federal Rule of Civil Procedure 12(b)(1). Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996).  The standard to be applied when deciding a motion under Rule 12(b)(1) depends on the nature of the motion.

Where a party argues that the complaint on its face is insufficient to invoke the Court's subject matter jurisdiction, such as a claim that the complaint fails to present a federal question or fails to demonstrate diversity of citizenship, then the Court applies the same standard as utilized in deciding a motion under Rule 12(b)(6).  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889-92 (3d Cir.

1977)).  In other words, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).

If a party argues that the court lacks subject matter jurisdiction because of the facts of the case, such as a claim that the plaintiff lacks standing due to mootness, the Court may consider evidence outside of the pleadings.  Constitution Party, 757 F.3d at 358.  "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Mortensen, 549 F.2d at 891.  In cases challenging the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proof that jurisdiction exists.  Id.

Here, Defendant Woshnak is making a facial attack that Plaintiff's claims are barred by sovereign immunity and, therefore, the Court accepts the allegations in the amended

complaint as true and utilizes the standard for dismissal under Rule 12(b)(6).

**B.   Standard for Dismissal Under Rule 12(b)(6)**

In considering whether Plaintiff's complaint fails to state a claim, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" the plaintiff).  A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'")

11

(citation omitted).  First, under the Twombly/Iqbal standard, a
district court "must accept all of the complaint's well-pleaded
facts as true, but may disregard any legal conclusions." Fowler
v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing
Iqbal, 556 U.S. at 678, 129 S. Ct. 1937).  Second, a district
court "must then determine whether the facts alleged in the
complaint are sufficient to show that the plaintiff has a
'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing
Iqbal, 556 U.S. at 679, 129 S. Ct. 1937).

"[A] complaint must do more than allege the plaintiff's
entitlement to relief." Fowler, 578 F.3d at 211; see also
Phillips, 515 F.3d at 234 ("The Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S. at 556, 127
S. Ct. 1955).  "The defendant bears the burden of showing that
no claim has been presented." Hedges v. United States, 404 F.3d
744, 750 (3d Cir. 2005).

Finally, a court in reviewing a Rule 12(b)(6) motion must
consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of public record.
Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 772 (3d
Cir. 2013).  A court may also consider "'undisputedly authentic
documents if the complainant's claims are based upon these
documents[.]'"  Id. (quoting Mayer v. Belichick, 605 F.3d 223,
230 (3d Cir. 2010)).  If any other matters outside the pleadings
are presented to the court, and the court does not exclude those
matters, a Rule 12(b)(6) motion will be treated as a summary
judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**IV.  ANALYSIS**

    **A.  Eleventh Amendment Sovereign Immunity**

    Defendant Woshnak argues that he is absolutely immune from
suit in federal court under the Eleventh Amendment.  He
specifically contends that as an employee of the CCPO, he is an
agent of the State of New Jersey and, as such, is an arm of the
State for Eleventh Amendment purposes.  (Br. in Supp. of Mot. to
Dismiss Pl.'s Complaint, With Prejudice, for Failure to State a
Claim (hereafter, "Def.'s Br.") 11.)  In its Opinion dated
December 30, 2011, the Court previously addressed Eleventh
Amendment immunity in connection with Plaintiff's claims against
the CCPO and Defendant Ottenberg, who at the time was the Camden
County Prosecutor.  (Op. [Doc. No. 40] 13, Dec. 30, 2011.)  The
Court concluded that Plaintiff's claims against the CCPO and
Defendant Ottenberg in his official capacity were barred by the

doctrine of sovereign immunity, and these claims were dismissed with prejudice. (Id. at 22, 24; Order [Doc. No. 41] 1, Dec. 30, 2011.) The claims against Defendant Ottenberg in his individual capacity were dismissed without prejudice, because the complaint failed to describe with sufficient particularity the nature of his alleged involvement in the events at issue in this case. (Op. [Doc. No. 40] 30-31, Dec. 30, 2011.) Defendant Woshnak argues that because he too is an employee of the Prosecutor's Office, the claims against him should be dismissed for the same reasons the claims against Defendants Ottenberg and the CCPO were dismissed. (Def.'s Br. 11.)

