UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

PERMAN PITMAN,

                Plaintiff,          Civil No. 10-2538 (NLH/KMW)

v.

                                     **OPINION**

JOSHUA M. OTTEHBERG, et al.,

                Defendants.

_____

**APPEARANCES:**

Paul R. Melletz, Esq.
Ross Begelman, Esq.
Begelman Orlow & Melletz
411 Route 70 East
Suite 245
Cherry Hill, New Jersey 08034

     *Attorneys for Plaintiff Perman Pitman*

Matthew J. Behr, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
200 Lake Drive East
Suite 300
Cherry Hill, New Jersey 08002

     *Attorneys for Defendant Matthew Woshnak*

Elyse Glazer Crawford, Esquire
Parker McCay, PA
9000 Midlantic Drive
Suite 300
P.O. Box 5054
Mt. Laurel, New Jersey 08054

     *Attorneys for Defendant Harry Collins*

**HILLMAN, District Judge:**

Presently before the Court are two motions [Doc. Nos. 110, 111] filed by the remaining defendants, Matthew Woshnak and Harry Collins, for summary judgment pursuant to Fed. R. Civ. P. 56. The Court has considered the submissions of the parties, as well as the arguments of counsel presented on August 25, 2015.

For the reasons that follow, Defendant Woshnak's motion for summary judgment will be granted, and Defendant Collins' motion for summary judgment will be granted in part and denied in part.

I.   **JURISDICTION**

In his amended complaint [Doc. No. 49], Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, as well as state law claims for malicious prosecution and alleged violations of the New Jersey Civil Rights Act. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

II.  **BACKGROUND**

The background of this case was previously set forth at length in the Court's prior Opinions. Generally, "[i]n this case, Plaintiff, Perman Pitman, contends that he was wrongfully arrested and imprisoned for a murder he did not commit. After spending two years in jail because he was unable to make bail,

2

Plaintiff pled guilty to a downgraded charge of manslaughter.
[Approximately] [t]wo years later, the Camden County Prosecutor's
Office ("CCPO") disclosed exculpatory evidence, at which time
Plaintiff's Judgment of Conviction and guilty plea were vacated
and Plaintiff was released from jail.  Shortly thereafter,
Plaintiff filed the present civil action . . . based on his
wrongful arrest and subsequent prosecution."  (Op. [Doc. No. 40]
2, Dec. 30, 2011.)

     The essence of Plaintiff's civil rights claims arises from
his arrest, conviction, and imprisonment for the September 2005
shooting death of Robert A. Mays ("Mays").  On September 26,
2005, Mays was shot and killed in Camden, New Jersey.  Mays was
shot three times with a .45 caliber weapon in the back and the
arm.  Woshnak was a Detective with the CCPO on the date of the
homicide and was the lead investigator of the homicide.[1]  Woshnak
was notified of the homicide of Mays at approximately 12:06 a.m.
on September 27, 2005.  Woshnak began his investigation when
both he and Isidoro Reyes, a detective with the City of Camden
Police Department, arrived at the scene of the homicide of Mays.
Woshnak and Reyes observed the scene, made sure the crime scene
was being taken care of, and then spoke to witnesses.  Woshnak

---

[1] When a homicide occurs in Camden, generally a joint
investigation occurs with the CCPO taking the lead.  Woshnak was
the lead investigator of the homicide of Mr. Mays per standard
operating procedure.

interviewed people with Reyes, while Steven Settles, an investigator with the CCPO, was the crime scene investigator who took the pictures and measurements and collected evidence.

Efrain Ayala Acevedo approached Reyes and Woshnak while they were in the process of canvassing the neighborhood about the shooting of Mays.  Acevedo informed Woshnak and Reyes that he had witnessed the shooting of Mays, and he told them that Plaintiff and another man who was a twin, either Tommie or Tyrone Smith, were involved in the shooting.  Woshnak interviewed Acevedo on October 17, 2005, at which time Acevedo stated that he saw Plaintiff and one of the twins shoot Mays. Woshnak and Reyes then interviewed both twins, Tommie and Tyrone Smith.

Detective Woshnak spoke with the sergeant and then presented his investigation to the section chief of the homicide unit of the CCPO.  The section chief of the homicide unit was the person that ultimately approved the execution of the warrant and the probable cause statement to arrest Plaintiff for the murder of Mays.  The probable cause statement relied upon the statement of Acevedo and the statement of another witness, Skipper Grant, who said that Plaintiff's vehicle was parked about a half of a block from the shooting.

On February 8, 2006, approximately four months after Mays was killed, the Court Administrator for the City of Camden

4

Municipal Court issued a warrant for Plaintiff's arrest for the felony murder of Mays.  Woshnak and Reyes both stated that they believed the probable cause statement to be true.  Pursuant to the arrest warrant, Plaintiff was arrested on February 9, 2006 and was charged with murder in the shooting death of Mays.

Defendant Collins was employed as a prosecutor with the CCPO, and at all times relevant to the underlying criminal case was assigned to the Administrative Unit under supervision of the "indicting in-charge prosecutors."  Collins was randomly assigned to cases, and his duties included investigating the prior criminal history of defendants, plea issues, hearings, trials, formulation of strategy, and determination of the State's interest in a particular case, all of which were performed in consultation with the "indicting in-charge" prosecutor.  Collins was not involved in the case involving the Mays murder until post-indictment.

On or about January 24, 2007, Acevedo recanted his statement by which he had implicated Plaintiff in the Mays murder.  Specifically, Acevedo signed an affidavit in which he stated that he did not have any evidence in connection with Plaintiff's underlying criminal matter.  Plaintiff's attorney in the underlying criminal matter had a copy of this affidavit in February 2007, and he also had received a separate statement

from Acevedo in which Acevedo had again recanted his prior statement to the police.