The Court set forth the law regarding the Eleventh Amendment in detail in its December 30, 2011 Opinion. (See generally Op. [Doc. No. 40] 13-15, Dec. 30, 2011.) The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v.

14

Jordan, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662
(1974).  The Eleventh Amendment protects states and their
agencies and departments from suit in federal court regardless
of the type of relief sought.  Pennhurst State Sch. & Hosp. v.
Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67
(1984).  Section 1983 does not override a state's Eleventh
Amendment immunity.  Quern v. Jordan, 440 U.S. 332, 345, 99 S.
Ct. 1139, 59 L. Ed. 2d 358 (1979).

        To determine whether Eleventh Amendment immunity applies to
a state agency, a court must consider three factors: (1) the
source of the agency's funding — i.e., whether payment of any
judgment would come from the state's treasury; (2) the status of
the agency under state law; and (3) the degree of autonomy from
state regulation.  See Fitchik v. New Jersey Transit Rail
Operations, Inc., 873 F.2d 655, 659 (3d Cir.) (en banc), cert.
denied, 493 U.S. 850 (1989).  In Coleman v. Kaye, 87 F.3d 1491,
1500-02 (3d Cir. 1996), cert. denied, 519 U.S. 1084, 117 S. Ct.
754, 136 L. Ed. 2d 691 (1997), the Third Circuit Court of
Appeals recognized that county prosecutorial offices conduct two
distinct sets of functions: (1) the administrative functions of
operating their offices and (2) the classic law enforcement and
investigative functions for which they are chiefly responsible.
The Third Circuit's analysis culminated in the conclusion that
"when [New Jersey county] prosecutors engage in classic law

15

enforcement and investigative functions, they act as officers of the state." Id. at 1505.

In this case, as the Court noted in its December 31, 2011 Opinion, the first Fitchik factor is satisfied when the money to pay a judgment in a case would come from the state. Fitchik, 873 F.2d at 659. Although county prosecutors act as agents for both the State and the county that is the situs of their office, the State is obligated to pay "the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws." Wright v. State, 169 N.J. 422, 455, 778 A.2d 443 (2001). On the other hand, "when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator," then the county prosecutor acts on behalf of the county and is not entitled to indemnification by the State. See id. at 454.

Plaintiff contends that the first Fitchik factor does not weigh in favor of a finding of Eleventh Amendment immunity, because the State is not obligated to pay a judgment against a state officer where, as alleged here, the officer's conduct purportedly involves actual fraud, actual malice or willful misconduct. (See Br. in Opp. to Mot. to Dismiss Pl.'s Compl., with Prejudice, for Failure to State a Claim (hereafter, "Pl.'s

Opp. Br.") 16-19.)   In Wright, the New Jersey Supreme Court held that "the State of New Jersey may be required to indemnify and defend [the] prosecutors and their subordinates for tortious conduct committed during the investigation, arrest, and prosecution of [a defendant], under the relevant provisions" of the New Jersey Tort Claims Act.   Wright, 169 N.J. at 456, 778 A.2d 443.   The Supreme Court also noted, however, that "the State's duty to indemnify and defend county prosecutors and their subordinates is limited to acts or omissions that do not involve actual fraud, actual malice or willful misconduct[.]" Id. (citing N.J. Stat. Ann. § 59:10A and § 59:10-2).

The Court already considered the language from Wright cited by Plaintiff.   In the December 30, 2011 Opinion, the Court noted that the Third Circuit was presented with this same language and thus had the opportunity to redefine the scope of Eleventh Amendment immunity as to county prosecutor's offices, yet declined to do so.   (See Op. [Doc. No. 40] 18 n.7 (citing Beightler v. Office of Essex Cnty. Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009).)   Absent precedent or other clear direction from the Third Circuit or Supreme Court, this Court similarly declined to redefine the scope of Eleventh Amendment immunity based upon the language in Wright.   (Id.)