On October 11, 2007, Plaintiff pled guilty to a significantly downgraded charge of manslaughter with a four-year prison term, approximately half of which Plaintiff had already served.  At the time Plaintiff entered into the guilty plea, he was aware that Acevedo had recanted his statement that Plaintiff murdered Mays.  However, Plaintiff did not learn until after his plea that Collins had information that Acevedo was bribed to implicate Plaintiff in the Mays murder.  Specifically, Plaintiff learned in 2010 that in March of 2007, Collins wrote on a "sticky note" to Woshnak the following: "For your info only. Per Inv. Falco, his witness B-Nice (resident of Camden Jail) stated that my witness was paid $$ by the Puerto Ricans to identify my defendant as the shooter.  Please Destroy This Note."  According to Collins, Plaintiff told B-Nice that Acevedo had been bribed, B-Nice then told Investigator Falco that Plaintiff said Acevedo was bribed, and Falco then advised Collins of this information.

The "sticky note" was never destroyed and was located in the trial file when another member of the CCPO was reviewing the file in connection with Plaintiff's petition for post-conviction relief.  Shortly after the note was brought to the attention of

other members of the CCPO, an Order of Nolle Pros was entered and Plaintiff was released from jail.

Based on the foregoing, Plaintiff's amended complaint asserts a number of claims against various Defendants.  At this time, the Court focuses only on the claims against the moving Defendants, Woshnak and Collins.  Both of these defendants are named in Count I for purported Fourteenth Amendment Due Process deprivations; Count II[2] alleging a Section 1983 claim for malicious prosecution under the Fourth and Fourteenth Amendments; Count IV asserting a state law claim for malicious prosecution; and Count V asserting a claim under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 to -2.  (Am. Compl. ¶¶ 60, 65, 69, 78, 81.)  With respect to Count I, Plaintiff asserts violations of his due process rights under the Fourteenth Amendment through a series of sub-claims.  (Am. Compl. ¶¶ 59-67.)  Plaintiff's sub-claims are based on the

---

[2] Plaintiff's amended complaint numbers incorrectly all of the counts subsequent to Count II.  There is a second Count II which is more appropriately designated as Count III alleging supervisory liability under Section 1983.  (See Am. Compl. ¶¶ 71-76.)  Plaintiff's state law claim for malicious prosecution is numbered as Count V but is more properly numbered as Count IV of the amended complaint.  (Id. ¶¶ 77-79.)  Finally, Plaintiff's claim under the New Jersey Civil Rights Act should have been designated as Count V, rather than Count VI.  (Id. ¶¶ 80-82.)  For clarity, the Court refers to the counts of the amended complaint by their appropriate sequential roman numerals, rather than by the non-sequential roman numerals utilized by Plaintiff.

fabrication of false inculpatory evidence, failure to disclose exculpatory evidence, and acts of coercion which resulted in Plaintiff making a false plea.  (Id. ¶¶ 59-61, 65-67.)

III. <u>DISCUSSION</u>

   A.   **Summary Judgment Standard**

   Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56).

   An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. 2505).

8

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323, 106 S. Ct. 2548 ("[A] party seeking
summary judgment always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact."); see also
Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir.
2001) ("Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by 'showing' -
- that is, pointing out to the district court -- that there is
an absence of evidence to support the nonmoving party's case'
when the nonmoving party bears the ultimate burden of
proof.")(citing Celotex, 477 U.S. at 325, 106 S. Ct. 2548).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial.  Celotex, 477
U.S. at 324, 106 S. Ct. 2548.  A "party opposing summary
judgment 'may not rest upon the mere allegations or denials of
the . . . pleading[s.]'"  Saldana v. Kmart Corp., 260 F.3d 228,
232 (3d Cir. 2001).  For "the non-moving party[ ] to prevail,

[that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322, 106 S. Ct. 2548).   Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.   Anderson, 477 U.S. at 257, 106 S. Ct. 2505.

   **B.   Analysis**

      **1.   Claims Against Collins**

         **a.   Official Capacity Claims**

   Collins first argues that the official capacity claims against him should be dismissed based upon Eleventh Amendment sovereign immunity.   In opposition to Collins' motion, Plaintiff asserts that Collins is not entitled to Eleventh Amendment immunity because Collins was acting in an administrative capacity and not as an agent of the CCPO.

   The Court previously considered whether Woshnak, who is also a member of the CCPO, was immune from suit for official capacity claims under the Eleventh Amendment.   In its January 14, 2015 Opinion, the Court found that any claims against Woshnak in his official capacity were, in all respects, claims against the CCPO.   (Op. [Doc. No. 99] 17-18, Jan. 14, 2015.)

The Court concluded that Woshnak was entitled to Eleventh Amendment immunity on the official capacity claims and therefore dismissed such claims.

In so finding, the Court noted that "[t]he arrest of Plaintiff, his continued incarceration, and the decision to prosecute him are classic law enforcement and investigative functions and not administrative functions." (Id. at 18-19) (citing Coley v. Cnty. of Essex, No. Civ. A. 2:08-4325, 2010 WL 3040039, at *3 (D.N.J. Aug. 4, 2010), aff'd, 462 F. App'x 157 (3d Cir. 2011)). Despite this conclusion, Plaintiff now asserts, without citation to any authority, that Collins' actions were administrative rather than law enforcement or investigative functions. The Court disagrees with Plaintiff. While county prosecutors have a hybrid status, Coleman v. Kaye, 87 F.3d 1491, 1506 (3d Cir. 1996), the manner in which Collins handled a criminal proceeding is not an administrative function.