Moreover, because an official capacity claim "is, in all respects other than name, to be treated as a suit against the

17

entity" and "the real party in interest is the entity[,]" the government entity itself would be subject to a judgment on an official capacity claim.  Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (citation omitted) ("Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.").  Therefore, any claims against Defendant Woshnak in his official capacity are in all respects claims against the CCPO.[7]

Under the Fitchik analysis, as noted above, the Third Circuit has held that county prosecutor's offices are agents of the state when performing classic law enforcement and investigative functions.  See Coleman, 87 F.3d at 1505.  In this case, Plaintiff's Section 1983 claims against Defendant Woshnak are based on (1) fabricating false inculpatory evidence, (2) compelling Plaintiff to make a false plea, and (3) commencing a criminal prosecution without probable cause.  (See Am. Compl. ¶¶

_____

[7] Although the amended complaint does not clearly assert an official capacity claim against Defendant Woshnak, Plaintiff alleges repeatedly that Defendant Woshnak was a "state actor" who violated Plaintiff's rights "under color of law."  (See, e.g., Am. Compl. ¶¶ 60, 65, 69, 70.)  The Court construes these allegations as assertions against Defendant Woshnak in his official capacity.

59-70.)  The arrest of Plaintiff, his continued incarceration, and the decision to prosecute him are classic law enforcement and investigative functions and not administrative functions. Coley v. Cnty. of Essex, No. Civ. A. 2:08-4325, 2010 WL 3040039, at *3 (D.N.J. Aug. 4, 2010), aff'd, 462 F. App'x 157 (3d Cir. 2011).  As such, the relevant government agency that would be responsible for Defendant Woshnak would be the State, and the first Fitchik factor is therefore satisfied.

The Court also finds that the second Fitchik factor, which requires the Court to consider the status of the CCPO under New Jersey law, is satisfied in this case.  County prosecutors, in enforcing state laws and implementing policies and customs pertaining to the enforcement of state laws, are not independent of the State, but rather "operate as agents of the State when they engage in law enforcement activities . . . [.]"  In re Camden Police Cases, Nos. 11-1315, 10-4757, 2011 WL 3651318, at *9 (D.N.J. Aug. 18, 2011).  Thus, in the context of this case, where Plaintiff alleges that Defendant Woshnak was acting in connection with the enforcement of state laws, the CCPO and Defendant Woshnak were agents of the State at the time of the alleged wrongful conduct.

The third Fitchik factor, the degree of autonomy of the CCPO, also supports a finding of Eleventh Amendment immunity. Pursuant to New Jersey law, "the criminal business of the State"

19

is "prosecuted by the Attorney General and the county prosecutors." N.J. Stat. Ann. § 2A:158-4. The Attorney General is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors. N.J. Stat. Ann. § 52:17B-106. Thus, when performing its prosecutorial function, such as investigating, arresting, and prosecuting Plaintiff, the CCPO is not an autonomous entity.

The Fitchik factors, therefore, are satisfied such that Defendant Woshnak is immune from suit for official capacity claims under the Eleventh Amendment. Defendant Woshnak's motion to dismiss is therefore granted in part.