Because Collins is a member of the CCPO, the Court finds for the same reasons expressed in the January 14, 2015 Opinion that the official capacity claims against Collins are barred under the Eleventh Amendment. Collins' motion for summary judgment as to the claims against him in his official capacity will be granted.

b.  **Individual Capacity Claims**

i.  **Federal Claims**

In Count I of the amended complaint, Plaintiff asserts a due process claim under 42 U.S.C. § 1983 against Collins based on three theories: (1) fabricating false evidence, (2) failing to disclose exculpatory evidence, and (3) coercing Plaintiff to make a false plea.  There is no evidence of record that Collins fabricated evidence against Plaintiff.  Plaintiff's theory, as clarified in the briefing on this summary judgment motion, is that his due process rights were violated when Collins failed to disclose to Plaintiff the exculpatory information contained in the "sticky note" and instead directed that the note be destroyed.  In Count II of the amended complaint, Plaintiff asserts a malicious prosecution claim under Section 1983, also based upon Collins' continued prosecution of Plaintiff despite his knowledge of the "sticky note" and his efforts to destroy exculpatory evidence.  Counts IV and V are state law claims for malicious prosecution and a violation of the New Jersey Civil Rights Act.

Collins argues that he is entitled to absolute immunity on the federal claims because he was acting in his role as a prosecutor.  Plaintiff contends that Collins is not entitled to absolute immunity because in seeking destruction of exculpatory evidence, Collins' conduct cannot be said to be an act of

12

advocacy.  According to Plaintiff, Collins was required under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), to disclose to Plaintiff the information contained in the note, and his failure to do so violated Plaintiff's federal rights.

"A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869, 126 S. Ct. 2188, (2006).  The Brady duty to disclose exculpatory evidence to the defendant applies to the prosecutor.  Yarris v. Cnty. of Delaware, 465 F.3d 129, 141 (3d Cir. 2006).  However, in Imbler v. Pachtman, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976), the Supreme Court held "that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role."  Yarris, 465 F.3d at 135 (citing Imbler, 424 U.S. at 431, 96 S. Ct. 984).  "This immunity extends to acts that are 'intimately associated with the judicial phase of the criminal process,' such as 'initiating a prosecution and . . . presenting the State's case.'"  Id. (quoting Imbler, 424 U.S. at 430–31, 96 S. Ct. 984).  Therefore, even though a prosecutor's failure to turn over exculpatory material constitutes a violation of due process under Brady, it is nonetheless an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit

13

for damages.  See Yarris, 465 F.3d at 137 ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); Gordon v. Berkeley Twp. Police, Civ. A. No. 10-5061, 2011 WL 2580473, at *8 (D.N.J. June 27, 2011).

Given the holding of Yarris, the Court finds that Collins is entitled to absolute immunity on Plaintiff's federal claims, to the extent they are based on Collins' failure to disclose exculpatory information.  While Plaintiff attempts to avoid the application of absolute immunity by arguing that Collins was not acting in his prosecutorial capacity, but was rather performing administrative duties, the Court disagrees.

In Imbler, the Supreme Court held that prosecutors are absolutely immune from liability for "initiating a prosecution and presenting the State's case."  Imbler, 424 U.S. at 430-31, 96 S. Ct. 984.  "The handling of evidence is clearly within the sweep of 'initiating and presenting the State's case', and the prosecutor is immune from Section 1983 liability for such decisions."  Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir. 1980); see also Yarris, 465 F.3d at 136-37 ("'[O]nce the decision is made not to furnish evidence to the defense, no additional protectable prosecutorial discretion is involved . .

14

. and . . . deciding not to furnish the prosecution's evidence to the defense may be an act of advocacy[.]").

Here, the alleged wrongful acts involve Collins' decision to continue to prosecute Plaintiff once he learned that Acevedo was bribed to implicate Plaintiff, and the handling of the prosecution after the decision to continue to prosecute was made. These acts, the Court finds, are acts of advocacy rather than of administration. Indeed, Plaintiff cites no authority to support his contention that Collins' actions fall under the umbrella of administration rather than advocacy. Collins is entitled to absolute immunity for the Section 1983 claims concerning his failure to disclose the "sticky note" to Plaintiff.

The Court next turns to whether Collins is immune from civil liability based on his efforts to destroy the exculpatory evidence.[3] In <u>Yarris</u>, the Third Circuit held that a prosecutor is not absolutely immune from Section 1983 suits for destroying

---

[3] The amended complaint does not specifically delineate the attempted destruction of evidence under any of Plaintiff's causes of action. However, the amended complaint contains a due process claim, and the destruction of exculpatory evidence may constitute a due process violation. <u>See</u> <u>United States v. Webb</u>, 499 F. App'x 210, 213 (3d Cir. 2012). While we believe that the amended complaint may fairly be construed as asserting a claim concerning the attempted destruction of evidence, to avoid any ambiguity Plaintiff will be granted leave to file a second amended complaint to assert such claim, to the extent he may do so consistent with Fed. R. Civ. P. 11 and Third Circuit case law.

exculpatory evidence.  The Court, citing <u>Wilkinson v. Ellis</u>, 484 F. Supp. 1072, 1083 (E.D. Pa. 1980), noted as follows:

> [O]nce the decision is made not to furnish evidence to the defense, no additional protectible prosecutorial discretion is involved in deciding to dispose of it, and . . ., while deciding not to furnish the prosecution's evidence to the defense may be an act of advocacy, throwing the evidence away is not such an act.

<u>Yarris</u>, 465 F.3d at 136-37.