The Court, however, will not dismiss claims asserted against Defendant Woshnak in his individual capacity because the Eleventh Amendment does not preclude suits against private individuals.[8] As noted by the Third Circuit, the Supreme Court held in Hafer v. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991), that the Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the conduct at issue was part of the defendant's official duties. The Supreme Court stated: "We hold that state

---

[8] Defendant Woshnak contends that the amended complaint does not set forth any individual capacity claims, but the amended complaint clearly does so. (Am. Compl. ¶ 17) ("All individual defendants were acting in their individual and personal capacities.").

officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.'"  Hafer, 502 U.S. at 31, 112 S. Ct. 358); see also Kamienski v. Attorney Gen. New Jersey, No. 11-3056, 2012 WL 4034236, at *4 (D.N.J. Sept. 12, 2012)("The Eleventh Amendment does not preclude suit against private individuals."); Davis v. Twp. of Lakewood, No. Civ. A. 03-1025, 2005 WL 1863665, at *7 (D.N.J. Aug. 4, 2005)("The Court, however, will not dismiss claims asserted against [defendant] in his individual capacity because the Eleventh Amendment does not preclude suits against private individuals.").  Any claims against Defendant Woshnak in his individual capacity, therefore, remain viable.

**B.  Defendant Woshnak is a "Person" for Purposes of 42 U.S.C. § 1983 With Respect to Individual Capacity Claims**

Defendant Woshnak also seeks dismissal of the claims in the amended complaint on the ground that the State and its officers and agents are not "persons" within the meaning of 42 U.S.C. § 1983.  (Def.'s Br. 12.)

Section 1983 provides, in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

21

> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . [.]

42 U.S.C. § 1983.  In Will v. Mich. Dep't of State Police, 491

U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the

United States Supreme Court held that "[n]either a state nor its

officials acting in their official capacities are 'persons'

under § 1983."  Therefore, a Section 1983 claim cannot exist

against the State of New Jersey, which includes the CCPO, its

agencies, or its officials, and prosecutors, acting in their

official capacities.  See Kamienski, 2012 WL 4034236, at *5.

    That said, however, Plaintiff may assert claims against

Defendant Woshnak in his individual capacity under Section 1983.

As noted above, the Supreme Court in Hafer made clear that state

officials, sued in their individual capacities, are 'persons'

within the meaning of § 1983.  Hafer, 502 U.S. at 31, 112 S. Ct.

358; see also Estate of Lagano v. Bergen Cnty. Prosecutor's

Office, 769 F.3d 850, 855 n.5 (3d Cir. 2014) ("Of course, a

state official sued in his or her personal capacity is amenable

to suit under §§ 1983 and 1985.").  Therefore, Defendant

Woshnak's motion is denied insofar as he seeks dismissal of the

Section 1983 claims against him in his individual capacity on
the ground that he is not a "person" under Section 1983.

### C. Defendant Woshnak is a "Person" with Respect to Individual Capacity Claims under the New Jersey Civil Rights Act

Defendant Woshnak further moves for dismissal of the claims
asserted against him under the New Jersey Civil Rights Act, N.J.
Stat. Ann. § 10:6-1 to -2 (hereafter, "NJCRA"), because he
allegedly is not a "person" within the meaning of the statute.
Defendant contends that the state statute has been interpreted
in the same manner as 42 U.S.C. § 1983, and that dismissal is
appropriate for the same reason that dismissal is purportedly
appropriate under Section 1983.  (Def.'s Br. 13-14.)

"Like 42 U.S.C. § 1983, the NJCRA 'premise[s] liability on
the conduct of a 'person.''"  Estate of Lagano, 769 F.3d at 856
(quoting Lopez-Siguenza v. Roddy, No. 13-2005, 2014 WL 1298300,
at *7 (D.N.J. Mar. 31, 2014)).  "New Jersey district courts have
interpreted the NJCRA as having incorporated the Supreme Court's
decision in Will that, for purposes of § 1983, states and state
officials acting in their official capacity are not amenable to
suit."  Id. (citations omitted).

For the same reasons discussed above with respect to the
Section 1983 claims, the claim against Defendant Woshnak in his
official capacity under the NJCRA is dismissed, but the claim
against him in his individual capacity is not dismissed as he is

a "person" under the NJCRA.  Defendant's motion to dismiss is
granted in part and denied in part in this regard.