Here, Collins did not actually destroy exculpatory evidence, but it is clear from the contents of the note that he intended for the evidence to be destroyed.  The above-quoted language in <u>Yarris</u> makes clear that the "decision" to dispose of evidence cannot be considered an act of advocacy.  Moreover, in <u>Henderson</u>, 631 F.2d at 1120, the Third Circuit held that "a prosecutor's knowing failure to stop the removal of exculpatory material" could not be characterized as "presenting the State's case."  Thus, <u>Yarris</u> and <u>Henderson</u> do not require the prosecutor to have been the actor who destroyed evidence, so long as he intended for the evidence to be destroyed.

Based on this rationale, the Court finds that Collins is not entitled to absolute immunity for directing the destruction of exculpatory evidence.  Indeed, if failing to prevent the destruction of evidence is an act that is not entitled to absolute immunity, then directing the destruction of evidence likewise must not be entitled to absolute immunity.

16

Accordingly, the Court finds that Collins is not entitled to absolute prosecutorial immunity based on a claim that he sought to destroy exculpatory evidence.

The Court thus turns to whether Collins is entitled to qualified immunity for directing the destruction of exculpatory evidence.  Collins asserts that he is entitled to qualified immunity because he did not violate a "clearly established" constitutional right.  Specifically, Collins asserts that he did not withhold exculpatory evidence because Plaintiff was aware of the evidence when he entered into his plea, as he knew that Acevedo had recanted his statement implicating Plaintiff, and he knew that Acevedo had been paid to implicate Plaintiff in the Mays murder.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).  The doctrine provides a government official immunity from suit

17

rather than a mere defense from liability, and, thus, the issue of whether qualified immunity applies should be decided at the earliest possible stage in litigation.  Id.  "Qualified immunity . . . gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Fiore v. City of Bethlehem, 510 F. App'x 215, 219-20 (3d Cir. 2013) (citing Messerschmidt v. Millender, --- U.S. ---, 132 S. Ct. 1235, 1244 (2012)) (internal quotation marks and citations omitted).

Qualified immunity attaches if the official can demonstrate his or her conduct was "objectively reasonable."  See Harlow, 457 U.S. at 818.  "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful."  Davis v. Malitzki, 451 F. App'x 228, 232 (3d Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 200-01 (2001)).  If the answer to either question is "no," the analysis may end there.  See Pearson, 129 S. Ct. at 816; see also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the [official] is entitled to immunity.").

18

As noted above, Collins' qualified immunity argument focuses on whether Plaintiff's constitutional rights were violated, as he argues that disclosure of exculpatory evidence is not required when the defendant in the criminal matter either knew or should have known of the essential facts of the evidence.  There is no dispute that Plaintiff knew, at the time he pled guilty, that Acevedo had recanted his statement. However, the exculpatory evidence at issue is not the fact that Acevedo recanted his statement, but the fact that Acevedo was bribed to implicate Plaintiff.  There is a qualitative difference between these two types of evidence.  As Collins noted in a hearing in the underlying criminal proceeding, witnesses frequently recant their stories due to fear of being considered a "snitch," but the recantation does not necessarily mean that the original statement was untrue.  (See Ex. H at 7:22-8:18.)  "[R]ecantation testimony is generally considered exceedingly unreliable . . . because recantations are often induced by duress or coercion [and] . . . the sincerity of a recantation is to be viewed with "extreme suspicion.'" State v. Hogan, 144 N.J. 216, 239, 676 A.2d 533 (N.J. 1996).  By contrast, evidence that a witness was bribed to make a statement demonstrates the inherent untruthfulness of the original statement.  The evidence here falls within the latter category. Moreover, while Collins argues that Plaintiff knew Acevedo was

bribed, Plaintiff denies such knowledge and, at the summary judgment stage, the Court must view the facts most favorably to Plaintiff.

Therefore, the facts of record do not demonstrate that Plaintiff was aware that Acevedo was bribed to implicate Plaintiff in the Mays murder, and thus the Court cannot conclude at this time that Collins was not required to disclose the evidence to Plaintiff under <u>Brady</u>.  The Court also finds that because the obligation to ensure that exculpatory evidence is not destroyed was a clearly established duty in light of <u>Yarris</u>, it would have been clear to a reasonable officer that Collins' conduct in seeking to destroy exculpatory evidence was unlawful.[4] Collins is therefore not entitled to qualified immunity at this time as to Plaintiff's claim that he sought the destruction of exculpatory evidence.

### ii.  State Malicious Prosecution Claim

Under New Jersey law, "[t]o establish malicious prosecution, a plaintiff must show that: '(1) a criminal action was instituted by th[e] defendant against th[e] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated

---

[4] Collins' note demonstrates that even Collins knew he was required to disclose the information in the note, as evidenced by the fact that he expressly directed that the note be destroyed.

favorably to the plaintiff.'"   Hyatt v. Cnty. of Passaic, 340 F.
App'x 833, 838 (3d Cir. 2009) (citing LoBiondo v. Schwartz, 199
N.J. 62, 970 A.2d 1007, 1022 (2009)).

In seeking dismissal of the state malicious prosecution
claim, Collins argues that Plaintiff fails to produce evidence
in support of the prima facie elements of such claim.  Collins
concedes that the criminal action terminated favorably to
Plaintiff, but he asserts that Plaintiff cannot produce evidence
in support of the remaining elements of the claim.  Collins
particularly focuses on the absence of probable cause, noting
that probable cause existed at the time criminal proceedings
were initiated against Plaintiff, which is purportedly
sufficient to overcome a malicious prosecution claim even though
the witness later recanted.  Collins also asserts that he is not
the individual who initiated criminal proceedings against
Plaintiff, and that Plaintiff fails to show that Collins acted
with ill will or malice.