> ### D.  Prosecutorial Immunity as to State Malicious
> Prosecution Claim

Finally, Defendant Woshnak argues that the state law claim
for malicious prosecution should be dismissed because he, as a
member of the prosecutor's office, is purportedly entitled to
absolute prosecutorial immunity.  (Def.'s Br. 14-17.)

With respect to this argument, the Court first notes that
Defendant Woshnak primarily relies on federal law, but he does
not seek to dismiss the Section 1983 claims on the basis of
prosecutorial immunity.  He seeks dismissal only of the
malicious prosecution claim under state law.  Second, Defendant
Woshnak argues for the first time in his reply brief that the
amended complaint fails to set forth sufficient facts to state a
claim under for malicious prosecution.[9]  However, it is well-

---

[9] The Court notes that in his moving brief, Defendant Woshnak
states in connection with the prosecutorial immunity argument as
follows:

> Finally, Woshnak was the investigative
> detective assigned to this matter.  There is
> nothing in Plaintiff's recitation of the
> facts that points to Woshnak having any role
> in the prosecution of Mr. Pitman, or having
> any decision-making ability to prosecute Mr.
> Pitman.  A detective should not be held
> liable for a Prosecutor's decision to
> prosecute the matter and, thus, should not
> be liable for a malicious prosecution claim.
> Accordingly, Count Five of the Complaint

established that new arguments cannot be raised for the first
time in reply briefs. See Elizabethtown Water Co. v. Hartford
Cas. Ins. Co., 998 F. Supp. 447, 458 (D.N.J. 1998).

Under New Jersey law, prosecutorial immunity is not
absolute like its federal counterpart. Newsome v. City of
Newark, 13-6234, 2014 WL 4798783, at *4 (D.N.J. Sept. 25, 2014)
(citing Cashen v. Spann, 66 N.J. 541, 551, 334 A.2d 8 (N.J.
1975)). In Cashen, the New Jersey Supreme Court stated:

> Thus it is clear that New Jersey case law to
> date has not equated prosecutorial immunity
> with its judicial counterpart and reflects
> the philosophy that there are indeed
> circumstances in which a prosecutor will

---

must be dismissed.

(Def.'s Br. 17.)  At no point does Defendant Woshnak argue
expressly that the malicious prosecution claim under state law
fails to state a claim under Rule 12(b)(6), nor does Defendant
raise any argument as to the sufficiency of the analogous
Section 1983 claim.  The Court thus does not construe this
paragraph as a challenge to the sufficiency of the allegations
under Rule 12(b)(6).  Moreover, even if Defendant was raising a
sufficiency challenge under Rule 12(b)(6), Defendant cites no
case law to demonstrate the elements of a claim for malicious
prosecution, assuming only that it requires "prosecution" and
concluding that Defendant could not be liable because he was not
a "prosecutor."  Defendant, as the moving party, has the burden
under Rule 12(b)(6) to demonstrate that the allegations fail to
state a claim, Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir.
1980), yet he fails to do so here.  Defendant arguably attempted
to clarify the issue in his reply brief, where he for the first
time specifically cites the elements of a malicious prosecution
claim and the provisions of the amended complaint that
purportedly do not support such claim.  (Reply Br. in Supp. of
Mot. to Dismiss Pl.'s Compl., with Prejudice, for Failure to
State a Claim 6-8.)  The Court will not at this time accept
Defendant's belated effort to address an argument for failure to
state a claim.

>incur civil liability for his official
>conduct.  We wish to make it clear that we
>believe that this is the preferable approach
>to future problems involving the civil
>immunity of prosecutors in this State.  The
>public interest is best served by
>recognizing that prosecutors enjoy only a
>limited form of immunity.

66 N.J. at 551, 334 A.2d 8.  Thus, while prosecutors are

entitled to broad immunity under New Jersey law, their immunity

is not absolute.

The New Jersey Tort Claims Act codifies prosecutorial

immunity similar to the common law immunity set forth in Cashen.