Collins' arguments focus too narrowly on the time frame in
which the criminal prosecution was initiated.  "Malicious
prosecution provides a remedy for harm caused by the institution
or continuation of a criminal action that is baseless."
LoBiondo v. Schwartz, 199 N.J. at 89, 970 A.2d 1007.  While
Collins may not have initiated the criminal proceedings against
Plaintiff, he admits that he was involved in Plaintiff's case

21

after Plaintiff was indicted and that his responsibilities included plea issues, hearings, trials, and formulation of strategy.  The Court thus finds that Collins continued the criminal prosecution of Plaintiff, which is sufficient to satisfy the first element of a malicious prosecution claim.

Turning to the probable cause element, the Court finds, as discussed at length below, that there was probable cause to arrest Plaintiff in 2006.  However, "it is 'possible that following an arrest based on sufficient probable cause, circumstances might ensue or facts might become known . . . which would so undermine the reasonableness of an initial belief in the p[erson]'s guilt' underpinning probable cause for arrest as to make continued detention unjustified." Martinez v. Cnty. of Burlington, No. A-0134-13T4, 2014 WL 8580958, at *7 (N.J. Super. Ct. App. Div. Apr. 15, 2015) (internal citation omitted). Here, once Collins learned that Acevedo was bribed to implicate Plaintiff in the Mays murder, he lacked probable cause to continue to prosecute Plaintiff.[5]

---

[5] Collins argues that probable cause still existed despite the recanted statement of Acevedo.  It is possible that at the time Collins learned that Acevedo recanted his statement, probable cause to prosecute may still have existed given the inherent unreliability of recantations.  However, when Collins learned that Acevedo was bribed to implicate Plaintiff, at that time he knew, or should have known, that he no longer had probable cause to proceed in prosecuting Plaintiff for the Mays murder. Instead of seeking to dismiss the indictment, conducting further investigation to find evidence that would support a probable

Finally, Collins argues that Plaintiff has produced no evidence of malice.  "Malice in the law is the intentional doing of a wrongful act without just cause or excuse."  McFadden v. Lane, 71 N.J.L. 624, 629, 60 A. 365 (N.J. E & A 1905).  "Malice means spite or ill-will, the use of a prosecution for an extraneous purpose, or a lack of belief in the guilt of the accused."  King v. Deputy Att'y Gen. Del., --- F. App'x ---, 2015 WL 3622179, at *4 n.6 (3d Cir. 2015) (citing Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993)).  "Beyond motives of hatred or ill will, it can include a 'reckless and oppressive disregard of [a person's] rights.'"  Id. (citing Lippay, 996 F.2d at 1503).  In this case, the Court cannot conclude based on the record that Collins did not act with malice.  He sought to destroy exculpatory evidence and then proceeded to offer Plaintiff a plea deal in complete disregard of Plaintiff's right to disclosure of such evidence under Brady.

Based on the foregoing, the Court finds that Plaintiff has provided sufficient evidence to support a malicious prosecution claim based upon state law.  Collins' motion for summary judgment as to Count IV of the amended complaint will therefore be denied.

---

cause determination, or at least disclosing to Plaintiff that Acevedo was bribed, Collins sought to destroy evidence of the exculpatory statement, continued to prosecute Plaintiff, and offered a plea agreement which Plaintiff ultimately accepted.

### iii. New Jersey Civil Rights Act Claim

"The New Jersey Civil Rights Act (hereinafter 'NJCRA') was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitutions." <u>Trafton v. City of Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J. 2011).  The NJCRA provides, in pertinent part, a private cause of action to:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J.S.A. 10:6-2(c).  The District of New Jersey has repeatedly interpreted the NJCRA analogously to § 1983.  <u>Trafton</u>, 799 F. Supp. 2d at 444 (citations omitted).

Plaintiff's claims which allege a violation of the NJCRA are directly controlled by the Court's determination on the federal due process and malicious prosecution claims.  For the same reasons that summary judgment will be granted in part and denied in part on the federal claims, summary judgment will likewise be granted in part and denied in part on Plaintiff's claim against Collins under the NJCRA.[6]  Plaintiff will be

---

[6] Collins asserts that he is not amenable to suit under the NJCRA

permitted to proceed with his NJCRA claim to the extent it is based on Collins' violation of his due process rights when Collins sought to destroy exculpatory evidence.

### 2.   Claims against Woshnak

#### a.   Federal Due Process Claim

In the amended complaint, Plaintiff's due process claim against Woshnak is predicated upon fabrication of false evidence, failure to disclose exculpatory evidence, and coercing a plea.  In opposition to the summary judgment motion, Plaintiff clarifies that Woshnak did not fabricate evidence, nor is there any evidence that Woshnak played any role in plea negotiations that resulted in Plaintiff's decision to take a plea.  Rather, the basis of the due process claim against Woshnak is two-fold: (1) his failure to account for inconsistencies in the evidence, and (2) his failure to act upon learning of the information in the "sticky note."

"To establish a due process violation for failure to investigate, the plaintiff must show the defendant acted

_____

because he is not a "person" within the meaning of Section 1983. Woshnak previously raised the same argument and the Court, in its January 14, 2015 Opinion, concluded that he was a "person" under the NJCRA to the extent the claims were asserted against him in his individual capacity.  For the same reasons that Woshnak is a "person" within the meaning of the NJCRA, the Court finds that Collins also is a "person" within the meaning of the statute for claims asserted against Collins in his individual capacity.

intentionally or recklessly" in a manner that shocks the conscience.  Briscoe v. Jackson, 2 F. Supp. 3d 635, 644 (E.D. Pa. 2014)(internal citations omitted).  "[A]n officer does not have to investigate independently every claim of innocence . . . [but] an officer cannot look only at evidence of guilt while ignoring all exculpatory evidence."  Id. (internal citation omitted).  If probable cause is satisfied, "Due Process does not require every conceivable step be taken, at whatever cost, to eliminate the possibility of arresting an innocent person."  Baker v. McCollan, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

Plaintiff contends that Woshnak ignored the physical scene, which was purportedly inconsistent with Acevedo's statement; ignored the fact that Acevedo claimed the victim was standing in the rain when shot, even though the victim's clothes were dry and his body was found on a porch; and ignored that there were no bullet marks under the body and no shell casings on the porch, even though Acevedo said that Plaintiff stood over the body on the porch and shot three times.