See N.J. Stat. Ann. § 59:3-8.  This statute, which is titled

"Institution or prosecution of judicial or administrative

proceeding," provides:

>A public employee is not liable for injury
>caused by his instituting or prosecuting any
>judicial or administrative proceeding within
>the scope of his employment.

N.J. Stat. Ann. § 59:3-8.  The Tort Claims Act limits this

prosecutorial immunity in N.J. Stat. Ann. § 59:3-14a, which

states: "Nothing in this act shall exonerate a public employee

from liability if it is established that his conduct was outside

the scope of his employment or constituted a crime, actual

fraud, actual malice or willful misconduct."  N.J.S.A. 59:3-14a.

Qualified immunity, by contrast, is granted to

investigators under N.J. Stat. Ann. § 59:3-3, which provides: "A

public employee is not liable if he acts in good faith in the

execution or enforcement of any law." See Hayes v. Mercer Cnty., 217 N.J. Super. 614, 622, 526 A.2d 737 (N.J. Super. Ct. App. Div. 1987), certif. denied, 108 N.J. 643, 532 A.2d 226 (N.J. 1987).  Good faith immunity under N.J.S.A. § 59:3-3 has "two alternative components": objective reasonableness,[10] and "'subjective good faith.'" Toto v. Ensuar, 196 N.J. 134, 146, 952 A.2d 463 (N.J. 2008) (internal quotation omitted).  "The burden of proof is upon the employee, who must prove either of those components in order for the good faith immunity to attach." Id.

In this case, Defendant Woshnak argues that he was not engaged in any prosecutorial functions, as he states in his moving brief that "[t]here is nothing in Plaintiff's recitation of the facts that points to Woshnak having any role in the prosecution of Mr. Pitman, or having any decision-making ability to prosecute Mr. Pitman." (Def.'s Br. 17.)  His sole basis for invoking prosecutorial immunity is that he was an employee of the prosecutor's office.  (Id. at 2.)  Mere employment by the prosecutor's office, however, is not a sufficient basis to invoke prosecutorial immunity.  See Drisco v. City of Elizabeth,

---

[10] The objective reasonableness inquiry turns on the "'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Pearson v. Callahan, 555 U.S. 223, 244, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (internal citation omitted).

No. Civ. A. 03-397, 2010 WL 1253890, at *8 n.18 (D.N.J. Mar. 23,
2010)("New Jersey law, like federal law, determines the level of
immunity afforded prosecutors based on whether prosecutors are
operating in a quasi-judicial capacity. Under section 3-3,
immunity is qualified where a prosecutor is involved in the
conduct of an investigation."); cf. Hayes, 217 N.J. Super. at
622, 526 A.2d 737 (investigator is entitled to a specific
qualified immunity).  Rather, to the extent Defendant Woshnak
was conducting only investigatory duties, he would be entitled
to qualified immunity rather than the near-absolute immunity
afforded to prosecutors.

Because the parties have not addressed the immunity issue
within the appropriate legal framework, the Court at this time
denies without prejudice Defendant Woshnak's motion to dismiss
the malicious prosecution claim under state law.  Defendant
Woshnak may file a renewed motion, including a motion for
summary judgment on this issue setting forth the reasons, if
any, that he believes he is entitled to immunity in connection
with this state law claim.

**E.   Plaintiff's Request for Leave to Amend**

Plaintiff requests leave of Court to amend the complaint if
the Court determines that the factual allegations in the amended
complaint are deemed insufficient.  (Pl.'s Opp. Br. 25.)  The
Court's decision is not based on the sufficiency of the

28

allegations set forth in the amended complaint under the

Twombly/Iqbal standard.  Therefore, Plaintiff's request for an

opportunity to file an amended pleading is denied.

V.    **CONCLUSION**

For the reasons set forth above, Defendant's motion will be

granted in part and denied in part.  Although the Court

previously issued an Order with respect to the motion, the Court

will vacate that Order and issue a new Order at this time.


                               s/ Noel L. Hillman
Date: January 14, 2015         NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

29