The evidence presented by Plaintiff does not establish that Woshnak acted intentionally or recklessly in his investigation in a manner that shocks the conscience.  With respect to whether Mays' clothes were dry, the only evidence is the testimony of Investigator Settles, who assumed that the clothes must have

been dry because he would have noted in his investigation report if they were wet. There is no evidence that Woshnak knew the clothes were dry, such that he would have intentionally ignored such evidence. Furthermore, Settles testified that there is no way of determining where the shooter was standing based on the physical evidence, and Mays therefore could have been shot and run up the stairs before collapsing on the porch, at which point he was shot three more times. Concerning the bullet marks, Settles testified that he would not necessarily expect to find bullet strikes on the porch under the victim's body if he had been shot in the back on the porch. Finally, while Plaintiff asserts that the location of the shell casings did not corroborate Acevedo's story, his conclusion is not supported by an expert opinion. Woshnak testified that he believed the physical evidence was consistent with Acevedo's statement, and there is no evidence that such belief was unreasonable.

In short, Plaintiff points to no evidence that the investigation leading to the determination of probable cause was so inadequate as to violate his substantive due process rights under the Fourteenth Amendment. As delineated below, probable cause was established as a matter of law at the time Plaintiff was arrested. Under these circumstances, Woshnak had no further constitutional duty to continue his investigation in an attempt to unearth potentially exculpatory evidence undermining the

probable cause determination.  Woshnak will be granted summary judgment on the federal due process claim to the extent that such claim is based upon Woshnak's alleged ignoring of evidence.

To the extent Plaintiff's due process claim is based upon Woshnak's failure to act upon learning of the "sticky note," there is a dispute of fact over whether Woshnak even saw the note.  The Court assumes for purposes of summary judgment that Woshnak did see the note and decided to do nothing.  Woshnak argues that even assuming he knew of the note, however, he had no duty to act because the evidence was already known to the prosecutor.

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87, 83 S. Ct. 1194.  While "'the Brady duty to disclose exculpatory evidence to the defendant applies only to a prosecutor[,]'" police officers "'may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor.'"  Yarris, 465 F.3d at 141 (quoting Gibson v. Superintendent of N.J. Dep't of Law & Public Safety–Div. of State Police, 411 F.3d 427, 442-43 (3d Cir. 2005)).  Investigators satisfy their obligations under Brady

28

once they turn exculpatory evidence over to the prosecutor.  <u>See</u>
<u>id.</u>

Here, Woshnak did not discover exculpatory evidence and
fail to disclose it to the prosecutor.  Rather, the prosecutor
discovered the evidence and disclosed it to Woshnak.  Because
the exculpatory evidence was already in the hands of the
prosecutor, Woshnak has no duty to disclose the evidence to the
prosecutor.  Plaintiff argues, however, that under the
circumstances here, where Woshnak knew that the prosecutor
sought to destroy exculpatory evidence, he should have reported
Collins' wrongdoing to Collins' superiors.  He also argues that
Woshnak should have investigated further, particularly in light
of Collins' request that Woshnak do so.  Woshnak asserts that he
is entitled to qualified immunity on the due process claim.

Under the second prong of the "objective reasonableness"
test, the Court must determine whether it would have been clear
to a reasonable officer that the conduct was unlawful." <u>Davis</u>,
451 F. App'x at 232.  Plaintiff fails to cite any authority that
would require Woshnak, an investigator with the CCPO, to report
Collins' conduct to Collins' supervisors.  The duty imposed by
<u>Brady</u> is merely a duty to turn over exculpatory evidence to the
prosecutor, not to ensure that the prosecutor discloses such
evidence to the criminal defendant.  As such, the Court cannot
conclude that Woshnak violated a clearly established right when

he failed to report Collins.  Woshnak is therefore entitled to qualified immunity on the due process claim to the extent such claim is based on his failure to act upon learning of the sticky note.[7]

### b.    Federal Malicious Prosecution Claim Against Woshnak

In Count II of the amended complaint, Plaintiff asserts a malicious prosecution claim against Woshnak under federal law. Plaintiff's claim generally consists of two theories.  First, Plaintiff asserts that Woshnak did not have reasonably trustworthy information to seek an arrest warrant for Plaintiff, and second, that he did nothing upon learning that Acevedo had been bribed to falsely implicate Plaintiff.  Woshnak moves for summary judgment, arguing that there was probable cause to arrest Plaintiff and that he is therefore entitled to qualified immunity.

"Malicious prosecution is a common law tort that occurs when an official initiates a criminal proceeding without probable cause."  Davis v. Malitzki, 451 F. App'x 228, 232 (3d

---

[7] Moreover, to the extent Plaintiff complains of Woshnak's failure to investigate further upon learning of the "sticky note," Woshnak is entitled to absolute immunity.  Davis v. Grusemeyer, 996 F.2d 617, 632 (3d Cir. 1993) (holding that absolute immunity extends to a prosecutor's investigator who performs "investigative work in connection with a criminal prosecution"), abrogated on other grounds by Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir. 1998).

Cir. 2011) (citing Donahue v. Gavin, 280 F.3d 371, 377–78 (3d
Cir. 2002)).  "The tort is actionable under 42 U.S.C. § 1983,
because it undermines an individual's right to be free from
unreasonable seizures under the Fourth Amendment." Davis, 451
F. App'x at 232 (citing Gallo v. City of Phila., 161 F.3d 217,
222–23 (3d Cir. 1998)).

    "To prove a claim for malicious prosecution brought under
42 U.S.C. § 1983, a plaintiff must satisfy each of the following
five elements: '(1) the defendants initiated a criminal
proceeding; (2) the criminal proceeding ended in plaintiff's
favor; (3) the proceeding was initiated without probable cause;
(4) the defendants acted maliciously or for a purpose other than
bringing the plaintiff to justice; and (5) the plaintiff
suffered deprivation of liberty consistent with the concept of
seizure as a consequence of a legal proceeding.'" Minatee v.
Philadelphia Police Dep't, 502 F. App'x 225, 227 (3d Cir. 2012)
(citing Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)).
For Plaintiff to prevail on this claim, he "must demonstrate
that the criminal proceedings against [him were] initiated
without probable cause or, under Wilson v. Russo, 212 F.3d 781
(3d Cir. 2000), 'that [defendants] recklessly disregarded the
truth in their warrant application and that a warrant
application based on what [defendants] should have told the
judge would have lacked probable cause.'" Lincoln, 375 F. App'x

31

at 188-189 (citing Wilson, 212 F.3d at 786; Sands v. McCormick, 502 F.3d 263, 266 (3d Cir. 2007)).

Before the Court can address the merits of Plaintiff's Section 1983 claim for malicious prosecution, it must consider Woshnak's argument that he is entitled to qualified immunity on the federal claim.  In the context of a malicious prosecution claim, "a police officer must show his actions were objectively reasonable under prevailing Fourth Amendment doctrines." Davis, 451 F. App'x at 232-33 (citing Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)).  "Namely, he must show a reasonable officer in his shoes, aware of the same facts and circumstances, would have probable cause to arrest." Id. (citing Malley v. Briggs, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); Orsatti, 71 F.3d at 483).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L.Ed.2d 537 (2004).  "[A] district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (internal quotation and citation omitted).

Here, Plaintiff contends that Woshnak lacked probable cause to arrest Plaintiff based solely upon the statement of Acevedo because there was contradictory evidence that discredited Acevedo's statement. According to Plaintiff, because Woshnak did not have reasonably trustworthy information to believe that Plaintiff committed the murder, he did not have probable cause to seek an arrest warrant for Plaintiff.

Having reviewed the evidence of record, the Court finds that at the time of the arrest Woshnak had probable cause to believe that Plaintiff committed the murder of Mays. At that time, Woshnak had an eyewitness statement that Plaintiff's car was parked half of a block away from the murder scene, as well as the statement of Acevedo directly implicating Plaintiff and Tommie Smith in the murder. In addition, Woshnak had interviewed Tommie Smith and his twin brother. According to Woshnak, Tommie Smith's story contradicted that of his brother, in that Smith indicated that he was in Atlantic City while his brother stated that they were both home. Woshnak also noted that Smith failed to provide any details to corroborate the story that he was in Atlantic City. Additionally, Woshnak testified that Smith acted "extremely nervous," "extremely agitated," and terminated the interview. This evidence thus supports a conclusion that Tommie Smith was lying about his

whereabouts, and does not undermine Acevedo's statement.[8]
Additionally, Woshnak testified that in his belief, Acevedo's
statement was corroborated by the physical evidence from the
scene of the crime, including that Acevedo said there were two
shooters and there were two types of shell casings found near
the crime scene, and that one of the shooters fired more shots,
which was consistent with the number of shell casings found.[9]

    In an effort to survive summary judgment, Plaintiff cites
to other evidence contradicting Acevedo's statement, which
purportedly demonstrates the absence of probable cause.
Critically, though, there is no indication that such
contradictory evidence was known to Woshnak at the time of the
arrest.  For instance, Plaintiff points to Acevedo's statement
that it was raining on the night of the murder and notes his own

_____

[8] The Court notes Plaintiff's argument that Tommie Smith passed a
lie detector test in which he denied shooting Mays, which
evidence is inconsistent with Acevedo's statement and was known
to Woshnak at the time Plaintiff was arrested.  However, in
light of the totality of evidence presented to Woshnak --
Acevedo's statement, the statement of another witness that
Plaintiff's car was observed near the scene of the crime, the
inconsistent statements of the Smith brothers as to their
whereabouts on the night of the murder, the lack of any detail
supporting Tommie Smith's statement that he was in Atlantic
City, and the demeanor of Tommie Smith during his interview with
Woshnak -- the Court finds that the fact that Smith passed a lie
detector test cannot defeat a probable cause determination.

[9]  Plaintiff asserts that the location of the shell casings did
not corroborate Acevedo's story, but his personal conclusion is
not supported by an expert opinion.

testimony that it was not raining.  Plaintiff's testimony, however, was not given until his deposition in this case, and thus was not known to Woshnak prior to Plaintiff's arrest. Plaintiff also asserts that he admitted to being at the scene of the crime but running away from the shooter, and he argues that the physical evidence is consistent with this story. Plaintiff's statement as to the events of September 26, 2005 was not made until after he was arrested.  Plaintiff also attempts to cast doubt on Acevedo's statement that Acevedo knew who Plaintiff was because they were in a half-way house together. Plaintiff cites his own deposition testimony in this case, in which he denied knowing Acevedo.  Again, Plaintiff's testimony was not known to Woshnak at the time of the arrest and could not have been accounted for when Woshnak evaluated the credibility of Acevedo's statement.[10]

Arguably, had Woshnak conducted further investigation,[11] he may have recognized inconsistencies in Acevedo's story and may

---

[10] Furthermore, Plaintiff's testimony does not necessarily contradict Acevedo's statement.  Plaintiff testified that he was in a half-way house, and that "it's quite possible that he may know of me[.]"  (Pl.'s Dep. at 64:6-7, 197:1-6.)

[11] As suggested by Plaintiff, for example, Woshnak could have checked the weather report to verify whether it was raining on the night of the murder, or returned to the scene of the crime another night to determine what could be seen on a dark night from the location where Acevedo was purportedly standing. Woshnak could also have interviewed Plaintiff prior to arresting him.

not have determined that there was probable cause to arrest
Plaintiff.  But it is well-settled that once probable cause to
arrest exists, a police officer is not required to investigate
further.  <u>Livingston v. Allegheny Cnty.</u>, 400 F. App'x 659, 666
(3d Cir. 2010); <u>Mitchell v. Obenski</u>, 134 F. App'x 548, 551 (3d
Cir. 2005) ("But the mere fact that a police investigation could
have been more thorough does not vitiate probable cause."); <u>see
also</u> <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 F.3d 782, 790 n.8
(3d Cir. 2000)(officer "was not required to undertake an
exhaustive investigation in order to validate the probable cause
that, in his mind, already existed.").  As discussed above,
based on the facts known to Woshnak at the time of the arrest --
an eyewitness statement that Plaintiff's car was parked a half
of a block away from the murder scene, and an eyewitness
statement that identified Plaintiff as the shooter, which
statement was in Woshnak's view consistent with the physical
evidence at the scene and was corroborated by the suspicious
demeanor of Tommie Smith -- the Court finds that there was
probable cause to arrest Plaintiff.  Plaintiff's argument that
more should have been done to verify Acevedo's statement is an
assertion illuminated by hindsight.

    In so finding, the Court notes that in making a probable
cause determination, officers cannot "simply turn a blind eye
toward potentially exculpatory evidence known to them in an

effort to pin a crime on someone." Stahl v. Czernik, 496 F. App'x 621, 626 (6th Cir. 2012).  However, if the exculpatory evidence is not known to the officers at the time they determine whether probable cause exists, such later-discovered evidence cannot invalidate a finding of probable cause.

In this case, there is no indication that Woshnak turned a blind eye to potentially exculpatory evidence to pin the crime on Plaintiff, nor is there any evidence that Woshnak should have recognized Acevedo's statement as unreliable when the arrest was made on February 8, 2006.  Therefore, Plaintiff does not point to exculpatory information in Woshnak's possession before he sought the arrest warrant.  Having found that probable cause existed for the arrest of Plaintiff, Plaintiff has failed to demonstrate that a constitutional deprivation occurred here as a result of Woshnak's conduct up to the point of Plaintiff's arrest.  In the absence of such a constitutional deprivation, the qualified immunity inquiry is at an end with respect to Plaintiff's malicious prosecution claim under Section 1983, to the extent such claim is based on Woshnak's conduct in seeking Plaintiff's arrest.

Furthermore, to the extent the malicious prosecution claim is based on the fact that Woshnak was privy to exculpatory information and did nothing, the Court finds that Plaintiff is entitled to qualified immunity.  As discussed above, under Brady

an investigator's duty upon learning of exculpatory evidence is to turn such evidence over to the prosecutor.  Plaintiff cites no authority that would require Woshnak to do anything further. As there is no evidence that Woshnak violated a clearly established right, Woshnak is entitled to qualified immunity on the federal malicious prosecution claim.

### c.   State Law Malicious Prosecution Claim

As noted abvoe, "[t]o establish malicious prosecution, a plaintiff must show that: '(1) a criminal action was instituted by th[e] defendant against th[e] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.'"   Hyatt, 340 F. App'x at 838 (internal citation omitted).

The Court has already determined that there was probable cause to arrest Plaintiff.  The absence of probable cause is fatal to Plaintiff's malicious prosecution claim under New Jersey law to the extent such claim is based on Plaintiff's arrest without probable cause.

Plaintiff also argues that Woshnak continued to maliciously prosecute after learning that Acevedo's statement was obtained through bribery.  However, there is no evidence that Woshnak had any role in the continued prosecution of Plaintiff after the case was turned over to Collins.  In fact, Woshnak testified at

38

his deposition that he rarely spoke with Collins about the case, that no one on the investigative side of the prosecutor's office talked to him about the case, and that he had no input after the case was turned over to the CCPO.  Defendant Woshnak will be granted summary judgment on Count IV of the amended complaint.

### d.  New Jersey Civil Rights Act Claim

Plaintiff's claims which allege a violation of the NJCRA are directly controlled by the Court's determination on the federal due process and malicious prosecution claims.  For the same reasons that summary judgment will be granted on the federal claims, summary judgment will likewise be granted on Plaintiff's claim against Woshnak under the NJCRA.

### V.  <u>CONCLUSION</u>

For the foregoing reasons, Woshnak's motion for summary judgment will be granted, and judgment will be entered in favor of Woshnak on all remaining claims in the amended complaint. Collins' motion for summary judgment will be granted in part and denied in part.  Plaintiff will be granted leave to amend his complaint to clarify the basis of his claim against Collins based upon Collins' attempt to destroy exculpatory evidence.

An Order consistent with this Opinion will be entered.

___s/ Noel L. Hillman_____
NOEL L. HILLMAN, U.S.D.J.

Date: October 22, 2015
At Camden, New Jersey

39